UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

ERNEST G. COOK,

    Plaintiff,

    -vs-          JUDGE BENITA PEARSON
                  CASE NO. 4:22-CV-00077-BYP
                  VOLUME I

BOARD OF TRUMBULL COUNTY
COMMISSIONERS,

    Defendant.

        - - - -

    Video conference Zoom Deposition of MICHELE
NICOLE FRENCHKO, taken as if upon cross-examination
before Kelli Rae Page, a Notary Public within and
for the State of Ohio, at 2:21 p.m. on Monday, May
1, 2023, pursuant to notice and/or stipulations of
counsel, on behalf of the Plaintiff in this cause.

PAGE REPORTING SERVICE
1249 HATHAWAY AVENUE, FLOOR 2
LAKEWOOD, OH 44107
216.316.3258
kellipage@pagereportingservice.comB

MICHELE NICOLE FRENCHKO

---

APPEARANCES:

(All participants were in attendance via remote
connection through individual Zoom video
conferencing as follows:)

Caryn M. Groedel, Esq.
Caryn Groedel & Associates Co., LPA
208 Spriggel Drive
Munroe Falls, Ohio 44262
1291 SW Mulberry Way
Boca Raton, Florida 33486
440.230.3803
cgroedel@groedel-law.com

    On behalf of the Plaintiff;

Kathleen M. Minahan, Esq.
Meyers, Roman, Friedberg & Lewis
28601 Chagrin Boulevard, Suite 600
Cleveland, Ohio 44122
216.831.0042 x223
kminahan@meyersroman.com

    On behalf of the Defendant.

ALSO PRESENT:

Ernest Cook
Mauro Cantalamessa

MICHELE NICOLE FRENCHKO

---

WITNESS INDEX

EXAMINATION              PAGE

CROSS-EXAMINATION
BY MS. GROEDEL             4

EXHIBIT INDEX

EXHIBIT NUMBER         PAGE

Plaintiff's Exhibit 2        21
Plaintiff's Exhibit 3        47
Plaintiff's Exhibits 4 and 5    55

MICHELE NICOLE FRENCHKO

---

    MICHELE NICOLE FRENCHKO, of lawful age,
called by the Plaintiff for the purpose of
cross-examination, as provided by the Rules of
Civil Procedure, being by me first duly sworn, as
hereinafter certified, deposed and said as follows:

CROSS-EXAMINATION OF MICHELE NICOLE FRENCHKO
BY MS. GROEDEL:

Q.   Could you, please, state your full name for the
    record?

A.   **Michele Nicole Frenchko.**

Q.   Before we begin, three quick rules, I'm sure you
    remember. Please give verbal answers as opposed to
    nodding or shaking your head or saying "uh-huh" or
    "uh-uh." Please let me finish asking my question
    before you start answering it, and also if you
    haven't heard the question or don't understand it,
    please let me know and I will rephrase it or say it
    louder so that you do understand it and you do hear
    it. Okay?

A.   **Okay.**

Q.   Are you taking any medications that would affect or
    impair your ability to understand my questions or
    use your full recall?

A.   **No.**

Q.   Have you seen -- please take a look at Exhibit 1.

MICHELE NICOLE FRENCHKO

---

**02:23**

1     MS. GROEDEL: Kathleen, did you send
2     it to her?
3            MS. MINAHAN: I can't find it, Caryn.
4     I have looked. I know you sent it on 4/24, but
5     I can't find it.
6            MS. GROEDEL: Okay. I'll get it.
7  **Q.** What is your e-mail, Ms. Frenchko?
8  **A. Who is asking me, I'm sorry?**
9  **Q.** I am, so I can send you the exhibit.
10 **A. I have a question.**
11 **Q.** Okay.
12 **A. Are there several of these?**
13 **Q.** No.
14 **A. Okay.**
15 **Q.** Let me know when you have received it and have
16    reviewed it.
17 **A. Yes. Do you want me to read it word for word?**
18 **Q.** No.
19 **A. Okay. I have received it and I have reviewed it.**
20 **Q.** Okay. Have you seen it before today?
21 **A. No.**
22 **Q.** Which of these categories of questions, and there
23    are 15 of them, are you prepared to testify about?
24 **A. I have 4, 5, 6, 7, 9, 10, 13, and 15.**
25        **Wait. Are there more? Yes, that's it.**

MICHELE NICOLE FRENCHKO

**02:30**

1     took notes.
2        **But journal actions, employee information,**
3  **files, some of the previous legal paperwork**
4  **associated with this case and the complaints and**
5  **responses, policies. That's all I can recall right**
6  **now, but, again, it's nonexhaustive.**
7  **Q.** Okay. You said you discussed with employees and HR
8     certain things. Which employees?
9  **A. Employees in -- well, Rebecca Smith and Alexandra**
10    **DeVengencie-Bush.**
11 **Q.** Since you have been a commissioner, approximately
12    how many times has a matter of a disciplinary
13    action come before the commissioners that involves
14    a monetary -- what did she say, a monetary --
15 **A. Monetary impact.**
16 **Q.** Impact, right -- of employees who report directly
17    to you?
18 **A. Am I to be answering things that Alex was prepared**
19    **to, because I could glance at what you requested,**
20    **if my attorney thinks that that's acceptable. Is**
21    **there something else that I'm responding to --**
22 **Q.** It's Number 2, because she was not able to answer
23    it because she's too new in that position.
24        MS. MINAHAN: Okay. I'm going to
25    object that this was all known ahead of time.

MICHELE NICOLE FRENCHKO

**02:27**

1  **Q.** Okay.
2  **A. Wait, 1. I'm sorry. Also, I had a first set and**
3     **here is the second one. Also 1. Also 1.**
4  **Q.** So 1, 4, 5, 6, 7, 9, 10, 13 and 15; is that
5     correct?
6  **A. I believe that's correct.**
7  **Q.** Okay. And what did you do to prepare for this
8     deposition?
9  **A. I'm sorry. I lost the Zoom on my screen. I**
10    **apologize. Wait. Here it is. Okay.**
11        **What did I do to prepare? I reviewed all of**
12    **the -- I reviewed everything that was contained --**
13    **all of the topics that were related, the defenses,**
14    **the responses. I reviewed internal -- internal**
15    **documents. I reviewed files and discussed with**
16    **some employees in HR the specific answers. I did**
17    **internal research, and I spoke to counsel.**
18 **Q.** What internal documents did you review?
19 **A. I apologize. I was more prepared to go forward a**
20    **week ago, so I don't have -- if I'm missing**
21    **something I just want to assure that it's known**
22    **that it's a nonexhaustive list in case there is**
23    **something that I'm missing.**
24        **I reviewed journal actions. I don't have**
25    **anything with me right now that I did review. I**

MICHELE NICOLE FRENCHKO

**02:32**

1     I told you this ahead of time, but if
2     Commissioner Frenchko believes that she has the
3     foundation to go ahead and answer for at least
4     a part of the --
5            MS. GROEDEL: Your objection -- you
6     cannot do any speaking objections. It is
7     utterly inappropriate. If you have an
8     objection, place it on the record.
9            MS. MINAHAN: I'm not making an
10    objection, ma'am. Please listen to me.
11           MS. GROEDEL: Well, we're not doing
12    this, if she remembers, and if she feels, and
13    if she does this. No, that's not how it goes,
14    Kathleen. Please, just don't interfere with
15    the deposition.
16           MS. MINAHAN: Okay. Then the witness
17    is instructed not to answer anything that's not
18    her assigned topic.
19           MS. GROEDEL: Okay. I'm going to ask
20    you, before I, as a last good faith
21    meet-and-confer, to withdraw your objection.
22    You have no right to instruct her not to
23    answer.
24           MS. MINAHAN: I tried to explain to
25    you the basis for this. You wouldn't let me

MICHELE NICOLE FRENCHKO

02:33

1 speak, so what I told her is if you won't let
2 me speak, my answer is the witness is
3 instructed not to answer.
4     MS. GROEDEL:  Okay.  You're right.  I
5 don't want a speaking objection.  I think it's
6 inappropriate.  So I will take this one up with
7 the Judge.
8     MS. MINAHAN:  Do whatever you want.
9     MS. GROEDEL:  In the meantime, that's
10 the category and how that's been handled.
11 **A.  I apologize.  I was reading Number 2, and, kind of,**
12 **not paying attention to you, ma'am.**
13     **Did you just address me, I'm sorry?  I was**
14 **reading that Number 2.**
15     MS. MINAHAN:  Commissioner, Caryn will
16 not let me explain, so don't answer the topic.
17     MS. GROEDEL:  No, you can explain, you
18 just can't keep doing speaking objections,
19 Kathleen.  You're not going to tell her how to
20 answer so that she can say, "I don't know."
21 **A.  No, ma'am --**
22     MS. MINAHAN:  That's not what I was
23 doing, but you won't listen to me, so --
24     MS. GROEDEL:  Go ahead.  Go ahead.  If
25 this is going to avoid a dispute going before

02:35

1 the Judge, go ahead and explain.
2     MS. MINAHAN:  What I was saying is
3 that if Commissioner Frenchko believes that she
4 can testify about topic 2 as for the time
5 period when she was a commissioner, then she is
6 welcome to do so.
7 Q.  Okay.  During the time you have been a
8 commissioner, Ms. Frenchko --
9 **A.  I'm sorry.  I have to go -- the wind just caught my**
10 **door and my door floated open.  I'm sorry.**
11     **The question was just for during the time**
12 **period that I was there, which would be from the**
13 **beginning of January until current; right?**
14 Q.  Right.
15 **A.  Okay.  So what was the question?**
16 Q.  Let's just get it on the record.  You started in
17 your role as commissioner on what date?
18 **A.  Approximately January 3rd of 2021.**
19 Q.  And since January of 2021 with respect to employees
20 for whom the commissioners are the appointing
21 authority, what disciplinary matters have the
22 commissioners considered or discussed or -- yeah,
23 considered discipline for employees for whom the
24 commissioners are the appointing authority?
25 **A.  Can you, please, repeat that?  I want to answer it**

02:37

1 specifically, and it was kind of broken.
2 Q.  The question is only for employees for whom the
3 commission is the appointing authority; okay?
4 **A.  Uh-huh.**
5 Q.  So with respect to that group of employees only,
6 what discipline -- which employees had been subject
7 to discipline by the commissioners -- subject to
8 discipline?
9 **A.  I don't recall all -- I don't -- one, I don't know**
10 **all of them because a lot of those things are**
11 **handled by department heads.  And, two, I just**
12 **don't remember every situation.**
13 Q.  I didn't ask for every -- which ones do you recall,
14 ma'am?
15 **A.  Are you talking about employees who are union or**
16 **non -- fiduciary, like department heads that are**
17 **more similar to Mr. Cook, or the classified union**
18 **employees?**
19 **Not union?**
20 **A.  Not the union classified ones?**
21 Q.  Right.
22 **A.  Nonunion?  To the best of my recollection, the only**
23 **nonunion one that we had an issue concerning**
24 **discipline was the HR director, Richard Jackson.**
25 Q.  There was also Mr. Cook?

02:39

1 **A.  I'm sorry, I apologize.  Of course, Mr. Cook.  And**
2 **then the dog one, that's a union employee.  He's a**
3 **lower level employee.**
4 Q.  Okay.  Is there -- what was the -- Richard
5 Jackson's alleged offense or offenses?
6 **A.  I don't remember specifically what it was called,**
7 **like categorically.**
8 Q.  Well, even if you don't know the name of it, what
9 was he accused of doing?
10 **A.  He told me not to get all hot and bothered, which**
11 **is inappropriate, insubordination.  I honestly**
12 **can't remember.  It was just conduct that was**
13 **completely unacceptable for an employee to talk to**
14 **their appointing authority in that fashion.**
15 Q.  Okay.  And then there was a vote on the discipline
16 to be imposed?
17 **A.  Yes.**
18 Q.  And what was the discipline that was decided upon?
19 **A.  I believe it was suspension unpaid.**
20 Q.  And then he retired or resigned during that, or
21 when he returned?
22 **A.  What is your question specifically?**
23 Q.  And then did he serve the suspension?
24 **A.  Yes.**
25 Q.  And did he return or resign or retire after the

02:41

1    suspension or during the suspension?

2    A.  After.

3    Q.  So he had returned to work already?

4    A.  Yes.

5    Q.  Okay.  You said a lot of the discipline is handled

6    by department heads.  What discipline is handled by

7    department heads and what must go through the

8    commissioners?

9    A.  Lower level disciplines that don't have a monetary

10    impact on the employee are handled through the

11    department heads, and those items that have a

12    monetary impact on the employee are decided based

13    on the appointing authority.

14    Q.  So whether union or nonunion, the only three you

15    can recall, and tell me if I'm wrong, is Richard

16    Jackson, Mr. Cook, and the dog warden employee?

17    A.  Ma'am, that's not what you asked before.

18    Q.  Okay.  It wasn't a repeatable question, it was a

19    new question, and I said tell me if I'm incorrect.

20    The only three employees you can remember

21    considering discipline for, whether union or not,

22    is Richard Jackson, Mr. Cook and the dog warden

23    employee; is that correct?

24    A.  That's not correct.

25    Q.  What other employees do you recall being considered

MICHELE NICOLE FRENCHKO

---

02:43

1    for discipline by the commissioners?

2    A.  There were no other ones that were fiduciary.

3         Are we no longer talking about those who are

4    similar to Mr. Cook and now we're talking about

5    lower level union employees, because that could

6    be --

7    Q.  Ma'am, and I said regardless of whether union or

8    not.  First it was nonunion, now I'm asking lower

9    level, mid level, upper level, whatever level you

10    want to imagine, any level employee that the

11    commissioners have considered for discipline, since

12    you have been a commissioner, other than those

13    three individuals?

14    A.  So what was the question?

15    Q.  Discipline considered by the commissioners?

16    A.  That was a statement.  Can you give me a question,

17    please?

18    Q.  What employees do you recall the commissioners

19    considering for discipline since you have been a

20    commissioner?

21    A.  The one -- the most recent one was the dog kennel

22    employee.  I don't recall names either.  I remember

23    there was another 911 employee.  There might have

24    been two other 911 employees.  There have been -- I

25    believe there was a jobs and family service

MICHELE NICOLE FRENCHKO

---

02:45

1    employee.  Those are the only ones that I can

2    remember right now.

3    Q.  What were the infractions alleged to have been

4    committed by the one or two 911 employees?

5    A.  I can't recall specifically.

6    Q.  What was the discipline imposed?

7    A.  Termination for one.  I believe -- I'm not certain.

8    One was termination, and I believe one was a

9    termination that was -- that was changed to a --

10    one was a termination and then it was corrected to

11    be an agreement.

12    Q.  Who was terminated?

13    A.  I can't remember the names of the employees.

14    Q.  Man or woman?

15    A.  There was a man and a woman.  Middle -- I can't

16    remember the names specifically.  I don't want to

17    give the wrong name.

18    Q.  Which one was terminated without being changed to a

19    letter?

20    A.  The man.

21    Q.  And he was terminated -- had the terminated

22    employee had any prior discipline prior to being

23    terminated?

24    A.  I can't recall.

25    Q.  Did Richard Jackson have any prior discipline

MICHELE NICOLE FRENCHKO

---

02:47

1    before he was terminated?

2    A.  I can't recall.

3         MS. MINAHAN:  Objection.

4    A.  Oh, wait.  I'm sorry.  He wasn't terminated.

5    Q.  Was he given an opportunity to resign or retire in

6    lieu of termination?

7    A.  No.  Nor was there any pre-disciplinary conference

8    because he's a fiduciary.  There is a difference.

9    Q.  There is nothing in the handbook about fiduciaries

10    foregoing the right to a pre-disciplinary

11    conference, is there?

12    A.  I can't recall.  I do know that we go by the law

13    and our policy can't necessarily supersede the

14    revised code so --

15         MS. GROEDEL:  Move to strike.

16    Q.  And I am going to ask you to answer my question.

17    And if you don't know, just say so, ma'am.

18    A.  Okay.  I don't know.  I can't recall.

19    Q.  Are there any other employees you recall the

20    commissioners considering for discipline -- oh,

21    yes, you mentioned the Job & Family Services

22    employee.  Was it a him or her?

23    A.  I can't recall.

24    Q.  And what was the accusation of -- against this

25    employee?

MICHELE NICOLE FRENCHKO

02:49

1    A.   Not responding to a call in a timely manner, to the
2      best of my recollection, to a customer. Leaving
3      someone on hold too long, as far as I can recall.
4    Q.   And was this person terminated?
5    A.   No.
6    Q.   What was the discipline imposed?
7    A.   I can't recall with certainty.
8    Q.   Had the employee been subject to prior discipline?
9    A.   I don't know.
10    Q.   Are there any other employees you can recall being
11      subject to discipline, whether union or nonunion,
12      mid, low or high level employees, other than those
13      you have mentioned?
14    A.   I believe there were two that I can recall. But,
15      no, not -- they were not -- I see what you are
16      saying.
17      Yes, I recall two more. And, again, I wasn't
18      prepared for this number, so things might come to
19      me.
20    Q.   I'm asking to the best of your recollection.
21    A.   Okay.
22    Q.   I appreciate that.
23      What are the other two situations you remember?
24    A.   One of them did some political work, and there was
25      a verbal warning, I believe, on the workday, and

MICHELE NICOLE FRENCHKO

02:52

1      they got a verbal warning. I don't even -- that's
2      one.
3      One of them was taking photographs and using
4      them for social media and sharing them on the clock
5      from the workplace, something to that effect. I
6      believe it was a verbal.
7      And another employee, just recently, in our
8      office for using inappropriate language to a
9      superior, and got a verbal warning, too. But when
10      they're union and they're verbal after so long they
11      get pulled, so you wouldn't even be able to see
12      that they existed.
13    Q.   Which ones of those three, the inappropriate
14      language, the political work for a fundraiser
15      during work, and the taking photos and posting them
16      while on the clock, were union?
17    A.   All of them.
18    Q.   Is there any other difference in discipline between
19      the union and nonunion in terms of -- other than
20      than if you're union the verbal warnings disappear
21      after a certain amount of time from the personnel
22      file?
23    A.   Classified employees are still different than the
24      department heads, the fiduciary ones, so those ones
25      go along with the policy and the procedure manual

MICHELE NICOLE FRENCHKO

02:54

1      with respect to the progressive discipline, if
2      they're classified.
3      But if they're nonclassified it's completely
4      different. So theirs follows more similarly to the
5      process that the unions follow.
6    Q.   Are they bound by the same handbook that the rest
7      of the employees are bound by?
8    A.   Yes.
9    Q.   And whether they're union or nonunion, if the
10      department head takes an action that has a monetary
11      component, I believe, tell me if that's not the
12      right word, the ultimate decision must be made by
13      the commissioners?
14    A.   Well, pursuant to the revised code if there is a
15      suspension, paid or unpaid, it's required that that
16      come through as something on our agenda that the
17      commissioners vote on, and that's pursuant to the
18      revised code.
19      So that's why I was saying before that our
20      rules can't supercede what the revised code is,
21      that's 124.388.
22    Q.   So you're saying even if it doesn't have a monetary
23      component because someone is suspended with pay, it
24      still has to go through the commissioners?
25    A.   Yes. If it's -- if they're placed on any type of

MICHELE NICOLE FRENCHKO

02:56

1      administrative leave.
2    Q.   And that's --
3    A.   I'm sorry, I wanted to be clear. But the monetary
4      impact would relate to even if someone were given
5      one day of unpaid leave, it would come through to
6      the commissioners, even if it were just one day
7      because it has a monetary impact.
8    Q.   Even if it's one day with leave with pay because --
9    A.   Yes. Yes.
10    Q.   Got it.
11      Okay. Now let's talk about the subjects -- do
12      you have a copy of the complaint and the answer to
13      talk about the defenses?
14    A.   I have the questions that you -- that were on that
15      original e-mail that you sent, and I do have the
16      defenses. I have everything that I indicated
17      initially that I was prepared to respond to.
18    Q.   Okay. So let's look at the answer to the amended
19      complaint which was filed on October 20th of 2020
20      -- yeah, October 20th, 2022, sorry.
21      Do you have that front of you, ma'am?
22    A.   Yes. I have everything that you -- that you are
23      asking me questions about printed.
24    Q.   Good. Excellent.
25      MS. GROEDEL: Then I will mark this as

MICHELE NICOLE FRENCHKO

02:58
1      Exhibit 2, and I will send it to Kelli.
2 Q. I'll send it to you, too, just so we have it.
3      - - - - -
4      (Plaintiff's Exhibit 2 was marked for purposes of
5      identification.)
6      - - - - -
7 Q. Here you go. Let me know when you receive it.
8 **A. I have it, and it opened.**
9 Q. Do you have it?
10 **A. Yes.**
11 Q. Good.
12      What is the basis for the *Second Affirmative*
13 *Defense* that plaintiff failed to mitigate his
14 damages?
15 **A. We don't know if he made a good faith effort to**
16 **find new employment. We don't know that he sought**
17 **other employments, that he had -- how vigilant he**
18 **was in those efforts either.**
19 Q. Have you seen any documents he has produced?
20 **A. I have not. I am aware of one interview.**
21 Q. Okay. So my question is do you know if he
22 submitted any documents in his litigation about his
23 mitigation -- any mitigation efforts?
24 **A. I don't know.**
25 Q. What steps did you take to determine whether

MICHELE NICOLE FRENCHKO

03:01
1      Mr. Cook made any efforts to mitigate his damages?
2 **A. I asked -- I spoke with our counsel to find out if**
3 **there was anything responsive that would cause --**
4 **that would cause the response to be anything**
5 **otherwise, and I was made aware of one interview,**
6 **which, to me, sounds like not enough information**
7 **for us to determine if he made a good faith effort.**
8      MS. MINAHAN: And, obviously, the
9      answer to the amended complaint was filed
10      months ago, so your question is locked in time
11      to when that answer was filed.
12      MS. GROEDEL: Okay. Well, I was not
13      done asking if she reviewed anything to
14      determine whether or not this is an accurate
15      -- still an accurate affirmative defense.
16      MS. MINAHAN: But the question is was
17      it accurate when it was filed?
18      MS. GROEDEL: It says right on here
19      when it was filed.
20      MS. MINAHAN: Correct.
21 Q. Ma'am, I'm asking if you reviewed any documents to
22 determine whether or not -- whether it be any
23 deposition transcripts, any discovery responses,
24 any document production, to determine whether
25 Mr. Cook made any efforts to mitigate his damages?

MICHELE NICOLE FRENCHKO

03:03
1 **A. No. Nothing -- and you are talking about -- no.**
2 Q. The only thing you did was speak to Kathleen about
3 it?
4 **A. Yes.**
5 Q. Okay. Let's look at the Eighth Defense.
6 **A. Oh, okay. We're skipping to the Eighth. Okay.**
7 Q. Did you -- what is the basis for this defense?
8 **A. Well, he would not have been entitled to**
9 **reinstatement due to his actions.**
10 Q. And is that in a policy or a procedure?
11 **A. He wouldn't have passed our background check.**
12 Q. Okay. My question was -- let me rephrase it.
13      Before he was terminated, what are you
14 referring to? He wouldn't have had it come to
15 reinstatement, I'm not asking about reinstatement,
16 I'm talking about his termination.
17 **A. About his termination? What is your question**
18 **specifically? I apologize.**
19 Q. It's okay. What is the basis for this defense?
20 **A. The unclean hands.**
21 Q. Right.
22 **A. His conduct. I mean, his behavior and his actions**
23 **and the incident that he was involved in caused him**
24 **to be in this situation. It was his own doings.**
25 **His hands were not clean. But for the fact that**

MICHELE NICOLE FRENCHKO

03:06
1 **all of this controversy came up surrounding --**
2 **surrounding the -- him hitting the person on the**
3 **skateboard and the hit-skip and all of that, we**
4 **wouldn't have had it come to this.**
5      **Though there were also other issues with the**
6 **-- with the employment that we discussed in my**
7 **depositions. Everything was a result of his own**
8 **actions. He wasn't some exemplary, stellar**
9 **employee, especially as a result of what happened**
10 **with that incident, and actually it was quite an**
11 **embarrassment and bad for the county.**
12 Q. We talked about the embarrassment stuff.
13      So my question is in furtherance of this, he
14 could have been warned or had some lesser form of
15 discipline under the progressive discipline policy;
16 correct?
17 **A. Can you ask this again, please?**
18 Q. He could have been subject to progressive
19 discipline under the progressive discipline policy;
20 correct?
21 **A. No.**
22 Q. Could not have been?
23 **A. No. He wasn't bound by the --**
24 Q. Please just answer my questions. I don't want to
25 stay here all day. We have another person yet.

MICHELE NICOLE FRENCHKO

03:07
1 You can just answer yes or no questions with yes or
2 no, and if your attorney wants to follow up, she
3 will.
4 Did the handbook preclude progressive
5 discipline rather than termination?
6 A. The -- I don't have that in front of me to answer
7 it.
8 Q. You don't know?
9 A. Yeah, I don't know.
10 Q. Okay. Let's look at the Ninth Defense, "estoppel."
11 What is the factual basis for that affirmative
12 defense?
13 A. I don't know.
14 Q. Okay. What is the factual basis for the Tenth
15 Defense?
16 A. The -- we never agreed to accept service. The
17 service -- there is insufficiency of service
18 process. I know that there was a conversation with
19 you, like something that you sent to Bill Danso
20 saying thank you for whatever, but we never, as the
21 board of commissioners, acknowledged or agreed that
22 we would accept service in that way so --
23 Q. What documents, if any, did you review to conclude
24 that there was no agreement to accept service for
25 or on behalf of the board of commissioners?

MICHELE NICOLE FRENCHKO

03:09
1 A. I didn't have to review any documents, ma'am. I
2 was a member of the board that was being sued, and
3 there was no one -- there was no conversation to
4 accept the service in the way that you're saying
5 that it was accepted. I wasn't there.
6 I'll be honest, I didn't review anything
7 because I have recollection of the circumstances.
8 We didn't have counsel. I mean, it was not -- to
9 my eyes, there was no agreement that we would
10 accept the service. But you somehow thought that
11 it was based on what you sent to our office, so --
12 Q. Do you know if any attorneys agreed to accept
13 process for the commissioners?
14 A. Our legal counsel didn't and neither did our civil
15 prosecutor, neither did Bill Danso, so --
16 Q. And where did you get that information from, that
17 neither attorney agreed to accept service of
18 process?
19 A. Because it wasn't waived, and if it were waived
20 then the board of commissioners would have been
21 known or asked -- been notified or asked.
22 Q. Did you speak with anyone regarding this?
23 A. When?
24 Q. Either counsel?
25 A. Yes.

MICHELE NICOLE FRENCHKO

03:11
1 Q. When?
2 A. Originally when we received it we were waiting to
3 have counsel assigned, and that is what we were
4 advised by Mr. -- well, wait a second. I don't
5 think I can answer anything that's attorney/client
6 privilege.
7 Q. Well, facts are never privileged. Facts are facts.
8 A. Okay. Well, the fact is I was waiting for counsel
9 to be assigned, as a member of the board of
10 commissioners, that never happened.
11 I'm sorry, and it did happen, but it was not
12 perfected service, in my personal opinion, but,
13 then again, I'm not an attorney, so --
14 Q. Who did you speak to regarding this, and when?
15 A. Afterwards I spoke to Kathleen about that as well
16 when I reviewed what the -- back when I saw what
17 she -- well, maybe I didn't talk to her, but I read
18 it because I was already aware whenever she sent
19 the answers back and the defenses back. I read
20 everything that the board -- that's sent out, all
21 of our answers and things like that, so -- and then
22 afterwards in preparation for this, when we were
23 going over our paperwork, this was actually -- this
24 was actually something that I looked at and -- I'm
25 sorry.

MICHELE NICOLE FRENCHKO

03:12
1 Q. I really think it's a very simple question.
2 A. Yes.
3 Q. Who did you talk to about this?
4 A. When it happened, Bill Danso, and now when I was
5 preparing, to Kathleen Minahan, and that's what I
6 said earlier.
7 Q. Bill Danso, when it happened, and Kathleen --
8 A. Yes. But -- I'm sorry, when we received service or
9 when we received -- I'm sorry, received service.
10 When we get -- when we find out about things,
11 our attorney -- I don't know if I'm allowed -- I
12 guess in generalities, our attorney, Bill Danso,
13 will send something to the commissioners and tell
14 us generally that, you know, we are waiting for
15 CORSA to assign counsel, or that there is a
16 conflict, or whatever it is.
17 So back then I was aware, and then again right
18 now, or within the last three weeks, it was
19 discussed again, but this time the communication
20 was with our counsel through CORSA, so --
21 Q. I'm going to try to ask it in a really concise way.
22 A. Maybe start over again.
23 Q. Well, I do, but you seem to have, out of all the
24 people I've deposed, are the most educated and the
25 most trouble understanding my questions.

MICHELE NICOLE FRENCHKO

03:14

1   What documents did you review in preparation
2   for your deposition concerning the Tenth
3   Affirmative Defense?
4  A.  **None.**
5  Q.  In preparation for your deposition with whom did
6   you speak, if anyone, concerning the Tenth Defense?
7  A.  **Kathleen Minahan.**
8  Q.  And Miss Minahan told you the fact -- a fact that
9   there has been no agreement to accept service of
10   process by or on behalf of the commissioners?
11  A.  **She told -- what was the question?**
12   MS. MINAHAN: Objection. Objection.
13   MS. GROEDEL: I'm not asking for
14   advice, Kathleen. This is a fact. Facts are
15   never, ever, ever, privileged.
16   MS. MINAHAN: I understand that, but
17   what you are asking about is the communication
18   from counsel to client. Whether there was
19   service is an entirely different issue. How
20   she found out there was or was not service is a
21   communication with counsel.
22   MS. GROEDEL: Are you instructing her
23   not to answer? I'll file over this, if you
24   want. I don't want to be argumentative.
25   MS. MINAHAN: Yes, I am.

MICHELE NICOLE FRENCHKO

03:16

1   MS. GROEDEL: Okay. I'm going to make
2   a last good faith effort for you to withdraw
3   your instruction for her not to answer. Are
4   you declining?
5   MS. MINAHAN: Yeah. I think I just
6   said that, yes.
7   MS. GROEDEL: Well, I am obligated to
8   do that before I file a motion, so I wanted to
9   make sure.
10  Q.  Okay. I just want to make sure you didn't --
11   strike that.
12   Let's look at the next category, which is 5, no
13   4. No, we did 4 -- 5.
14  A.  **Okay.**
15  Q.  So if you --
16  A.  **Wait, did we do 4?**
17  Q.  Yeah. Oh, denial, sorry, no, we didn't.
18   4, first we'll do the denials and then we'll do
19   the insufficient information.
20   So if you could look at paragraph 5 of the
21   complaint?
22  A.  **Yes.**
23  Q.  Do you see the complaint?
24  A.  **Yes.**
25  Q.  Okay.

MICHELE NICOLE FRENCHKO

03:18

1  A.  **A portion of it.**
2  Q.  So paragraph 5 says that defendants are entities
3   within the government of Trumbull County and
4   amenable to sue under Ohio law. Do you see that?
5  A.  **Yes.**
6  Q.  And the answer was a denial. Do you see that?
7  A.  **Yes.**
8  Q.  And what is the factual basis of that denial?
9  A.  **The board is not the governing body.**
10  Q.  Well, who was the lawsuit against?
11  A.  **The board.**
12  Q.  So in looking at who was sued, in paragraph 5 of
13   the complaint -- of the amended complaint, is that
14   still an accurate denial?
15  A.  **The denial is correct. It is still denied.**
16  Q.  Okay. Are you saying that the board is not an
17   entity within the government?
18  A.  **Which entity? We are the entity. There is no**
19   **separate entity. We're not an entity within**
20   **ourselves.**
21  Q.  An entity within Trumbull County?
22  A.  **It says within the government of Trumbull County.**
23  Q.  Okay. And what is the factual basis for that being
24   inaccurate? It's not part of -- the board of
25   commissioners is not within the government of

MICHELE NICOLE FRENCHKO

03:20

1   Trumbull County, it acts outside the government?
2  A.  **It is the government. We're not within the**
3   **government.**
4  Q.  So you are not a part of the Trumbull government,
5   you are the government?
6  A.  **We're not an entity. We are not an entity within**
7   **Trumbull County government. We are Trumbull County**
8   **government. We are a political subdivision. It's**
9   **a statutory county. We are a county. We are**
10   **Trumbull County government. We're not an entity**
11   **within it. We're not a board. We are not a**
12   **department. We are Trumbull County.**
13  Q.  As a subdivision of a government, meaning Trumbull
14   County?
15  A.  **No, ma'am. No ma'am. You're confused.**
16  Q.  You just said --
17  A.  **No, ma'am. We're not a subdivision within Trumbull**
18   **County. We are Trumbull County.**
19  Q.  The board is Trumbull County?
20  A.  **Yeah. The board of commissioners is Trumbull --**
21  Q.  Is the county?
22  A.  **That's who the lawsuit was filed against.**
23  Q.  Okay. Let's look at Number 8. That was denied.
24   What is the factual basis for the denial that
25   plaintiff filed with the State Employment Relations

MICHELE NICOLE FRENCHKO

03:22

1 Board?

2 A. He did not file with the State Employment Relations

3 Board.

4 Q. And what documents did you review, or who did you

5 speak to in connection with that response?

6 A. I recall. I was there. I did not speak to anyone

7 in preparations for this response in this hearing

8 right now. I was there when all of this happened.

9 Q. Okay. Let's look at 14.

10 A. Do you know the difference between SERB and SPBR?

11 Q. Ma'am, I'm on Number 14.

12 A. I just thought I would try to help you.

13 Q. Thanks.

14 In looking at Number 14 --

15 A. Yes.

16 Q. -- did you have any social media that discussed

17 getting rid of the "Good Old Boys"?

18 A. Yes.

19 Q. You did include that on some social -- one or more

20 social media posts; correct?

21 A. Yes.

22 Q. Okay. And Number 15, do you know -- so this was

23 denied; correct? It says that in January of 2021

24 during the second board meeting that you attended,

25 you and another commissioner went into executive

03:24

1 session where you decided -- where they decided,

2 you and he, in bad faith, to terminate plaintiff's

3 employment. Do you see that?

4 A. Yes.

5 Q. And my question is, I know one of the members who

6 voted was not in the meeting; correct?

7 A. That's not correct.

8 Q. When the decision was made -- were all three

9 commissioners present in person at the meeting when

10 the decision was made?

11 A. You will have to break that question down. You

12 asked two different things.

13 Q. Okay. I'll break it down.

14 Were all three commissioners in the same

15 location when the decision was made?

16 A. This is not being asked in a fashion that I feel

17 that I can answer and give an honest response.

18 Q. Well, it's very simple: Were all three

19 commissioners physically in the same location,

20 physically?

21 A. There you go. Now you asked it.

22 No.

23 Q. And do you know whether the Ohio Revised Code or

24 any legislation or document requires decisions to

25 be made in executive session with all required

03:26

1 votes present, physically present?

2 A. Your question is not making sense. We don't vote

3 in executive session, so could you clarify your

4 question?

5 Q. Does the Ohio Revised Code, or any documents within

6 Trumbull County, or of the board of commissioners,

7 require physical presence for a termination or

8 other adverse employment action to be decided upon

9 by the commissioners?

10 A. Not at that time.

11 MS. MINAHAN: Objection.

12 A. Objection -- she made an objection while I was

13 answering.

14 MS. MINAHAN: That's okay. Go ahead

15 and answer.

16 Objection.

17 Go ahead and answer.

18 A. Okay. Not at that time. There was legislation

19 enacted by the state during COVID which allowed for

20 boards to function regularly with virtual presence.

21 There was no requirement at the time of this

22 decision to have all commissioners present pursuant

23 to the legislation that was enacted at that time

24 due to COVID.

25 Q. Did -- was one commissioner either at a doctor's

03:28

1 office or in a car coming to or from a doctor's

2 office when he voted on Mr. Cook's termination?

3 A. I don't know.

4 Q. Was he on any medication at the time, to your

5 knowledge?

6 A. I don't know.

7 Q. Okay. Let's look at Number --

8 THE WITNESS: Can I take a two-minute

9 break to use the restroom?

10 MS. GROEDEL: We'll take a five-minute

11 break, and I will go to the restroom, too.

12 MS. MINAHAN: Okay. Five minutes.

13 Thanks.

14 - - - - -

15 (Whereupon, a recess was had.)

16 - - - - -

17 Q. Who is the interim 911 director?

18 A. Patty Goldner.

19 Which number are we on?

20 Q. I'm on replacement, 18, paragraph 18.

21 A. So what are you asking me?

22 Q. She is the interim replacement for him, correct,

23 Miss Goldner?

24 MS. MINAHAN: Objection.

25 Go ahead and answer.

03:37
1   A.  You are asking if -- this is not --
2   Q.  18, paragraph 18, is the interim replacement Patty
3       Goldner?
4               MS. MINAHAN:  Objection.
5               Go ahead.
6   A.  No.
7   Q.  Who took over -- who took over his job
8       responsibilities after Mr. Cook was terminated?
9   A.  After he was terminated, there is an interim who --
10      there was an interim who picked up his
11      responsibilities while doing her own job, and he
12      was not replaced yet.
13  Q.  Who?
14  A.  Mr. Cook has not been replaced yet.
15  Q.  Who is the interim?
16  A.  The interim is Patty Goldner --
17  Q.  Okay.
18  A.  -- who assumed those additional duties.
19  Q.  And she's approximately 30 years younger than
20      plaintiff?
21  A.  I don't know.  I know that she's in her forties.  I
22      think she's --
23  Q.  You don't know?
24  A.  Yeah.  I'm not certain of the age difference.
25  Q.  Did you talk to anyone about this, or look at any

03:39
1       documents in preparation for your deposition in
2       which you would be asked this question?
3   A.  You know, for this one, as far as it goes as it
4       relates to the age, no, I didn't.  I just know that
5       she is close to my age, so --
6   Q.  If you could just answer yes, or no, or I don't
7       know when I ask yes or no questions.
8               MS. GROEDEL:  Because, Kathleen, I'll
9               tell you, at this rate there is no way we're
10              going to be done by 4:30.  I'm just letting you
11              know.
12  Q.  I'll ask you again, did you talk to anyone to
13      determine whether or not the statement in paragraph
14      18 of the amended complaint is accurate that the
15      person who was replacing him, even if temporarily,
16      is at least 30 years younger than he?
17  A.  In preparation for this right now, no.
18  Q.  In preparation for this, whenever you prepared for
19      it?  Did you talk to anyone or look at any
20      documents, ma'am, to know whether or not that was
21      an accurate statement that she is approximately 30
22      years younger?
23  A.  When we responded to the original complaint I
24      reviewed it.  I don't remember specifically right
25      now, though, because I didn't review it for today's

03:40
1       questions.
2   Q.  Does she have less education than Mr. Cook?
3   A.  I don't know.
4   Q.  Did you talk to anyone or look at any documents to
5       find out whether that statement is true or not?
6   A.  It was denied based on the fact that he wasn't
7       replaced, so -- now you're asking things I didn't
8       necessarily prepare for today because the basis for
9       the denial is that he hasn't even been replaced.
10  Q.  Well, it doesn't say whether it's a temporary or
11      permanent replacement, does it, ma'am?
12              MS. MINAHAN:  I didn't hear what you
13              said.  Can you repeat that, please?
14  Q.  I said this paragraph doesn't say whether the
15      replacement is temporary or permanent, does it?
16              MS. MINAHAN:  Okay.  Objection.
17              Go ahead.
18  A.  No.  Your statement doesn't clarify that.
19  Q.  Right.  Yet it was denied; correct?
20  A.  It was denied.
21  Q.  Okay.  Does Miss Goldner have less education than
22      Mr. Cook?  Simple question, yes, no, or I don't
23      know.
24  A.  I don't know.
25  Q.  You don't know?  I didn't hear you?

03:42
1   A.  I said I don't know.
2   Q.  Did you talk to anyone or look at any documents to
3       find out whether that is an accurate statement?
4   A.  At the time when these defenses and these responses
5       occurred I was instrumental in preparing the
6       responses.  So, back then, yes, but for today, I
7       did not go over that.
8   Q.  So you don't know then, and you didn't know now?
9   A.  I did know then, but I didn't reacquaint myself
10      with anything for this question today.
11  Q.  But this was denied in full including the part
12      about the education; correct?
13  A.  Oh, yes.  Uh-huh.
14          She has been -- there is an equivalency that
15      relates to your experience being considered as your
16      education, and I believe she's been working there
17      since her whole life, adult life.
18  Q.  Answer the question, ma'am.  I'm not talking
19      experience and I am not talking equivalency.  I am
20      talking about education.
21  A.  Okay.
22  Q.  When this was denied, you said you were
23      instrumental in answering this.  In answering this
24      in its entirety, including all of its components,
25      did you check to see whether Mr. Cook had more

03:43
1  education than Miss Goldner?
2           MS. MINAHAN: Objection.
3           Go ahead.
4  A.  I can't remember.
5  Q.  And you didn't check in preparation for this
6      deposition; correct?
7  A.  No.
8  Q.  I'm not correct, or I am correct?
9  A.  Why don't you ask your questions one time the way
10     you want it to be answered, and that will make it
11     easier and more efficient. So just a suggestion.
12         So do you want to ask that again exactly how
13     you want me to answer it?
14 Q.  In preparation for this deposition did you check on
15     how much education Miss Goldner has? I don't know
16     any other way to ask the question.
17 A.  No.
18          MS. MINAHAN: Object. Objection.
19          Go ahead and answer.
20 A.  No.
21 Q.  Paragraph 19 says: "Defendant failed to pay
22     plaintiff 12 weeks' severance pay to which he is
23     entitled."
24         Now I know that you are going to say he wasn't
25     entitled, but my question is was he paid any

MICHELE NICOLE FRENCHKO

03:45
1  severance, Mr. Cook?
2  A.  No.
3  Q.  In looking at paragraph 20, had Mr. Cook, prior to
4      his termination, ever been subject to counseling or
5      discipline?
6  A.  I'm looking at 20. You just said in looking at 20.
7      Are you looking at something other than 20?
8          MS. MINAHAN: Caryn, are these
9      renumbered?
10         MS. GROEDEL: No.
11         MS. MINAHAN: Because if they've been
12     renumbered --
13         MS. GROEDEL: No. This is shown on
14     the top as -- is this the one that is shown on
15     the top? Oh, maybe this is not the one. Hold
16     on.
17 A.  Number 20 that I'm looking at says that defendants
18     failed to pay plaintiff 12 weeks' severance pay to
19     which he was entitled, and then the answer was
20     denied because it's not a benefit that Trumbull
21     County offers.
22 Q.  Are you looking at 19? I'm looking at 20.
23 A.  This is 20.
24 Q.  It says, "For the 15 years of his employment,"
25     blah-blah-blah.

MICHELE NICOLE FRENCHKO

03:47
1  A.  That's not --
2  Q.  Are we not looking at the same thing? Okay. Then
3      I need to get the one that was -- hold on.
4  A.  No. That's Number 21 on mine. For the entire 15
5      years of his employment with Trumbull County
6      plaintiff had a stellar work and attendance record.
7      That's Number 21 that I'm looking at.
8          MS. MINAHAN: Did I miss it? Is there
9      a question pending?
10         MS. GROEDEL: No, I'm looking for the
11     one that was filed, that has the document so
12     we're all looking at the same thing.
13         MS. MINAHAN: Okay.
14         MS. GROEDEL: I'll have Christina mark
15     it and she will send it around in a minute.
16 Q.  Let's go on to -- so 20 -- the amended complaint.
17     Hold on one minute, I'm trying to see where she
18     saved it.
19         Okay. So -- sorry about that.
20         Going back to paragraph -- so 21, "Had
21     plaintiff had any prior counseling or discipline
22     prior to his termination?"
23         MS. MINAHAN: Objection.
24         Go ahead.
25 A.  There were complaints --

MICHELE NICOLE FRENCHKO

03:52
1  Q.  Counseling or discipline, ma'am, please.
2  A.  Oh, counseling or discipline? There were concerns,
3      but there were no counselings or disciplines.
4  Q.  And did he have any attendance issues?
5  A.  Yes.
6  Q.  Is there anything noted in his personnel file about
7      attendance issues?
8  A.  No.
9          The county hasn't been keeping track of that.
10     They just started implementing a time clock that
11     was required since I got there.
12         So prior to that, that's one of the reasons
13     that led up to us implementing a time clock is
14     because of the problems at 911, so --
15 Q.  Can you answer my question?
16 A.  Yeah. I did.
17 Q.  No, you didn't. You went on and on about how there
18     was no policy or there was no clock or whatever.
19         My question is very simple. Try to follow.
20 A.  I already answered it. If you want to ask this
21     lady here to read what I wrote -- she will read you
22     what I said. I'm sorry.
23 Q.  Thank you. I'm leading the deposition. I want a
24     clear record.
25         Is there anything in Mr. Cook's personnel file

MICHELE NICOLE FRENCHKO

03:54 1   referencing any attendance issues whatsoever?
2   A.   Nothing documented, no.
3   Q.   Thank you.  Thank you.
4        Look at paragraph -- well, let me ask this:  At
5        the time of his termination did Mr. Cook meet all
6        of the requirements in terms of education,
7        experience and other qualifications to be the 911
8        director?
9             MS. MINAHAN:  Objection.  I don't know
10            that this relates to a topic, but go ahead and
11            answer.
12            MS. GROEDEL:  It does.
13   A.   Which one?  I'm trying to follow along.
14   Q.   It's okay.  You can just answer my question.
15        Did he meet all the minimum qualifications for
16        the job at the time of his termination?
17   A.   No.
18        Wait -- you have to be able to pass a
19        background check, and he wouldn't have passed a
20        background check.
21   Q.   At the time of his termination did he meet the
22        minimum stated qualifications?
23   A.   Yes.
24   Q.   Let's look at Number 5, Section 5 of the deposition
25        notice.  Okay.  Section 5 is talking about the

MICHELE NICOLE FRENCHKO

1   averments and answers to the amended complaint that
2   the commissioners had -- the board had insufficient
3   knowledge to form a belief as to the truth of the
4   averments in those paragraphs.  So let's take them
5   in order.
6        Okay.  In looking at paragraph 2 -- okay.
7   Paragraph 2 -- I'm sorry, looking at 3, what are
8   the allegations that -- in paragraph 3 of the
9   amended complaint -- that the board did not have
10   sufficient information to answer?
11            MS. MINAHAN:  Objection.  Calling for
12            a legal conclusion.
13   Q.   Ms. Frenchko?
14   A.   I don't -- I don't know.
15   Q.   Okay.  Were the allegations in paragraph 6 of the
16        amended complaint that the board had insufficient
17        -- no.  Let's see.
18        Okay, sorry.  Paragraph 7, the denial --
19             - - - - -
20            (Off the record due to technical
21            difficulties.)
22             - - - - -
23   Q.   I'm asking did everybody receive Exhibit 3?
24   A.   Exhibit 3, was that connected to the one you sent
25        earlier?

MICHELE NICOLE FRENCHKO

1             - - - - -
2        (Plaintiff's Exhibit 3 was marked for purposes of
3             identification.)
4             - - - - -
5             MS. MINAHAN:  No.  It's a new one.
6        I'm forwarding it right now to you,
7        Commissioner Frenchko.
8   A.   I have received it and I am opening it right now.
9   Q.   So you have opened up both the amended complaint
10        and the commissioner's answer; correct?
11   A.   Yes.  The notice of the electronic filing, and the
12        amended complaint.
13   Q.   All right.  Good.
14        So we were on paragraph -- section 5 of the
15        amended -- of the deposition notice.  So now we're
16        going to look at the denial in paragraph --
17        paragraph 12 of the answer to the amended
18        complaint.
19        What is the lack of knowledge or information
20        that the commission did not have enough information
21        to answer with respect to paragraph 12 of the
22        amended complaint?
23   A.   Oh, God.  I don't see it on there.  I have
24        something different, which is just a section that
25        was pulled out.

MICHELE NICOLE FRENCHKO

04:11 1        Can you read it?  I'm looking at something
2        different.  Paragraph 12?
3   Q.   I just sent it to you, and so did Kathleen.
4   A.   Paragraph 12?  So we skipped through 5; right?  You
5        don't want to ask anything else from 5?
6   Q.   I am on section 5, ma'am.
7   A.   Can you read me what it says then?
8   Q.   "In 2010 the Board of Trumbull County Commissioners
9        assigned plaintiff the additional duty of directing
10        Trumbull County's 911 line."
11   A.   Okay.  We're on the same page.  Thank you for that.
12   Q.   You're welcome.
13        And then if you look at the answer to that
14        paragraph, the ending of it says, "Defendant denies
15        all remaining allegations for lack of knowledge or
16        information sufficient to form a belief as to their
17        truth."
18        What was your lack of information regarding?
19   A.   Well, what I have right now is the journal action
20        that shows that he was appointed by the board --
21        journalized to the position of 911 director on
22        10/20 of 2010.
23        Calling it an additional duty is different
24        because he was actually -- it was actually a new
25        appointment.

MICHELE NICOLE FRENCHKO

04:13
1 Q. So what was the lack of knowledge or information
2 about?
3 MS. MINAHAN: Objection. Asked and
4 answered.
5 Go ahead.
6 A. I don't know. I don't think that anyone on the
7 board knows what he was doing before -- before that
8 time.
9 Q. No one knew what he was doing before 2010?
10 A. It says "The Board of Trumbull County Commissioners
11 assigned an additional duty."
12 It was not an additional duty. He was newly
13 appointed.
14 Q. So what was their insufficient information to admit
15 or deny?
16 MS. MINAHAN: I think you are asking
17 her for a legal conclusion and --
18 MS. GROEDEL: You can just state your
19 objection. That's not -- anything that's
20 filed, whether it's by an attorney or by the
21 client, if it's filed, the attorney is held to
22 it. And you can't claim legal conclusion when
23 you answer a complaint on your client's behalf.
24 So just state your objection, please,
25 Kathleen, and then she can answer or she can't

04:15
1 answer.
2 MS. MINAHAN: Well, I disagree with
3 you in your statement of what the law is, but
4 my objection is still that it calls for a legal
5 conclusion in what you are asking her.
6 Go ahead and answer, if you can.
7 A. Thank you.
8 I believe I have answered it to the best of my
9 ability.
10 Q. Let's look at 13. What about paragraph 13 of the
11 amended complaint did the commissioners have lack
12 of information or knowledge about?
13 A. Okay. From his position of chief deputy, sheriff
14 was hired full time as Trumbull County's 911
15 director. On April 20th, 2016 he went from part
16 time at 911 to full time as the director.
17 Q. Okay. So is there an insufficient -- what is the
18 lack of knowledge about?
19 A. I don't know definitively. I would only be
20 guessing.
21 We don't posses anything related to the
22 sheriff's department or previous employment. We're
23 different bodies.
24 Q. And there was no way to look at his resume or job
25 application to see if it said that he last worked

04:17
1 at the -- as chief deputy sheriff?
2 MS. MINAHAN: Objection.
3 Go ahead.
4 A. Uhm, we don't keep -- Trumbull County does not keep
5 the greatest records. And I have walked into a
6 situation where, you know, we don't share -- in our
7 offices, we don't share information with the other
8 elected officials. We can't access them.
9 I don't -- I don't have what you are looking
10 for, and I apologize.
11 Q. I understand, but my question is, is there -- it
12 says in the answer to Number 13, defendant denies,
13 or denies for lack of knowledge or information, all
14 remaining allegations contained in paragraph 13.
15 So the lack of knowledge was what he did before
16 he was hired, or before 2015, or what?
17 A. I have to say I don't know. I don't know. I don't
18 know what these --
19 Q. Fair enough. Ma'am, that's okay. I'm not holding
20 it against you. That's appreciated that you don't
21 know and say you don't know.
22 So let's look at 17. It says that: "Defendant
23 denies, or denies for lack of information, the
24 allegations in paragraph 17 of the amended
25 complaint."

04:19
1 And as you can see, paragraph 17 says they
2 didn't notify plaintiff of his termination until
3 eight days after they terminated him.
4 Wasn't that something that was known or should
5 have been known or could have been known?
6 MS. MINAHAN: Objection.
7 Go ahead answered.
8 A. Which one? What are you asking me? Should who
9 have known what?
10 Q. In answering a complaint, a formal complaint served
11 in Federal court, defendant denied, or denied for
12 lack of information, Number 17, which simply says
13 that the defendant didn't notify him of his
14 termination until eight days after his termination.
15 A. Oh, that's not correct at all. I was there the
16 same day that we took action, we had Steve Charles
17 call him.
18 Q. And you were there?
19 A. To the best of my knowledge, Mr. Charles did what
20 he was supposed to do.
21 Q. You don't know?
22 A. The defendant -- I guess I don't know. So I guess
23 that would be lack of information, if you don't
24 know what actually happened.
25 But I do know that -- I was under the

04:21
1  impression that he was called the same day. To the
2  best of my knowledge, he was called, but I can't be
3  certain.
4  Q. And where did you get that information from?
5  A. Mr. Charles, or from our -- that's who was there.
6     He was the assistant.
7  Q. I'm sorry, go ahead. I didn't mean to cut you off.
8  A. Yes. For Mr. Charles, he was instructed to do
9     that.
10 Q. So you don't know if he did or didn't, and he
11    wasn't called to --
12 A. I believe that he was.
13 Q. Before this complaint was answered as denies or
14    denies for lack of information?
15 A. Yes. I believe that it would be denied because he
16    was notified, but he was notified by phone, and we
17    don't know actually when he received -- we don't
18    know actually when the plaintiff received his
19    letter. How could we know exactly when he received
20    it?
21 Q. Okay. So now I'm just trying to get to the basis
22    of it says denies. So did you review this
23    complaint before it was filed?
24 A. Yes.
25 Q. I mean, answer to the complaint, I'm sorry, answer

MICHELE NICOLE FRENCHKO

04:22
1     to the amended complaint.
2        And before this was filed in court was
3     Mr. Charles called and asked if he notified
4     Mr. Cook the day of the termination?
5              MS. MINAHAN: Objection. Foundation.
6        Go ahead.
7  A. To the -- to the best of my knowledge, yes.
8  Q. Who called him?
9  A. Mr. Charles called him.
10 Q. No. Who called Mr. Charles before answering this
11    as denial or denies for lack of information?
12             MS. MINAHAN: Objection. Foundation.
13       Go ahead.
14 A. I don't know.
15 Q. You didn't call him?
16 A. No.
17 Q. And you didn't hear anyone else call him; correct?
18 A. No. I didn't personally hear anyone call him.
19 Q. Okay. So let's look at 26. We looked at 26
20    already. And 27 is fine. Okay.
21       I sent you the Request For Admissions of the
22    Denial -- let me have Christina do that.
23             MS. GROEDEL: Christina is sending now
24       4 and 5.
25 A. Paragraph what, 4 and 5?

MICHELE NICOLE FRENCHKO

04:25
1              MS. GROEDEL: She's sending Exhibits 4
2     and 5, which is our Requests For Admission and
3     your answers.
4              MS. MINAHAN: She's moving on to topic
5     6 and she is sending a new deposition exhibit.
6              THE WITNESS: Topic 6. Okay.
7                 - - - - -
8        (Plaintiff's Exhibits 4 and 5 were marked for
9                 purposes of identification.)
10                - - - - -
11 A. Got it. Got it. It's received, Number 3. Is this
12    -- am I not looking at the right one. Did I just
13    open the same thing? It's 11 pages?
14 Q. No. Let me know when you receive it.
15                - - - - -
16                (Off the record.)
17                - - - - -
18 Q. Number 4 is our Request, and Exhibit 5 is the
19    Commission's responses.
20 A. Okay. I have 4, and I have 5.
21 Q. Great. So I'm asking you about the ones that are
22    identified in paragraph 6 -- section 6 of the
23    deposition notice.
24 A. Okay.
25 Q. So look at -- okay, Number 3 we already discussed.

MICHELE NICOLE FRENCHKO

04:31
1  A. Yes.
2  Q. 4, this was denied?
3  A. Okay.
4  Q. That plaintiff retired from his position as chief
5     deputy sheriff. What is the basis of that denial?
6  A. Plaintiff retired from his position of chief deputy
7     sheriff -- basis for denial --
8  Q. Do you know why that was denied?
9  A. He was appointed -- you know what, I don't
10    remember. I did prepare for this, but it's been
11    like about two and a half weeks ago and I am sorry,
12    I just don't remember.
13 Q. You don't know why Number 4 was denied, is that
14    what you are saying?
15 A. Yes.
16 Q. Okay. Number 5, it wasn't answered. Oh, it was.
17    It was denied. Why was that denied?
18 A. Defendant denies that in 2015 plaintiff was rehired
19    as the full-time -- I don't believe that he was
20    rehired. I believe he was appointed. I believe he
21    was appointed.
22 Q. Wasn't there a break in his employment, ma'am?
23 A. I don't know.
24 Q. You don't know why this was --
25 A. I can't remember.

MICHELE NICOLE FRENCHKO

04:33

1   Q.   You don't know why this was denied?

2   A.   **I don't remember.**

3   Q.   Okay.  7, did you initiate the termination of five

4        employees who were 50 or older?

5   A.   **No.**

6   Q.   Okay.  Next is 13 -- or 12.  We did 13.

7        We looked, during your deposition, about some

8        e-mails or text messages or WhatsApp messages or

9        Facebook messages you shared with someone about

10       some employees that you wanted to get rid of.  One

11       of them was Ernest Cook; correct?

12  A.   **Okay.  You told me to look at 13, and 13 says fire**

13       **or bully senior employees, but you are asking me**

14       **something different.**

15       **Will you, please, just ask me because whenever**

16       **you lump it in with in response to 13, it's confusing**

17       **for me.**

18  Q.   Do you recall -- don't look at anything.  Okay?

19  A.   **Uh-huh.**

20  Q.   Do you recall that we looked, in your deposition,

21       at a series of e-mail or text message or Facebook

22       exchanges you had with someone in which you talked

23       about wanting to get rid of several employees?

24  A.   **I don't recall the specific messages.  Do you have**

25       **them to refresh my memory?**

MICHELE NICOLE FRENCHKO

04:36

1   Q.   If you don't remember, you don't remember.  You

2        don't remember the e-mail exchange?

3   A.   **Somewhat.  I don't remember the specifics, and I**

4        **don't want to say, yes, if I'm not looking at it to**

5        **see exactly what was said in that correspondence.**

6   Q.   Look at Number 17, please.

7   A.   **Yes.**

8   Q.   It says:  "Admit or deny that defendants failed to

9        contact plaintiff formally in writing regarding his

10       termination until eight days after the effective

11       date of his termination."  And that was denied.  Do

12       you see that?

13  A.   **Yes.**

14  Q.   And then it says he was terminated on Thursday,

15       January 21, and the letter notifying him was dated

16       January 25th, 2021.  Is that accurate?

17  A.   **That's the next Monday, yes.**

18  Q.   Okay.  26, I'll forego that one.

19       The question about Number 27 is were --

20  A.   **27, I don't have.  Are you talking about 28?**

21  Q.   No.  Answer 27 on Exhibit 5.

22       MS. MINAHAN:  That wasn't in the

23       topic.

24       MS. GROEDEL:  I have it here.  Oh, no.

25       No.  That was the prior one.  You're right.

MICHELE NICOLE FRENCHKO

04:38

1   Q.   Okay, 28.  You would agree, and we discussed this,

2        that he has been replaced with an interim 911

3        director; correct?

4        MS. MINAHAN:  Objection.

5        Go ahead.

6   A.   **No, I disagree with saying that he's been replaced,**

7        **because in my understanding they're not replaced**

8        **unless it's a formal -- we haven't found anyone**

9        **yet, so I disagree with saying that he's been**

10       **replaced.  There is someone temporarily performing**

11       **his duties.**

12  Q.   For more than a year, for 14 months; correct?

13  A.   **Yes.**

14  Q.   Thank you.

15  A.   **Without an HR director there, too, so we have not**

16       **had an HR director for -- a permanent one --**

17  Q.   That's not the question, but thank you.

18  A.   **Okay.**

19  Q.   Thanks.

20       Is the woman who is -- everyone has been

21       calling Ms. Goldner, in these depositions, as the

22       interim 911 director, so I'm going to keep using

23       the phrase and ask if she has at least ten years

24       less managerial experience than Mr. Cook?

25  A.   **I don't know.**

MICHELE NICOLE FRENCHKO

04:39

1        MS. MINAHAN:  Objection.  I don't

2        think that's in the topic list.

3        MS. GROEDEL:  29, it is.  It's Number

4        6, section 6, Number 29.

5        MS. MINAHAN:  Number 29?  Oh, okay.

6        Okay.

7   Q.   Regardless of whether you want to call him a

8        replacement or interim or whatever -- I mean,

9        is it accurate that Miss Goldner has at least ten

10       years less managerial experience than Mr. Cook?

11  A.   **I'm not sure without looking.**

12  Q.   Okay.  We talked about that, 34.

13       Look at 37, please.

14  A.   **Yes.  Okay.**

15  Q.   Is the -- I know this was denied because the

16       complaint speaks for itself, but the question is

17       did Ms. Godfrey's complaint allege the things

18       stated in Number 37?

19  A.   **Oh, I can't remember.  I didn't look closely at**

20       **that complaint because I don't even know if the**

21       **commissioners were -- I can't remember.  I didn't**

22       **read that.  I don't remember reviewing that**

23       **complaint recently.**

24  Q.   Okay.  And look at Number 50.

25  A.   **Yes.**

MICHELE NICOLE FRENCHKO

04:42

1  Q.  On what happen grounds was 50 denied?

2  A.  On a factual basis.

3      It says: "Admit or deny that the plaintiff

4  self-reported his conviction to each, then, county

5  commissioner."

6      To the best of my knowledge, that didn't

7  occur.

8  Q.  And what is your knowledge?

9  A.  That the commissioners weren't made aware of it.

10  Q.  Okay. Look at Number -- we're on now item 7 of the

11  deposition notice, and we're using the same

12  documents.

13  A.  7?

14  Q.  Yes. So we're going to go through the ones that

15  the commission said it had insufficient

16  information.

17  A.  Okay.

18  Q.  To admit --

19  A.  Okay.

20  Q.  It says, Number 2, the answer of the commission was

21  -- the answer to the question admit or deny that

22  plaintiff received numerous awards for leadership

23  during his employment with Trumbull County. And

24  the commission answered --

25  A.  Okay. I see.

MICHELE NICOLE FRENCHKO

04:44

1  Q.  I'm sorry, "After having made reasonable inquiry,

2  Defendant is unable to admit or deny this request."

3      What was the reasonable inquiry that was made?

4  A.  I was my understanding that our human resources has

5  the files on his employment and that there wasn't

6  any proof of that. That's my understanding.

7  Q.  Ma'am, what do you know, for a fact, was done to be

8  able to answer this? What was the reasonable

9  inquiry that you have personal knowledge of having

10  been taken?

11      MS. MINAHAN: Objection. Personal

12      knowledge isn't a requirement of this. If you

13      are asking for her --

14  Q.  Okay. Any knowledge?

15      MS. GROEDEL: You're right. Any

16      knowledge.

17  A.  My answer is efforts to obtain documents from his

18  file to prove whether or not that occurred. That's

19  something that we worked with our attorneys on,

20  which was obtaining -- or for our attorneys on.

21      We obtained everything that she needed in

22  order to be able to respond to these, and gathered

23  everything and gave them to our legal counsel in

24  order to respond to everything that was asked.

25  Q.  Was his personnel file reviewed in conjunction with

MICHELE NICOLE FRENCHKO

04:46

1  answering Request For Admission Number 2?

2  A.  To my knowledge it was. We gathered everything --

3  I mean, I witnessed employees pulling everything

4  and responding, so I did not personally look at

5  everything that was being submitted, but I was

6  there when it was being sent, and copies were being

7  made and things were -- yeah.

8  Q.  Did you, or any of the commissioners, look in his

9  personnel file to be able to answer whether or not

10  it contained any indication of numerous awards for

11  leadership?

12  A.  I did not. I don't believe that the commissioners

13  did that. At that time we did have a human

14  resources director there, and I would assume that

15  he would be the person who did that, and that all

16  that information was given to legal counsel.

17  Q.  So that's based on your assumption and not any

18  knowledge, right, that you state they did what you

19  believe was done?

20      MS. MINAHAN: Objection.

21      Go ahead.

22  A.  Under my information and belief, that's what

23  happened, my personal information and my belief

24  that those things that I attested to occurred.

25  Q.  Let's look at Number 18. What was the reasonable

MICHELE NICOLE FRENCHKO

04:48

1  inquiry that was made to be able to answer this

2  Request For Admission which states: "Admit or deny

3  that an HR employee informed Plaintiff of his

4  termination"?

5  A.  Well, no one was -- wait. Admit or deny that HR

6  employee -- I can't answer that right now. I don't

7  know. I spoke to this earlier about the letter

8  that was written and sent the next Monday. I

9  believe that that was sent out, just as I believe

10  that the phone call was made.

11  Q.  So in answering this, how many HR employees were

12  there at the time of Mr. Cook's termination?

13  A.  At the time of his termination there was an

14  administrative, there was an HR director -- there

15  were three employees -- no, four, I take that back,

16  but with different duties.

17  Q.  Did any of the commissioners contact those four

18  employees to find out, with certainty, if they had

19  or had not informed plaintiff of his termination?

20  A.  I can't -- I don't know.

21  Q.  You don't though; right? We know that?

22  A.  That's correct.

23  Q.  Okay. Look at 19, what was the reasonable inquiry

24  made to be unable to determine whether the

25  commissioners -- whether the board told plaintiff,

MICHELE NICOLE FRENCHKO

04:50
1 before this lawsuit, the cause of his termination?
2 **A. That's Number 19?**
3 Q. Yep.
4 **A. At no time prior to the initiation -- I don't know**
5 **why this was -- I don't know why this was written,**
6 **because I'm of the understanding that there was a**
7 **letter sent out from human resources on the**
8 **following Monday that the action took place, and**
9 **that there was a phone call. Other than that --**
10 Q. That stated the cause?
11 **A. What?**
12 Q. That stated the cause of his termination?
13 **A. Oh, that stated the cause, I'm sorry.**
14 **To the best of my knowledge, there was no**
15 **cause mentioned for his termination. So the board**
16 **of commissioners officially did not give a cause.**
17 **I didn't give a cause, and, to the best of my**
18 **knowledge, no other commissioner has, but I can't**
19 **really speak for them or discuss things that**
20 **occurred in executive session.**
21 Q. My question was just what steps were taken to be
22 able to answer this?
23 **A. What steps were taken to be able to answer this?**
24 **Conversation with the commissioners, and looking at**
25 **the journal action. Nothing was -- and the**

MICHELE NICOLE FRENCHKO

04:52
1 **letters, the file. There was no named cause.**
2 Q. So in answering it now, the answer would be admit;
3 correct?
4 MS. MINAHAN: Objection.
5 **A. I don't know the strategy or legal reasons for some**
6 **of these answers, so I don't --**
7 Q. I know.
8 In answering it now your answer would be that
9 you admit that prior to the initiation of this
10 lawsuit no reason was given to him for the cause of
11 his termination?
12 **A. Admit or deny that at no time -- I can't answer**
13 **that, because to be -- I mean, I know that Mr. Fuda**
14 **had a very close relationship with the --**
15 **Commissioner Fuda had a very close relationship**
16 **with the plaintiff, Mr. Cook. They were friends.**
17 **So they have clearly had a lot of conversations, so**
18 **I don't think that it's fair to be able to say that**
19 **someone might have misrepresented the board or had**
20 **additional sidebar conversations that no one would**
21 **be aware of. So we wouldn't really be able to**
22 **admit or deny because someone on the board of**
23 **commissioners could have had conversations.**
24 Q. So all you needed to do then was ask the other two
25 commissioners if they told him, and that was done;

MICHELE NICOLE FRENCHKO

04:54
1 correct?
2 MS. MINAHAN: Objection.
3 **A. I don't know.**
4 Q. Did you take any steps -- it says after having made
5 reasonable inquiry, and I am trying to figure out
6 what inquiry the board made to be able to answer
7 this specific question?
8 MS. MINAHAN: Caryn, as you know,
9 lawyers frequently make that reasonable inquiry
10 for their client.
11 MS. GROEDEL: Well, if she doesn't
12 know she should -- you put this down and this
13 is on the list for a long time as I was going
14 to ask this. If she doesn't know what steps
15 were taken, then she should just say "I don't
16 know" and that's fine, we'll move on.
17 Q. Is your answer to say what steps were taken, ma'am,
18 to answer Number 19, you don't know? Ma'am?
19 **A. There is discussion -- no, I know that there was**
20 **discussion with the commissioners.**
21 Q. Now you are saying there was discussions, and one
22 or more of the commissioners definitely did tell
23 him, before the lawsuit, why he was terminated?
24 **A. No. I mean that there was discussions with our**
25 **attorneys.**

MICHELE NICOLE FRENCHKO

04:56
1 Q. Ma'am, what steps were taken to answer Number 19?
2 **A. What steps were taken?**
3 Q. Having made reasonable inquiry, do you see that
4 answer under 19?
5 **A. Yes.**
6 Q. What were the steps that were taken that comprised
7 this reasonable inquiry?
8 **A. I believe I already answered this to the best of my**
9 **ability.**
10 Q. No, you didn't. Well, what is your answer now?
11 **A. Are you asking me to change my answer?**
12 Q. No. Ma'am, please just answer my questions. Stop
13 playing word games.
14 **A. No. I really answered this about three times.**
15 Q. Tell me the steps that were made.
16 **A. I don't remember.**
17 Q. Tell me.
18 **A. I don't remember.**
19 Q. Okay. And you don't know if any were made;
20 correct?
21 **A. I said I don't remember. I mean, I have already**
22 **tried to answer you, but it sounds like you want me**
23 **to change my answer, so, I'm sorry, I can't recall.**
24 Q. Do you know if any steps were made?
25 **A. I said I don't remember.**

MICHELE NICOLE FRENCHKO

04:57
1           - - - - -
2               (Off the record.)
3           - - - - -
4   Q.  Okay.  Okay.  Let's go on to 36.
5   A.  36.  Okay.
6   Q.  I'm sorry look at Number 42, please.
7   A.  42, okay.
8   Q.  Can you tell me what steps were taken as part of
9       the reasonable inquiry to answer Request For
10      Admission 42?
11  A.  I believe under -- to the best of my knowledge,
12      that we were -- that the board of commissioners
13      were asked, and that there were -- and that counsel
14      actually reviewed the meetings to hear what has
15      been said.
16  Q.  Do you know what was said?
17  A.  What was said?
18          Well, first of all, that's not in his name.
19  Q.  I know it said that.  I see that.
20  A.  Okay.
21  Q.  Regardless of whether the meetings are recorded or
22      not --
23  A.  Okay.
24  Q.  Regardless of whether the meetings are recorded or
25      not, is it true that you made a motion to terminate

MICHELE NICOLE FRENCHKO

05:00
1       Mr. Salamone from the transit board but it died for
2       a second?
3           MS. MINAHAN:  Well, objection.  That's
4       not what the Request For Admission read.
5   A.  Exactly.
6           MS. GROEDEL:  If I don't break it
7       down, she's going to say "you need to break it
8       down," so I'm going to break it down.
9           MS. MINAHAN:  Well, I don't --
10      objection.
11  Q.  Okay.
12  A.  I'm looking at Number 42 and -- I'm looking at
13      Number 42, so go ahead.
14  Q.  Did you make a motion to terminate Mr. Salamone?
15  A.  Did I make a motion to terminate him?  Is that the
16      whole question?
17  Q.  That's this question, ma'am.
18  A.  No.  Is it 42, or is it the question that you are
19      posing right now?
20  Q.  I am breaking it down, okay, so that you can't
21      complain that I'm asking too many questions in one
22      question.  When I ask one part of it, you complain
23      about that.  You object to that.
24  A.  Go ahead.
25  Q.  I'm trying to get through this so we can all move

MICHELE NICOLE FRENCHKO

05:01
1       on.
2   A.  I got all night, so go ahead.
3   Q.  Did you make a motion to terminate Mr. Salamone?
4   A.  Yes.
5   Q.  Did the motion die for lack of a second?
6   A.  I don't remember.
7   Q.  Did one or more commissioners say you had not
8       demonstrated cause for his termination?
9   A.  I don't remember, but if it died for lack of a
10      second there would have been no discussion, because
11      the discussion only occurs after there is a second.
12  Q.  What steps were made to be able to answer this
13      question?  And please don't say you believe or you
14      think.  What do you know, for certainty, was done
15      to be able to answer this question?
16  A.  I can't remember, it was a long time ago.
17  Q.  Okay.  45, is that true or false?
18          MS. MINAHAN:  Objection.  That has
19      nothing to do with anything.
20          MS. GROEDEL:  You can object all you
21      want.  You can say that it's not a reason to
22      tell her not to object, and if she says she
23      doesn't know -- she has to answer it, Kathleen.
24      You can object about admissibility later.
25          MS. MINAHAN:  Commissioner, you can go

MICHELE NICOLE FRENCHKO

05:02
1       ahead and answer this absolutely obnoxious
2       request.  Go ahead.
3   A.  What was the question about it?
4   Q.  Is it true or false that on or about July 11th of
5       2022 you were evicted from the residence where you
6       were living at the time?
7   A.  False.
8   Q.  48:  "Admit or deny that plaintiff received no
9       points as a result of the two misdemeanors for
10      which he was convicted."
11          And the answer is:  "Defendant has made
12      reasonable inquiry and can neither admit nor deny
13      this request."
14          Please tell me what was the reasonable inquiry
15      made.
16  A.  I don't remember.
17  Q.  Okay.  49, what was the steps made to be able to
18      answer Number 49 that the board couldn't admit or
19      deny that plaintiff's license was not suspended as
20      a result of either/or both of the misdemeanors for
21      which he was convicted?
22  A.  I know we didn't have the record at the time.
23  Q.  What steps were taken?
24  A.  What steps were taken?
25  Q.  To be able to find out if this was true or not?

MICHELE NICOLE FRENCHKO

05:04
1  A.  I don't remember what steps were taken. I know we
2    didn't have the record.
3  Q.  I didn't hear you.
4  A.  We didn't have a record. I don't remember what
5    steps were taken. Sometimes it takes a while to
6    get things. I'm assuming that that was it, but I'm
7    not allowed to assume, so I don't remember.
8  Q.  Okay. What about 51, what steps were made to be
9    able to answer whether or not Richard Jackson was
10    originally assigned to investigate the matter of
11    plaintiff's conviction for two misdemeanors?
12  A.  Which number was it?
13  Q.  51.
14  A.  Admit or deny Richard Jackson was originally
15    assigned to investigate -- well, we can't -- we
16    can't -- yeah. To the best of my knowledge, it's
17    no.
18  Q.  Were any documents reviewed or anyone spoken to?
19          MS. MINAHAN: Objection.
20          Go ahead.
21  A.  The answer to that is I don't know, and as a
22    commissioner investigations are done at the behest
23    of the board and with the board's knowledge. And
24    if I wasn't aware of something, and I wasn't -- I
25    didn't instruct anyone to do anything, then to the

MICHELE NICOLE FRENCHKO

05:06
1    best of my information and knowledge then it didn't
2    happen. So the answer is no. I don't know.
3        I have never -- I have never heard of this
4    until -- I mean, I can't speak for any other
5    commissioners, but if any of the other
6    commissioners caused something to happen without
7    the majority of the board knowing, it would have
8    been a violation of the sunshine law, and because
9    we don't have a county administrator, so in order
10    to have something to happen, all three
11    commissioners have to discuss it in executive
12    session.
13  Q.  I understand that, ma'am. What steps were taken to
14    answer this question?
15  A.  What steps were taken?
16  Q.  Either you know or you just don't know?
17  A.  Steps were taken. Definitely conversations with
18    the commissioners and -- because it's something
19    that only the commissioners would be able to do,
20    because Richard Jackson was a fiduciary who was
21    only assigned to do things based on the board.
22        So if our legal counsel is discussing with the
23    commissioners and asking us if something happened,
24    and we can't say -- and we can't say -- I can't say
25    that it has, then --

MICHELE NICOLE FRENCHKO

05:08
1  Q.  So you are saying that he had no power to do
2    anything on his own?
3  A.  Absolutely.
4  Q.  So could it have been part of his job duties to
5    have been assigned that in his job duties to
6    investigate the matter?
7  A.  No. That's not part of -- that's not part of what
8    the -- that's not part of what they do. The human
9    resources director doesn't -- the human resources
10    director doesn't investigate convictions or
11    misdemeanors of employees. That's just not part of
12    their job. There are -- in every job description
13    there are additional duties as assigned, but if
14    something was not assigned it would have been done
15    by --
16  Q.  Ma'am, yes or no? These are yes or no questions.
17    Was it part of his job duties --
18  A.  No.
19  Q.  -- to do investigations? Yes, no, or I don't know?
20          MS. MINAHAN: Objection. To do any
21      investigations?
22          MS. GROEDEL: Well, I'm trying to
23      break it down, and then I'm going to go
24      further.
25  A.  You are putting it all together instead of breaking

MICHELE NICOLE FRENCHKO

05:09
1    them down. I already explained an investigation
2    for criminal things has nothing to do with what the
3    job duties of the human resources director are.
4  Q.  Okay. So if somebody had gone to the commissioners
5    and said to you, and the other two commissioners at
6    the time, "Did you assign Richard Jackson to
7    investigate the matter," you all would have given
8    an answer as to yes or no; correct? Is that part
9    correct?
10          MS. MINAHAN: Objection.
11          Go ahead.
12  A.  No one is able to assign the board of
13    commissioner's employee a duty unless the board of
14    commissioners is privy to it and has assigned it.
15  Q.  So if I'm answering this, and I want to know the
16    answer, "Hey, board, did you -- anybody here assign
17    Richard Jackson to investigate the matter of this
18    conviction?" Yes or no?
19  A.  I can say, no, it didn't happen. That didn't
20    happen.
21  Q.  Okay. Thank you.
22  A.  There was no investigation. That -- if --
23  Q.  Okay.
24  A.  There was no conversation. There was no executive
25    session. You are asking -- there was no public

MICHELE NICOLE FRENCHKO

05:10
1     discussion, and something like that would have to
2     have been decided by the board.
3         Unless one of the commissioners, or two of the
4     commissioners, violated the sunshine law or one of
5     them was capable -- and they can't act unilaterally
6     to do something, that's the only time that this
7     could have happened, and it didn't.
8 Q.  Okay. So the answer to that one should be denied;
9     right?
10         MS. MINAHAN: Objection.
11 Q.  Because the only way it could have happened was by
12     a vote, two out of three had to vote to give him
13     that authority; right? Please just answer that yes
14     or no. I want to make sure I'm understanding you,
15     that it didn't happen.
16         To your knowledge, it did not happen that
17     Richard Jackson was assigned to investigate the
18     matter of plaintiff's conviction of the two
19     misdemeanors; correct?
20         MS. MINAHAN: Objection.
21         Go ahead.
22 A.  To my knowledge there was no assignment of that
23     duty and there was no investigation. That's to the
24     best of my knowledge.
25 Q.  Okay. 54, did you or did you not tell Commissioner

MICHELE NICOLE FRENCHKO

05:12
1     Fuda that he was too old to be a commissioner?
2 A.  No.
3         MS. MINAHAN: Objection.
4         Go ahead.
5 A.  No.
6 Q.  So that should be a denial; is that correct?
7         MS. MINAHAN: Objection.
8         Go ahead.
9 A.  I don't know what it should or shouldn't be, but
10     the answer is no.
11 Q.  Okay. You never told him he was too old to be a
12     commissioner; right?
13 A.  I never said that. That's correct.
14 Q.  Okay. 55, was Matt Lewis allowed to resign to
15     avoid discharge?
16 A.  I don't know.
17 Q.  What steps were --
18 A.  I don't know. There was more than one Matt Lewis.
19 Q.  What steps were taken to be able to answer this?
20 A.  Staff pulled records of every name that was
21     requested -- while on this one specifically, staff
22     looked up Matt Lewis's records and we found that
23     there were two Matt Lewises. So we actually
24     researched in the county's files, actual paper
25     files, and insurance cards.

MICHELE NICOLE FRENCHKO

05:14
1 Q.  Were both files, both Matt Lewises' files checked?
2         MS. MINAHAN: Can you repeat what that
3     question was?
4         MS. GROEDEL: She said there were two
5     Matt Lewises, and I said were both their files
6     checked.
7 A.  No. We didn't know which one to check. We looked
8     at both of them and there were more than one with
9     different middle initials, so since you weren't
10     clear, we skipped and went to the next one. I
11     wasn't able to identify -- I wasn't able to
12     identify which Matt Lewis you were referencing.
13 Q.  So did you look at both Matt Lewises' personnel
14     files? That's the question.
15 A.  No.
16 Q.  What steps were taken to answer 56, which says
17     admit or deny that Angela, P-I-E-T-E-A-N-G-E-L, was
18     allowed to resign to avoid discharge?
19 A.  We did the same -- I did the same process. I was
20     actually in the human resources office having the
21     staff look up her file to see what we could find,
22     and insurance cards.
23 Q.  So you asked human resources? Who in human
24     resources did you ask to look through her file?
25 A.  Rebecca Smith and Alexandra DeVengencie-Bush.

MICHELE NICOLE FRENCHKO

05:16
1 Q.  And is it your testimony that you asked both of
2     them to look at her file, and they did so, and they
3     could not tell, from her file, if she was given the
4     opportunity to resign to avoid discharge?
5 A.  There was actually no file.
6         That's correct, and there was no file on her.
7     I have a separation date, or a hire date of -- in
8     2005, and there is -- I believe, based on my
9     records here, 2005, and then leaving in 2006. And
10     there was no file.
11 Q.  What steps were made for Number 57?
12 A.  The same as the other ones.
13         Would you like me to repeat that for every
14     one?
15 Q.  No. I'll summarize, and you can tell me if it's
16     accurate or not.
17         You asked Rebecca Smith and Alexandra to look
18     up Ted Powers' file to be able to answer this, and
19     there was no file. Is that accurate, for Number
20     57?
21 A.  There were files, but based on that, because this
22     one was reviewed, we're unable to -- we don't know.
23 Q.  What do you mean the file was reviewed, but you
24     don't know?
25 A.  There is nothing in the file that indicates that

MICHELE NICOLE FRENCHKO

05:18
1 Ted Powers was permitted to resign to avoid
2 discharge. There is no agreement or anything like
3 that.
4 Q. Okay. Number 58, was Jim Shamrock's file reviewed
5 to be able to answer Number 58?
6 A. Yes.
7 Q. And there was nothing in there that allowed you to
8 say one way or the other; is that correct?
9 A. Everything was reviewed, and this employee retired.
10 There was no resignation. It appears, to my eyes,
11 that they had time and retired.
12 Q. That's what you saw from the file?
13 A. Yes. There was a retirement. There was no
14 resignation, there was a retirement.
15 Q. Did discipline precede his retirement?
16 A. This is not something that you put in your question
17 for me to prepare to take notes on to answer, so I
18 didn't take note of that.
19 Q. Okay. 59, Tom Rush, was his file reviewed to be
20 able to answer 59?
21 A. His was reviewed, yes, and the insurance cards were
22 pulled, and there were two Tom Rushes.
23 Q. So did you review their files?
24 A. I'm sorry, I should have waited until you finished,
25 but because there were two I wasn't sure which one

05:20
1 you wanted me to answer for, so I did not review
2 them.
3 Q. How about 60, employee Massuci, was his or her file
4 reviewed to be able to answer Number 60?
5 A. It says J -- this was another interesting
6 situation. We tried to review everything to the
7 best of our ability, what I did with the employees,
8 and there is no J Massuci.
9 Q. There was no employee employed by Trumbull County
10 with the last name of Massuci?
11 A. No, it says J Massuci.
12 Q. Well, regardless -- now I'm asking if you looked up
13 Massuci?
14 A. We did.
15 Q. Okay. Now my question is did you see any Massuci
16 employee, any employee or former employee by the
17 name of Massuci?
18 A. Yes.
19 Q. Did you look in that person's file, or no?
20 A. No, ma'am. There were three Massucis.
21 Q. So you looked in none of them because you didn't
22 know which one I was referring to; is that correct?
23 A. That's correct.
24 MS. GROEDEL: Hey, Kathleen, what do
25 you want to do? It's almost 5:30 and we have

05:21
1 9, 10, 13 and 15?
2 A. 9, 10, 13 and 15. These are dates -- I'm sorry,
3 I'm not Kathleen, but these are just mostly dates
4 and things that I have all written and ready to
5 give you.
6 MS. MINAHAN: I think we should go
7 forward. I mean, look, Commissioner
8 Cantalamessa is still on the line, it looks
9 like.
10 MR. CANTALAMESSA: I am. I just want
11 to know if we're going to get to me today,
12 that's all.
13 THE WITNESS: We only have like three
14 left for me, and they're very short ones.
15 MR. CANTALAMESSA: You guys let me
16 know. I do have to get moving, though.
17 MS. MINAHAN: Caryn, can we -- I think
18 Commissioner Cantalamessa has three topics. I
19 think these last four are going to go quickly.
20 Can we just try to wrap it up today?
21 THE WITNESS: That's my preference.
22 MS. GROEDEL: Well, I have a client
23 meeting at six that I need to prepare for.
24 MR. CANTALAMESSA: I got to get out of
25 the office anyway, so --

1 THE WITNESS: I want to finish -- I
2 want to finish -- I want to finish mine right
3 now. I have only four of them left. I have
4 been available. I thought mine started at
5 noon. I have been in the meeting since noon,
6 or 12:15. I have been prepared for it to go
7 last Friday, because I thought it was possible
8 that I would be doing this Friday, but others
9 weren't able to, and I was prepared --
10 MS. GROEDEL: I'm just saying that I
11 won't be able to do them today.
12 THE WITNESS: Okay. In the amount of
13 time you have been talking you could have
14 gotten through --
15 MS. GROEDEL: I set five hours for
16 these depositions, from 12:30 to 5:30. And I
17 had to push off a meeting, that I didn't want
18 to start at six, to six. But there was
19 interruptions and delays, and whatever, and I'm
20 not blaming anyone, but it just can't all get
21 done.
22 If everyone is available, we can pick up
23 9 a.m. tomorrow morning.
24 THE WITNESS: No, I'm not finishing
25 this tomorrow. And I don't know that I'll be

1  able to -- maybe another employee can, I can
2  give them my notes.
3      I have been available too much. I can give
4  you these. In the amount of time that you're
5  talking I can just give you the answers to
6  these things, they're basically dates. Do you
7  want them?
8      MS. MINAHAN: Can we let Commissioner
9  Cantalamessa go?
10     MR. CANTALAMESSA: Thank you,
11 Kathleen. I'm still at the office, and I'd
12 like to see my family at some point, too. I'm
13 going to have to do that.
14     If we can reschedule, Kathleen, will you
15 get ahold of me? It's no problem with me.
16     MS. MINAHAN: I will. I will.
17     MR. CANTALAMESSA: Thank you so much.
18     MS. MINAHAN: Yep.
19     MS. GROEDEL: Bye.
20     Let me just tell my meeting at six that I
21 might be late by a few minutes. One moment,
22 please.
23     (Discussion off the record.)
24 Q. Category 9, Mr. Cook had no performance evaluations
25 during his employment, to your knowledge; correct?

05:31
1  A. I think we were on -- whoa.
2  Q. We're done with 7. I'm on topic Number 9.
3  A. Topic Number 9 is plaintiff's performance
4     evaluations and the reason for the lack thereof.
5     So --
6  Q. Did he ever any performance evaluations, ma'am?
7  A. No.
8  Q. That's all I wanted to ask about Number 9.
9  Q. But it says the reasons for lack thereof. You are
10    not going to ask why?
11 Q. No.
12 Q. Okay.
13 Q. 10, why Charles Parks was not terminated for the
14    crimes of which he was convicted. Can you answer
15    that part, ma'am?
16 A. Yes. Well, This is feedback. It's really bad.
17     MS. MINAHAN: I think it's me.
18     - - - - -
19     (Off the record due to technical
20     difficulties.)
21     - - - - -
22 A. You asked about why he was not terminated.
23     Charles Parks was not terminated. He was
24     transferred from his position -- in absence of HR
25     leadership, because we had a vacancy in HR, the

05:33
1  board -- the majority of the board had placed him
2  on unpaid leave, which was contrary to law, and it
3  was contrary to the collective bargaining
4  agreement, so we entered a settlement agreement --
5  because there was a grievance, this was a union
6  employee and it was about to go to arbitration, and
7  had we gone to that we would have, in my opinion,
8  lost because the board did something contrary to
9  the collective bargaining agreement and the revised
10 code.
11     So we're not permitted to violate the law and
12 put someone on unpaid leave, and that's exactly
13 what the majority of the board of commissioners
14 did.
15     So we weren't able to lawfully terminate
16 someone, and what he -- what we did was a
17 settlement agreement between AFSCME 2493 and the
18 board of commissioners, and it was a settlement
19 that was agreed upon on 2/24/23.
20 Q. What was the -- what part of the contract and/or
21 Ohio Revised Code do you claim that he could not be
22 lawfully terminate for failing to feed animals that
23 were in his care during his -- as part of his job
24 duties?
25 A. Revised --

05:35
1      MS. MINAHAN: Objection.
2      Go ahead.
3  A. Revised Code 124.388 for administrative leave.
4      So what happened -- oh, you are asking why he
5  was terminated, or why he couldn't have been
6  terminated.
7      Well, because the collective bargaining
8  agreement prescribes the process for termination,
9  and in order -- for his case, in particular, there
10 was a disciplinary letter, I'm sorry, a pre -- what
11 is it called -- a conference letter to talk about
12 the allegations against him, which was sent, then
13 they had that meeting, and then the board had 15
14 days to take action.
15     So based on the collective bargaining
16 agreement, if we were going to terminate we would
17 have had to do it within 15 days of that meeting.
18 And the board did not take action within the 15
19 days, which meant that the progressive disciplinary
20 action started, and then someone made a mistake by
21 putting him on -- the board, actually the majority
22 of the board, which wasn't me, put him on unpaid
23 leave twice. And a person can't be put on leave,
24 according to the collective bargaining agreement,
25 twice for the same infraction. And that's what

05:37 1    they did.

2        So because it was outside the 15 days, you are

3    not permitted to terminate.  And on top of that,

4    the case wasn't even disposed of, so we wouldn't

5    have been -- you know, arguably, if we would have

6    terminated we would have been terminating someone

7    who hadn't even taken a plea or been proven to be

8    guilty, and they're innocent until that point.

9        So it's a completely different situation, you

10    know, this being a person who is bound by the

11    collective bargaining agreement.  He's a lower

12    level union employee.

13        MS. GROEDEL:  Kathleen, I'm sorry, but

14    there is just no way I'm going to get through

15    this, and I have to go.  I'm going to be late.

16    I already am going to be ten minutes late, and

17    I can't keep -- I can't get to a six o'clock

18    meeting where there are going to be other

19    lawyers to wait for me for 20 minutes.

20        If your client is not going to show up, we

21    will just say that.  But I tried to get through

22    this, but she has long answers and --

23        MS. MINAHAN:  I don't think -- I

24    really -- I think this can be done in ten

25    minutes.

MICHELE NICOLE FRENCHKO

---

05:38 1        MS. GROEDEL:  I can't -- I can't -- I

2    can't.  To be quite honest, I can't -- okay.

3    There were issues with Zoom and this and that,

4    but I'm already late.  I gave five hours.  I

5    told you that I had -- I said I'm sure that we

6    can be done by 5:30, but I did not know --

7 A.   Anything that's not -- the dates and the dollars

8    per hour, these other things can be given, but the

9    questions about the situation --

10 Q.   Well, you keep saying that, but your answers are

11    not that way.

12 A.   It seems like you're -- I'm trying to explain it.

13        MS. GROEDEL:  I just want to say, are

14    we going to finish at another time?  I can't

15    even say how long it will take because her

16    answers defy the normal course of what I'm used

17    to in question/answer, question/answer.

18        She makes me ask questions many times,

19    break them down, then not break them down, and

20    she gives long answers that aren't relevant to

21    the questions I have asked, and I can't get

22    done in ten minutes.

23        And I'm already going to be ten minutes

24    late.  I cannot make other lawyers wait.

25 A.   I just answered Number 13 in my previous answer, by

MICHELE NICOLE FRENCHKO

---

05:39 1    the way.

2 Q.   Okay.  Well --

3 A.   How did the board --

4 Q.   We can go through dates and all that --

5        MS. GROEDEL:  Kathleen, tell me what

6    you want to do.  I have to end now.

7 A.   When did the board learn of the incident?  It was

8    7/29.

9        MS. GROEDEL:  This is off the record.

10    Okay, Kelli.

11        - - - - -

12    (Whereupon, the deposition was adjourned at

13    5:40 p.m.)

14    - - - - -

15

16

17

18

19

20

21

22

23

24

25

MICHELE NICOLE FRENCHKO

---

1
2
       C E R T I F I C A T E

3    The State of Ohio, )
                ) SS:
4    County of Cuyahoga.)

5

6       I, Kelli Rae Page, a Notary Public within
    and for the State of Ohio, and authorized to administer
7    oaths and to take and certify depositions, do hereby
    certify that the above-named witness, MICHELE NICOLE
8    FRENCHKO, was by me, before the giving of her
    deposition, first duly sworn to testify the truth, the
9    whole truth, and nothing but the truth; that the
    deposition as above-set forth was reduced to writing by
10    me by means of stenotypy, and was later transcribed into
    typewriting under my direction; that this is a true
11    record of the testimony given by the witness, and was
    subscribed by said witness remotely by agreement of the
12    parties; that said deposition was taken at the
    aforementioned time, date and place, and was adjourned,
13    pursuant to notice or stipulations of counsel; that I am
    not a relative or employee or attorney of any of the
14    parties, or a relative or employee of such attorney or
    financially interested in this action.  I am not, nor is
15    the court reporting firm with which I am affiliated,
    under a contract as defined in Civil Rule 28 (D).

16

17

18

19       IN WITNESS WHEREOF, I have hereunto set my hand
    and seal of office, at Cleveland, Ohio, this 9th day of
20    May, A.D. 2023.

21

22

23

24    Kelli Rae Page
    _____
25    Kelli Rae Page, Notary Public, State of Ohio
    My commission expires October 30, 2025.

MICHELE NICOLE FRENCHKO

1    <u>DEPOSITION ERRATA SHEET</u>

2    RE: UNITED STATES DISTRICT COURT
         NORTHERN DISTRICT OF OHIO
3        EASTERN DIVISION
         CASE NO. 4:22-CV-00077-BYP, JUDGE BENITA PEARSON

4

     Deponent:       MICHELE NICOLE FRENCHKO
5    Deposition Date:   May 1, 2023

6    To the Reporter:
     I have read the entire transcript of my Deposition taken
7    in the above-captioned matter or the same has been read
     to me. I request that the following changes be entered
8    upon the record for the reasons indicated. I have
     signed my name to the Errata Sheet and authorize you to
9    attach said Errata Sheet to the original transcript.

10   page  line  correction
11   _____
12   _____
13   _____
14   _____
15   _____
16   _____
17   _____
18   _____
19   _____
20   _____
21   _____
22
23   _____NO CHANGES

24

25   _____     _____
     Michele Nicole Frenchko              Date
              MICHELE NICOLE FRENCHKO

# 1

**1** [7] - 1:14, 4:25, 6:2, 6:3, 6:4, 93:5
**10** [5] - 5:24, 6:4, 83:1, 83:2, 86:13
**10/20** [1] - 48:22
**11** [1] - 55:13
**11th** [1] - 72:4
**12** [7] - 41:22, 42:18, 47:17, 47:21, 48:2, 48:4, 57:6
**124.388** [2] - 19:21, 88:3
**1249** [1] - 1:18
**1291** [1] - 2:6
**12:15** [1] - 84:6
**12:30** [1] - 84:16
**13** [14] - 5:24, 6:4, 50:10, 51:12, 51:14, 57:6, 57:12, 57:16, 83:1, 83:2, 90:25
**14** [4] - 33:9, 33:11, 33:14, 59:12
**15** [12] - 5:23, 5:24, 6:4, 33:22, 42:24, 43:4, 83:1, 83:2, 88:13, 88:17, 88:18, 89:2
**17** [5] - 51:22, 51:24, 52:1, 52:12, 58:6
**18** [6] - 36:20, 37:2, 38:14, 63:25
**19** [7] - 41:21, 42:22, 64:23, 65:2, 67:18, 68:1, 68:4

# 2

**2** [12] - 1:18, 3:7, 7:22, 9:11, 9:14, 10:4, 21:1, 21:4, 46:6, 46:7, 61:20, 63:1
**2/24/23** [1] - 87:19
**20** [9] - 42:3, 42:6, 42:7, 42:17, 42:22, 42:23, 43:16, 89:19
**2005** [2] - 80:8, 80:9
**2006** [1] - 80:9
**2010** [3] - 48:8, 48:22, 49:9
**2015** [2] - 51:16, 56:18
**2016** [1] - 50:15
**2020** [1] - 20:19
**2021** [4] - 10:18, 10:19, 33:23, 58:16
**2022** [2] - 20:20, 72:5
**2023** [3] - 1:14, 92:20, 93:5
**2025** [1] - 92:25
**208** [1] - 2:5
**20th** [3] - 20:19, 20:20,

50:15
**21** [5] - 3:7, 43:4, 43:7, 43:20, 58:15
**216.316.3258** [1] - 1:19
**216.831.0042** [1] - 2:11
**2493** [1] - 87:17
**25th** [1] - 58:16
**26** [3] - 54:19, 58:18
**27** [4] - 54:20, 58:19, 58:20, 58:21
**28** [3] - 58:20, 59:1, 92:15
**28601** [1] - 2:10
**29** [3] - 60:3, 60:4, 60:5
**2:21** [1] - 1:13

# 3

**3** [8] - 3:7, 46:7, 46:8, 46:23, 46:24, 47:2, 55:11, 55:25
**30** [4] - 37:19, 38:16, 38:21, 92:25
**33486** [1] - 2:6
**34** [1] - 60:12
**36** [2] - 69:4, 69:5
**37** [2] - 60:13, 60:18
**3rd** [1] - 10:18

# 4

**4** [16] - 3:3, 3:8, 5:24, 6:4, 30:13, 30:16, 30:18, 54:24, 54:25, 55:1, 55:8, 55:18, 55:20, 56:2, 56:13
**4/24** [1] - 5:4
**42** [6] - 69:6, 69:7, 69:10, 70:12, 70:13, 70:18
**440.230.3803** [1] - 2:7
**44107** [1] - 1:19
**44122** [1] - 2:11
**44262** [1] - 2:5
**45** [1] - 71:17
**47** [1] - 3:7
**48** [1] - 72:8
**49** [2] - 72:17, 72:18
**4:22-CV-00077-BYP** [2] - 1:5, 93:3
**4:30** [1] - 38:10

# 5

**5** [23] - 3:8, 5:24, 6:4, 30:12, 30:13, 30:20, 31:2, 31:12, 45:24, 45:25, 47:14, 48:4, 48:5, 48:6, 54:24, 54:25, 55:2, 55:8,

55:18, 55:20, 56:16, 58:21
**50** [3] - 57:4, 60:24, 61:1
**51** [2] - 73:8, 73:13
**54** [1] - 77:25
**55** [2] - 3:8, 78:14
**56** [1] - 79:16
**57** [2] - 80:11, 80:20
**58** [1] - 81:4, 81:5
**59** [2] - 81:19, 81:20
**5:30** [3] - 82:25, 84:16, 90:6
**5:40** [1] - 91:13

# 6

**6** [9] - 5:24, 6:4, 46:15, 55:5, 55:6, 55:22, 60:4
**60** [2] - 82:3, 82:4
**600** [1] - 2:10

# 7

**7** [7] - 5:24, 6:4, 46:18, 57:3, 61:10, 61:13, 86:2
**7/29** [1] - 91:8

# 8

**8** [1] - 32:23

# 9

**9** [9] - 5:24, 6:4, 83:1, 83:2, 84:23, 85:24, 86:2, 86:3, 86:8
**911** [12] - 14:23, 14:24, 15:4, 36:17, 44:14, 45:7, 48:10, 48:21, 50:14, 50:16, 59:2, 59:22
**9th** [1] - 92:19

# A

**A.D** [1] - 92:20
**a.m** [1] - 84:23
**ability** [4] - 4:22, 50:9, 68:9, 82:7
**able** [30] - 7:22, 18:11, 45:18, 62:8, 62:22, 63:9, 64:1, 65:22, 65:23, 66:18, 66:21, 67:6, 71:12, 71:15, 72:17, 72:25, 73:9, 74:19, 76:12, 78:19, 79:11, 80:18, 81:5, 81:20, 82:4, 84:9, 84:11, 85:1, 87:15T
**adult** [1] - 40:17
**adverse** [1] - 35:8
**advice** [1] - 29:14
**advised** [1] - 27:4
**affect** [1] - 4:21
**affiliated** [1] - 92:15

**above-captioned** [1] - 93:7
**above-named** [1] - 92:7
**above-set** [1] - 92:9
**absence** [1] - 86:24
**absolutely** [2] - 72:1, 75:3
**accept** [8] - 25:16, 25:22, 25:24, 26:4, 26:10, 26:12, 26:17, 29:9
**acceptable** [1] - 7:20
**accepted** [1] - 26:5
**access** [1] - 51:8
**according** [1] - 88:24
**accurate** [11] - 22:14, 22:15, 22:17, 31:14, 38:14, 38:21, 40:3, 58:16, 60:9, 80:16, 80:19
**accusation** [1] - 16:24
**accused** [1] - 12:9
**acknowledged** [1] - 25:21
**act** [1] - 77:5
**action** [11] - 7:13, 19:10, 35:8, 48:19, 52:16, 65:8, 65:25, 88:14, 88:18, 88:20, 92:14
**actions** [5] - 6:24, 7:2, 23:9, 23:22, 24:8
**acts** [1] - 32:1
**actual** [1] - 78:24
**additional** [7] - 37:18, 48:9, 48:23, 49:11, 49:12, 66:20, 75:13
**address** [1] - 9:13
**adjourned** [2] - 91:12, 92:12
**administer** [1] - 92:6
**administrative** [3] - 20:1, 64:14, 88:3
**administrator** [1] - 74:9
**admissibility** [1] - 71:24
**Admission** [5] - 55:2, 63:1, 64:2, 69:10, 70:4
**Admissions** [1] - 54:21
**admit** [14] - 49:14, 58:8, 61:18, 61:21, 62:2, 64:2, 64:5, 66:2, 66:9, 66:22, 72:12, 72:18, 73:14, 79:17
**Admit** [3] - 61:3, 66:12, 72:8

MICHELE NICOLE FRENCHKO
Page 1 to 1 of 12
05/12/2023 10:46:32 AM

**aforementioned** [1] - 92:12

**AFSCME** [1] - 87:17

**afterwards** [2] - 27:15, 27:22

**age** [4] - 4:1, 37:24, 38:4, 38:5

**agenda** [1] - 19:16

**ago** [4] - 6:20, 22:10, 56:11, 71:16

**agree** [1] - 59:1

**agreed** [5] - 25:16, 25:21, 26:12, 26:17, 87:19

**agreement** [14] - 15:11, 25:24, 26:9, 29:9, 81:2, 87:4, 87:9, 87:17, 88:8, 88:16, 88:24, 89:11, 92:11

**ahead** [35] - 7:25, 8:1, 8:3, 9:24, 10:1, 35:14, 35:17, 36:25, 37:5, 39:17, 41:3, 41:19, 43:24, 45:10, 49:5, 50:6, 51:3, 52:7, 53:7, 54:6, 54:13, 59:5, 63:21, 70:13, 70:24, 71:2, 72:1, 72:2, 73:20, 76:11, 77:21, 78:4, 78:8, 88:2

**ahold** [1] - 85:15

**Alex** [1] - 7:18

**Alexandra** [3] - 7:9, 79:25, 80:17

**allegations** [6] - 46:8, 46:15, 48:15, 51:14, 51:24, 88:12

**allege** [1] - 60:17

**alleged** [2] - 12:5, 15:3

**allowed** [6] - 28:11, 35:19, 73:7, 78:14, 79:18, 81:7

**almost** [1] - 82:25

**ALSO** [1] - 2:15

**amenable** [1] - 31:4

**amended** [16] - 20:18, 22:9, 31:13, 38:14, 43:16, 46:1, 46:9, 46:16, 47:9, 47:12, 47:15, 47:17, 47:22, 50:11, 51:24, 54:1

**amount** [3] - 18:21, 84:12, 85:4

**Angela** [1] - 79:17

**animals** [1] - 87:22

**answer** [94] - 7:22, 8:3, 8:17, 8:23, 9:2, 9:3, 9:16, 9:20, 10:25, 16:16, 20:12, 20:18, 22:9, 22:11, 24:24,

25:1, 25:6, 27:5, 29:23, 30:3, 31:6, 34:17, 35:15, 35:17, 36:25, 38:6, 40:18, 41:13, 41:19, 42:19, 44:15, 45:11, 45:14, 46:10, 47:10, 47:17, 47:21, 48:13, 49:23, 49:25, 50:1, 50:6, 51:12, 53:25, 58:21, 61:20, 61:21, 62:8, 62:17, 63:9, 64:1, 64:6, 65:22, 65:23, 66:2, 66:8, 66:12, 67:6, 67:17, 67:18, 68:1, 68:4, 68:10, 68:11, 68:12, 68:22, 68:23, 69:9, 71:12, 71:15, 71:23, 72:1, 72:11, 72:18, 73:9, 73:21, 74:2, 74:14, 76:8, 76:16, 77:8, 77:13, 78:10, 78:19, 79:16, 80:18, 81:5, 81:17, 81:20, 82:1, 82:4, 86:14, 90:25

**answered** [11] - 41:10, 44:20, 49:4, 50:8, 52:7, 53:13, 56:16, 61:24, 68:8, 68:14, 90:25

**answering** [12] - 4:15, 7:18, 35:13, 40:23, 52:10, 54:10, 63:1, 64:11, 66:2, 66:8, 76:15

**answers** [12] - 4:12, 6:16, 27:19, 27:21, 46:1, 55:3, 66:6, 85:5, 89:22, 90:10, 90:16, 90:20

**anyway** [1] - 83:25

**apologize** [6] - 6:10, 6:19, 9:11, 12:1, 23:18, 51:10

**APPEARANCES** [1] - 2:1

**application** [1] - 50:25

**appointed** [5] - 48:20, 49:13, 56:9, 56:20, 56:21

**appointing** [5] - 10:20, 10:24, 11:3, 12:14, 13:13

**appointment** [1] - 48:25

**appreciate** [1] - 17:22

**appreciated** [1] - 51:20

**April** [1] - 50:15

**arbitration** [1] - 87:6

**arguably** [1] - 89:5

**argumentative** [1] - 29:24

**assign** [4] - 28:15, 76:6, 76:12, 76:16

**assigned** [13] - 8:18, 27:3, 27:9, 48:9, 49:11, 73:10, 73:15, 74:21, 75:5, 75:13, 75:14, 76:14, 77:17

**assignment** [1] - 77:22

**assistant** [1] - 53:6

**associated** [1] - 7:4

**Associates** [1] - 2:4

**assume** [2] - 63:14, 73:7

**assumed** [1] - 37:18

**assuming** [1] - 73:6

**assumption** [1] - 63:17

**assure** [1] - 6:21

**attach** [1] - 93:9

**attendance** [5] - 2:2, 43:6, 44:4, 44:7, 45:1

**attended** [1] - 33:24

**attention** [1] - 9:12

**attested** [1] - 63:24

**attorney** [10] - 7:20, 25:2, 26:17, 27:13, 28:11, 28:12, 49:20, 49:21, 92:13, 92:14

**attorney/client** [1] - 27:5

**attorneys** [4] - 26:12, 62:19, 62:20, 67:25

**authority** [6] - 10:21, 10:24, 11:3, 12:14, 13:13, 77:13

**authorize** [1] - 93:8

**authorized** [1] - 92:6

**available** [3] - 84:4, 84:22, 85:3

**AVENUE** [1] - 1:18

**averments** [2] - 46:1, 46:4

**avoid** [5] - 9:25, 78:15, 79:18, 80:4, 81:1

**awards** [2] - 61:22, 63:10

**aware** [7] - 21:20, 22:5, 27:18, 28:17, 61:9, 66:21, 73:24

## B

**background** [3] - 23:11, 45:19, 45:20

**bad** [3] - 24:11, 34:2, 86:16

**bargaining** [6] - 87:3, 87:9, 88:7, 88:15, 88:24, 89:11

**based** [8] - 13:12, 26:11,

39:6, 63:17, 74:21, 80:8, 80:21, 88:15

**basis** [14] - 8:25, 21:12, 23:7, 23:19, 25:11, 25:14, 31:8, 31:23, 32:24, 39:8, 53:21, 56:5, 56:7, 61:2

**begin** [1] - 4:11

**beginning** [1] - 10:13

**behalf** [6] - 1:15, 2:8, 2:13, 25:25, 29:10, 49:23

**behavior** [1] - 23:22

**behest** [1] - 73:22

**belief** [4] - 46:3, 48:16, 63:22, 63:23

**believes** [2] - 8:2, 10:3

**benefit** [1] - 42:20

**BENITA** [2] - 1:5, 93:3

**best** [16] - 11:22, 17:2, 17:20, 50:8, 52:19, 53:2, 54:7, 61:6, 65:14, 65:17, 68:8, 69:11, 73:16, 74:1, 77:24, 82:7

**between** [3] - 18:18, 33:10, 87:17

**Bill** [5] - 25:19, 26:15, 28:4, 28:7, 28:12

**blah** [3] - 42:25

**blah-blah-blah** [1] - 42:25

**blaming** [1] - 84:20

**BOARD** [1] - 1:7

**board** [46] - 25:21, 25:25, 26:2, 26:20, 27:9, 27:20, 31:9, 31:11, 31:16, 31:24, 32:11, 32:19, 32:20, 33:24, 35:6, 46:2, 46:9, 46:16, 48:20, 49:7, 64:25, 65:15, 66:19, 66:22, 67:6, 69:12, 70:1, 72:18, 73:23, 74:7, 74:21, 76:12, 76:13, 76:16, 77:2, 87:1, 87:8, 87:13, 87:18, 88:13, 88:18, 88:21, 88:22, 91:3, 91:7

**Board** [4] - 33:1, 33:3, 48:8, 49:10

**board's** [1] - 73:23

**boards** [1] - 35:20

**Boca** [1] - 2:10

**bodies** [1] - 50:23

**body** [1] - 31:9

**bothered** [1] - 12:10

**Boulevard** [1] - 2:10

**bound** [4] - 19:6, 19:7,

24:23, 89:10
**Boys** [1] - 33:17
**break** [11] - 34:11, 34:13, 36:9, 36:11, 56:22, 70:6, 70:7, 70:8, 75:23, 90:19
**breaking** [2] - 70:20, 75:25
**broken** [1] - 11:1
**bully** [1] - 57:13
**Bush** [2] - 7:10, 79:25
**BY** [2] - 3:3, 4:7
**bye** [1] - 85:19

# C

**cannot** [2] - 8:6, 90:24
**Cantalamessa** [4] - 2:17, 83:8, 83:18, 85:9
**CANTALAMESSA** [5] - 83:10, 83:15, 83:24, 85:10, 85:17
**capable** [1] - 77:5
**captioned** [1] - 93:7
**car** [1] - 36:1
**cards** [3] - 78:25, 79:22, 81:21
**care** [1] - 87:23
**Caryn** [7] - 2:4, 2:4, 5:3, 9:15, 42:8, 67:8, 83:17
**CASE** [2] - 1:5, 93:3
**case** [4] - 6:22, 7:4, 88:9, 89:4
**categorically** [1] - 12:7
**categories** [1] - 5:22
**category** [3] - 9:10, 30:12, 85:24
**caught** [1] - 10:9
**caused** [2] - 23:23, 74:6
**certain** [5] - 7:8, 15:7, 18:21, 37:24, 53:3
**certainty** [3] - 17:7, 64:18, 71:14
**certified** [1] - 4:5
**certify** [2] - 92:7, 92:7
**cgroedel@groedel** [1] - 2:7
**cgroedel@groedel-law.com** [1] - 2:7
**Chagrin** [1] - 2:10
**change** [2] - 68:11, 68:23
**changed** [2] - 15:9, 15:18
**changes** [1] - 93:7
**CHANGES** [1] - 93:23
**Charles** [9] - 52:16, 52:19, 53:5, 53:8, 54:3, 54:9, 54:10, 86:13, 86:23

**check** [7] - 23:11, 40:25, 41:5, 41:14, 45:19, 45:20, 79:7
**checked** [2] - 79:1, 79:6
**chief** [4] - 50:13, 51:1, 56:4, 56:6
**Christina** [3] - 43:14, 54:22, 54:23
**circumstances** [1] - 26:7
**Civil** [2] - 4:4, 92:15
**civil** [1] - 26:14
**claim** [2] - 49:22, 87:21
**clarify** [2] - 35:3, 39:18
**classified** [4] - 11:17, 11:20, 18:23, 19:2
**clean** [1] - 23:25
**clear** [3] - 20:3, 44:24, 79:10
**clearly** [1] - 66:17
**Cleveland** [2] - 2:11, 92:19
**client** [5] - 29:18, 49:21, 67:10, 83:22, 89:20
**client's** [1] - 49:23
**clock** [5] - 18:4, 18:16, 44:10, 44:13, 44:18
**close** [3] - 38:5, 66:14, 66:15
**closely** [1] - 60:19
**Co** [1] - 2:4
**Code** [4] - 34:23, 35:5, 87:21, 88:3
**code** [5] - 16:14, 19:14, 19:18, 19:20, 87:10
**collective** [6] - 87:3, 87:9, 88:7, 88:15, 88:24, 89:11
**coming** [1] - 36:1
**commission** [6] - 11:3, 47:20, 61:15, 61:20, 61:24, 92:25
**Commission's** [1] - 55:19
**commissioner** [14] - 7:11, 9:15, 10:5, 10:8, 10:17, 14:12, 14:20, 33:25, 35:25, 61:5, 65:18, 73:22, 78:1, 78:12
**Commissioner** [9] - 8:2, 10:3, 47:7, 66:15, 71:25, 77:25, 83:7, 83:18, 85:8
**commissioner's** [2] - 47:10, 76:13
**Commissioners** [2] - 48:8, 49:10
**COMMISSIONERS** [1] - 1:7

**commissioners** [59] - 7:13, 10:20, 10:22, 10:24, 11:7, 13:8, 14:1, 14:11, 14:15, 14:18, 16:20, 19:13, 19:17, 19:24, 20:6, 25:21, 25:25, 26:13, 26:20, 27:10, 28:13, 29:10, 31:25, 32:20, 34:9, 34:14, 34:19, 35:6, 35:9, 35:22, 46:2, 50:11, 60:21, 61:9, 63:8, 63:12, 64:17, 64:25, 65:16, 65:24, 66:23, 66:25, 67:20, 67:22, 69:12, 71:7, 74:5, 74:6, 74:11, 74:18, 74:19, 74:23, 76:4, 76:5, 76:14, 77:3, 77:4, 87:13, 87:18
**committed** [1] - 15:4
**communication** [3] - 28:19, 29:17, 29:21
**complain** [2] - 70:21, 70:22
**complaint** [30] - 20:12, 20:19, 22:9, 30:21, 30:23, 31:13, 38:14, 38:23, 43:16, 46:1, 46:9, 46:16, 47:9, 47:12, 47:18, 47:22, 49:23, 50:11, 51:25, 52:10, 53:13, 53:23, 53:25, 54:1, 60:16, 60:17, 60:20, 60:23
**complaints** [2] - 7:4, 43:25
**completely** [3] - 12:13, 19:3, 89:9
**component** [2] - 19:11, 19:23
**components** [1] - 40:24
**comprised** [1] - 68:6
**concerning** [3] - 11:23, 29:2, 29:6
**concerns** [1] - 44:2
**concise** [1] - 28:21
**conclude** [1] - 25:23
**conclusion** [4] - 46:12, 49:17, 49:22, 50:5
**conduct** [2] - 12:12, 23:22
**confer** [1] - 8:21
**conference** [4] - 1:10, 16:7, 16:11, 88:11
**conferencing** [1] - 2:3
**conflict** [1] - 28:16
**confused** [1] - 32:15
**confusing** [1] - 57:16

**conjunction** [1] - 62:25
**connected** [1] - 46:24
**connection** [2] - 2:2, 33:5
**considered** [6] - 10:22, 10:23, 13:25, 14:11, 14:15, 40:15
**considering** [3] - 13:21, 14:19, 16:20
**contact** [2] - 58:9, 64:17
**contained** [3] - 6:12, 51:14, 63:10
**contract** [2] - 87:20, 92:15
**contrary** [3] - 87:2, 87:3, 87:8
**controversy** [1] - 24:1
**conversation** [4] - 25:18, 26:3, 65:24, 76:24
**conversations** [4] - 66:17, 66:20, 66:23, 74:17
**convicted** [3] - 72:10, 72:21, 86:14
**conviction** [4] - 61:4, 73:11, 76:18, 77:18
**convictions** [1] - 75:10
**Cook** [23] - 2:16, 11:17, 11:25, 12:1, 13:16, 13:22, 14:4, 22:1, 22:25, 37:8, 37:14, 39:2, 39:22, 40:25, 42:1, 42:3, 45:5, 54:4, 57:11, 59:24, 60:10, 66:16, 85:24
**COOK** [1] - 1:3
**Cook's** [3] - 36:2, 44:25, 64:12
**copies** [1] - 63:6
**copy** [1] - 20:12
**correct** [38] - 6:5, 6:6, 13:23, 13:24, 22:20, 24:16, 24:20, 31:15, 33:20, 33:23, 34:6, 34:7, 36:22, 39:19, 40:12, 41:6, 41:8, 47:10, 52:15, 54:17, 57:11, 59:3, 59:12, 64:22, 66:3, 67:1, 68:20, 76:8, 76:9, 77:19, 78:6, 78:13, 80:6, 81:8, 82:22, 82:23, 85:25
**corrected** [1] - 15:10
**correction** [1] - 93:10
**correspondence** [1] - 58:5
**CORSA** [2] - 28:15, 28:20

MICHELE NICOLE FRENCHKO

05/12/2023 10:46:32 AM

**counsel** [17] - 1:15, 6:17, 22:2, 26:8, 26:14, 26:24, 27:3, 27:8, 28:15, 28:20, 29:18, 29:21, 62:23, 63:16, 69:13, 74:22, 92:13
**counseling** [4] - 42:4, 43:21, 44:1, 44:2
**counselings** [1] - 44:3
**County** [21] - 31:3, 31:21, 31:22, 32:1, 32:7, 32:10, 32:12, 32:14, 32:18, 32:19, 35:6, 42:21, 43:5, 48:8, 49:10, 51:4, 61:23, 82:9, 92:4
**COUNTY** [1] - 1:7
**county** [7] - 24:11, 32:9, 32:21, 44:9, 61:4, 74:9
**County's** [2] - 48:10, 50:14
**county's** [1] - 78:24
**course** [2] - 12:1, 90:16
**court** [3] - 52:11, 54:2, 92:15
**COURT** [2] - 1:1, 93:2
**COVID** [2] - 35:19, 35:24
**crimes** [1] - 86:14
**criminal** [1] - 76:2
**cross** [2] - 1:11, 4:3
**CROSS** [2] - 3:3, 4:6
**cross-examination** [2] - 1:11, 4:3
**CROSS-EXAMINATION** [2] - 3:3, 4:6
**current** [1] - 10:13
**customer** [1] - 17:2
**cut** [1] - 53:7
**Cuyahoga** [1] - 92:4

# D

**D)** [1] - 92:15
**damages** [3] - 21:14, 22:1, 22:25
**Danso** [5] - 25:19, 26:15, 28:4, 28:7, 28:12
**date** [5] - 10:17, 58:11, 80:7, 92:12
**Date** [2] - 93:5, 93:25
**dated** [1] - 58:15
**dates** [5] - 83:2, 83:3, 85:6, 90:7, 91:4
**days** [7] - 52:3, 52:14, 58:10, 88:14, 88:17, 88:19, 89:2

**decided** [6] - 12:18, 13:12, 34:1, 35:8, 77:2
**decision** [5] - 19:12, 34:8, 34:10, 34:15, 35:22
**decisions** [1] - 34:24
**declining** [1] - 30:4
**defendant** [7] - 41:21, 51:12, 51:22, 52:11, 52:13, 52:22, 56:18
**Defendant** [5] - 1:8, 2:13, 48:14, 62:2, 72:11
**defendants** [3] - 31:2, 42:17, 58:8
**defense** [4] - 22:15, 23:7, 23:19, 25:12
**Defense** [6] - 21:13, 23:5, 25:10, 25:15, 29:3, 29:6
**defenses** [5] - 6:13, 20:13, 20:16, 27:19, 40:4
**defined** [1] - 92:15
**definitely** [2] - 67:22, 74:17
**definitively** [1] - 50:19
**defy** [1] - 90:16
**delays** [1] - 84:19
**demonstrated** [1] - 71:8
**denial** [13] - 30:17, 31:6, 31:8, 31:14, 31:15, 32:24, 39:9, 46:18, 47:16, 54:11, 56:5, 56:7, 78:6
**Denial** [1] - 54:22
**denials** [1] - 30:18
**denied** [22] - 31:15, 32:23, 33:23, 39:6, 39:19, 39:20, 40:11, 40:22, 42:20, 52:11, 53:15, 56:2, 56:8, 56:13, 56:17, 57:1, 58:11, 60:15, 61:1, 77:8
**denies** [10] - 48:14, 51:12, 51:13, 51:23, 53:13, 53:14, 53:22, 54:11, 56:18
**deny** [14] - 49:15, 58:8, 61:3, 61:21, 62:2, 62:4, 64:5, 66:12, 66:22, 72:8, 72:12, 72:19, 73:14, 79:17
**department** [9] - 11:11, 11:16, 13:6, 13:7, 13:11, 18:24, 19:10, 32:12, 50:22
**Deponent** [1] - 93:4
**deposed** [2] - 4:5, 28:24

**Deposition** [3] - 1:10, 93:5, 93:6
**deposition** [20] - 6:8, 8:15, 22:23, 29:2, 29:5, 38:1, 41:6, 41:14, 44:23, 45:24, 47:15, 55:5, 55:23, 57:7, 57:20, 61:11, 91:12, 92:8, 92:9, 92:12
**DEPOSITION** [1] - 93:1
**depositions** [4] - 24:7, 59:21, 84:16, 92:7
**deputy** [4] - 50:13, 51:1, 56:5, 56:6
**description** [1] - 75:12
**determine** [7] - 21:25, 22:7, 22:14, 22:22, 22:24, 38:13, 64:24
**DeVengencie** [2] - 7:10, 79:25
**DeVengencie-Bush** [2] - 7:10, 79:25
**die** [1] - 71:5
**died** [2] - 70:1, 71:9
**difference** [4] - 16:8, 18:18, 33:10, 37:24
**different** [12] - 18:23, 19:4, 29:19, 34:12, 47:24, 48:2, 48:23, 50:23, 57:14, 64:16, 79:9, 89:9
**difficulties** [2] - 46:21, 86:20
**directing** [1] - 48:9
**direction** [1] - 92:10
**directly** [1] - 7:16
**director** [15] - 11:24, 36:17, 45:8, 48:21, 50:15, 50:16, 59:3, 59:15, 59:16, 59:22, 63:14, 64:14, 75:9, 75:10, 76:3
**disagree** [3] - 50:2, 59:6, 59:9
**disappear** [1] - 18:20
**discharge** [4] - 78:15, 79:18, 80:4, 81:2
**disciplinary** [6] - 7:12, 10:21, 16:7, 16:10, 88:10, 88:19
**discipline** [33] - 10:23, 11:6, 11:7, 11:8, 11:24, 12:15, 12:18, 13:5, 13:6, 13:21, 14:1, 14:11, 14:15, 14:19, 15:6, 15:22, 15:25, 16:20, 17:6, 17:8, 17:11, 18:8, 19:1, 24:15, 24:19,

25:5, 42:5, 43:21, 44:1, 44:2, 81:15
**disciplines** [2] - 13:9, 44:3
**discovery** [1] - 22:23
**discuss** [2] - 65:19, 74:11
**discussed** [8] - 6:15, 7:7, 10:22, 24:6, 33:19, 33:16, 55:25, 59:1
**discussing** [1] - 74:22
**Discussion** [1] - 85:23
**discussion** [5] - 67:19, 67:20, 71:10, 71:11, 77:1
**discussions** [2] - 67:21, 67:24
**disposed** [1] - 89:4
**dispute** [1] - 9:25
**DISTRICT** [4] - 1:1, 1:1, 93:2, 93:2
**DIVISION** [2] - 1:2, 93:3
**doctor's** [2] - 35:25, 36:1
**document** [3] - 22:24, 34:24, 43:11
**documented** [1] - 45:2
**documents** [17] - 6:15, 6:18, 21:19, 21:22, 22:21, 25:23, 26:1, 29:1, 33:4, 35:5, 38:1, 38:20, 39:4, 40:2, 61:12, 62:17, 73:18
**dog** [4] - 12:2, 13:16, 13:22, 14:21
**doings** [1] - 23:24
**dollars** [1] - 90:7
**done** [13] - 22:13, 38:10, 62:7, 63:19, 66:25, 71:14, 73:22, 75:14, 84:21, 86:2, 89:24, 90:6, 90:22
**door** [1] - 2:5
**down** [11] - 34:11, 34:13, 67:12, 70:7, 70:8, 70:20, 75:23, 76:1, 90:19
**Drive** [1] - 2:5
**due** [4] - 23:9, 35:24, 46:20, 86:19
**duly** [2] - 4:4, 92:8
**during** [11] - 10:7, 10:11, 12:20, 13:1, 18:15, 33:24, 35:19, 57:7, 61:23, 85:25, 87:23
**duties** [9] - 37:18, 59:11, 64:16, 75:4, 75:5, 75:13, 75:17,

76:3, 87:24
**duty** [6] - 48:9, 48:23, 49:11, 49:12, 76:13, 77:23

## E

**e-mail** [4] - 5:7, 20:15, 57:21, 58:2
**e-mails** [1] - 57:8
**easier** [1] - 41:11
**EASTERN** [2] - 1:2, 93:3
**educated** [1] - 28:24
**education** [8] - 39:2, 39:21, 40:12, 40:16, 40:20, 41:1, 41:15, 45:6
**effect** [1] - 18:5
**effective** [1] - 58:10
**efficient** [1] - 41:11
**effort** [3] - 21:15, 22:7, 30:2
**efforts** [5] - 21:18, 21:23, 22:1, 22:25, 62:17
**eight** [3] - 52:3, 52:14, 58:10
**Eighth** [2] - 23:5, 23:6
**either** [5] - 14:22, 21:18, 26:24, 35:25, 74:16
**either/or** [1] - 72:20
**elected** [1] - 51:8
**electronic** [1] - 47:11
**embarrassment** [2] - 24:11, 24:12
**employed** [1] - 82:9
**employee** [32] - 7:2, 12:2, 12:3, 12:13, 13:10, 13:12, 13:16, 13:23, 14:10, 14:22, 14:23, 15:1, 15:22, 16:22, 16:25, 17:8, 18:7, 24:9, 64:3, 64:6, 76:13, 81:9, 82:3, 82:9, 82:16, 85:1, 87:6, 89:12, 92:13, 92:14
**employees** [34] - 6:16, 7:7, 7:8, 7:9, 7:16, 10:19, 10:23, 11:2, 11:5, 11:6, 11:15, 11:18, 13:20, 13:25, 14:5, 14:18, 14:24, 15:4, 15:13, 16:19, 17:10, 17:12, 18:23, 19:7, 57:4, 57:10, 57:13, 57:23, 63:3, 64:11, 64:15, 64:18, 75:11, 82:7
**Employment** [2] -

32:25, 33:2
**employment** [11] - 21:16, 24:6, 34:3, 35:8, 42:24, 43:5, 50:22, 56:22, 61:23, 62:5, 85:25
**employments** [1] - 21:17
**enacted** [2] - 35:19, 35:23
**end** [1] - 91:6
**ending** [1] - 48:14
**entered** [2] - 87:4, 93:7
**entire** [2] - 43:4, 93:6
**entirely** [1] - 29:19
**entirety** [1] - 40:24
**entities** [1] - 31:2
**entitled** [5] - 23:8, 23:14, 41:23, 41:25, 42:19
**entity** [9] - 31:17, 31:18, 31:19, 31:21, 32:6, 32:10
**equivalency** [2] - 40:14, 40:19
**ERNEST** [1] - 1:3
**Ernest** [2] - 2:16, 57:11
**ERRATA** [1] - 93:1
**Errata** [2] - 93:8, 93:9
**especially** [1] - 24:9
**Esq** [2] - 2:4, 2:9
**estoppel** [1] - 25:10
**evaluations** [3] - 85:24, 86:4, 86:6
**evicted** [1] - 72:5
**exactly** [5] - 41:12, 53:19, 58:5, 70:5, 87:12
**examination** [2] - 1:11, 4:3
**EXAMINATION** [3] - 3:2, 3:3, 4:6
**excellent** [1] - 20:24
**exchange** [1] - 58:2
**exchanges** [1] - 57:22
**executive** [6] - 33:25, 34:25, 35:3, 65:20, 74:11, 76:24
**exemplary** [1] - 24:8
**EXHIBIT** [2] - 3:5, 3:6
**Exhibit** [10] - 3:7, 3:7, 4:25, 21:1, 21:4, 46:23, 46:24, 47:2, 55:18, 58:21
**exhibit** [2] - 5:9, 55:5
**Exhibits** [3] - 3:8, 55:1, 55:8
**existed** [1] - 18:12
**experience** [5] - 40:15, 40:19, 45:7, 59:24,

60:10
**expires** [1] - 92:25
**explain** [5] - 8:24, 9:16, 9:17, 10:1, 90:12
**explained** [1] - 76:1
**eyes** [2] - 26:9, 81:10

## F

**Facebook** [2] - 57:9, 57:21
**fact** [7] - 23:25, 27:8, 29:8, 29:14, 39:6, 62:7
**facts** [4] - 27:7, 29:14
**factual** [6] - 25:11, 25:14, 31:8, 31:23, 32:24, 61:2
**failed** [4] - 21:13, 41:21, 42:18, 58:8
**failing** [1] - 87:22
**Fair** [1] - 51:19
**fair** [1] - 66:18
**faith** [5] - 8:20, 21:15, 22:7, 30:2, 34:2
**Falls** [1] - 2:5
**false** [3] - 71:17, 72:4, 72:7
**Family** [1] - 16:21
**family** [2] - 14:25, 85:12
**far** [2] - 17:3, 38:3
**fashion** [2] - 12:14, 34:16
**Federal** [1] - 52:11
**feed** [1] - 87:22
**feedback** [1] - 86:16
**few** [1] - 85:21
**fiduciaries** [1] - 16:9
**fiduciary** [5] - 11:16, 14:2, 16:8, 18:24, 74:20
**figure** [1] - 67:5
**file** [26] - 18:22, 29:23, 30:8, 33:2, 44:6, 44:25, 62:18, 62:25, 63:9, 66:1, 79:21, 79:24, 80:2, 80:3, 80:5, 80:6, 80:10, 80:18, 80:19, 80:23, 80:25, 81:4, 81:12, 81:19, 82:3, 82:19
**filed** [12] - 20:19, 22:9, 22:11, 22:17, 22:19, 32:22, 32:25, 43:11, 49:20, 49:21, 53:23, 54:2
**files** [11] - 6:15, 7:3, 62:5, 78:24, 78:25, 79:1, 79:5, 79:14, 80:21, 81:23
**filing** [1] - 47:11

**financially** [1] - 92:14
**fine** [2] - 54:20, 67:16
**finish** [5] - 4:14, 84:1, 84:2, 90:14
**finished** [1] - 81:24
**finishing** [1] - 84:24
**fire** [1] - 57:12
**firm** [1] - 92:15
**first** [6] - 4:4, 6:2, 14:8, 30:18, 69:18, 92:8
**five** [5] - 36:10, 36:12, 57:3, 84:15, 90:4
**five-minute** [1] - 36:10
**floated** [1] - 10:10
**FLOOR** [1] - 1:18
**Florida** [1] - 2:6
**follow** [4] - 19:5, 25:2, 44:19, 45:13
**following** [2] - 65:8, 93:7
**follows** [3] - 2:3, 4:5, 19:4
**forego** [1] - 58:18
**foregoing** [1] - 16:10
**form** [3] - 24:14, 46:3, 48:16
**formal** [2] - 52:10, 59:8
**formally** [1] - 58:9
**former** [1] - 82:16
**forth** [1] - 92:9
**forties** [1] - 37:21
**forward** [2] - 6:19, 83:7
**forwarding** [1] - 47:6
**foundation** [3] - 8:3, 54:5, 54:12
**four** [4] - 64:15, 64:17, 83:19, 84:3
**Frenchko** [8] - 4:10, 5:7, 8:2, 10:3, 10:8, 46:13, 47:7, 93:25
**FRENCHKO** [5] - 1:11, 4:1, 4:6, 92:8, 93:4
**frequently** [1] - 67:9
**Friday** [2] - 84:7, 84:8
**Friedberg** [1] - 2:10
**friends** [1] - 66:16
**front** [2] - 20:21, 25:6
**Fuda** [3] - 66:13, 66:15, 78:1
**full** [6] - 4:8, 4:23, 40:11, 50:14, 50:16, 56:19
**full-time** [1] - 56:19
**function** [1] - 35:20
**fundraiser** [1] - 18:14
**furtherance** [1] - 24:13

## G

**games** [1] - 68:13

MICHELE NICOLE FRENCHKO

05/12/2023 10:46:32 AM

**gathered** [2] - 62:22, 63:2
**generalities** [1] - 28:12
**generally** [1] - 28:14
**given** [8] - 16:5, 20:4, 63:16, 66:10, 76:7, 80:3, 90:8, 92:11
**glance** [1] - 7:19
**God** [1] - 47:23
**Godfrey's** [1] - 60:17
**Goldner** [9] - 36:18, 36:23, 37:3, 37:16, 39:21, 41:1, 41:15, 59:21, 60:9
**governing** [1] - 31:9
**government** [13] - 31:3, 31:17, 31:22, 31:25, 32:1, 32:2, 32:3, 32:4, 32:5, 32:7, 32:8, 32:10, 32:13
**great** [1] - 55:21
**greatest** [1] - 51:5
**grievance** [1] - 87:5
**Groedel** [2] - 2:4, 2:4
**GROEDEL** [47] - 3:3, 4:7, 5:1, 5:6, 8:5, 8:11, 8:19, 9:4, 9:9, 9:17, 9:24, 16:15, 20:25, 22:12, 22:18, 29:13, 29:22, 30:1, 30:7, 36:10, 38:8, 42:10, 42:13, 43:10, 43:14, 45:12, 49:18, 54:23, 55:1, 58:24, 60:3, 62:15, 67:11, 70:6, 71:20, 75:22, 79:4, 82:24, 83:22, 84:10, 84:15, 85:19, 89:13, 90:1, 90:13, 91:5, 91:9
**grounds** [1] - 61:1
**group** [1] - 11:5
**guess** [3] - 28:12, 52:22
**guessing** [1] - 50:20
**guilty** [1] - 89:8
**guys** [1] - 83:15

**H**

**half** [1] - 56:11
**hand** [1] - 92:19
**handbook** [3] - 16:9, 19:6, 25:4
**handled** [5] - 9:10, 11:11, 13:5, 13:6, 13:10
**hands** [2] - 23:20, 23:25
**HATHAWAY** [1] - 1:18
**head** [2] - 4:13, 19:10
**heads** [6] - 11:11, 11:16,

13:6, 13:7, 13:11, 18:24
**hear** [7] - 4:18, 39:12, 39:25, 54:17, 54:18, 69:14, 73:3
**heard** [2] - 4:16, 74:3
**hearing** [1] - 33:7
**held** [1] - 49:21
**help** [1] - 33:12
**hereby** [1] - 92:7
**hereinafter** [1] - 4:5
**hereunto** [1] - 92:19
**high** [1] - 17:12
**hire** [1] - 80:7
**hired** [2] - 50:14, 51:16
**hit** [1] - 24:3
**hit-skip** [1] - 24:3
**hitting** [1] - 24:2
**hold** [3] - 17:3, 42:15, 43:3
**Hold** [1] - 43:17
**holding** [1] - 51:19
**honest** [3] - 26:6, 34:17, 90:2
**honestly** [1] - 12:11
**hot** [1] - 12:10
**hour** [1] - 90:8
**hours** [2] - 84:15, 90:4
**HR** [11] - 6:16, 7:7, 11:24, 59:15, 59:16, 64:3, 64:5, 64:11, 64:14, 86:24, 86:25
**human** [9] - 62:4, 63:13, 65:7, 75:8, 75:9, 76:3, 79:20, 79:23

**I**

**identification** [3] - 21:5, 47:3, 55:9
**identified** [1] - 55:22
**identify** [2] - 79:11, 79:12
**imagine** [1] - 14:10
**impact** [6] - 7:15, 7:16, 13:10, 13:12, 20:4, 20:7
**impair** [1] - 4:22
**implementing** [2] - 44:10, 44:13
**imposed** [3] - 12:16, 15:6, 17:6
**impression** [1] - 53:1
**IN** [1] - 92:19
**inaccurate** [1] - 31:24
**inappropriate** [5] - 8:7, 9:6, 12:11, 18:8, 18:13
**incident** [3] - 23:23, 24:10, 91:7
**include** [1] - 33:19

**including** [2] - 40:11, 40:24
**incorrect** [1] - 13:19
**INDEX** [2] - 3:1, 3:5
**indicated** [2] - 20:16, 93:8
**indicates** [1] - 80:25
**indication** [1] - 63:10
**individual** [1] - 2:2
**individuals** [1] - 14:13
**information** [25] - 7:2, 22:6, 26:16, 30:19, 46:10, 47:19, 47:20, 48:16, 48:18, 49:1, 49:14, 50:12, 51:7, 51:13, 51:23, 52:12, 52:23, 53:4, 53:14, 54:11, 61:16, 63:16, 63:22, 63:23, 74:1
**informed** [2] - 64:3, 64:19
**infraction** [1] - 88:25
**infractions** [1] - 15:3
**initials** [1] - 79:9
**initiate** [1] - 57:3
**initiation** [2] - 65:4, 66:9
**innocent** [1] - 89:8
**inquiry** [13] - 62:1, 62:3, 62:9, 64:1, 64:23, 67:5, 67:6, 67:9, 68:3, 68:7, 69:9, 72:12, 72:14
**instead** [1] - 75:25
**instruct** [2] - 8:22, 73:25
**instructed** [3] - 8:17, 9:3, 53:8
**instructing** [1] - 29:22
**instruction** [1] - 30:3
**instrumental** [2] - 40:5, 40:23
**insubordination** [1] - 12:11
**insufficiency** [1] - 25:17
**insufficient** [6] - 30:19, 46:2, 46:16, 49:14, 50:17, 61:15
**insurance** [3] - 78:25, 79:22, 81:21
**interested** [1] - 92:14
**interesting** [1] - 82:5
**interfere** [1] - 8:14
**interim** [10] - 36:17, 36:22, 37:2, 37:9, 37:10, 37:15, 37:16, 59:2, 59:22, 60:8
**internal** [4] - 6:14, 6:17, 6:18
**interruptions** [1] - 84:19
**interview** [2] - 21:20, 22:5

**investigate** [7] - 73:10, 73:15, 75:6, 75:10, 76:7, 76:17, 77:17
**investigation** [2] - 76:1, 76:22, 77:23
**investigations** [3] - 73:22, 75:19, 75:21
**involved** [1] - 23:23
**involves** [1] - 7:13
**issue** [2] - 11:23, 29:19
**issues** [5] - 24:5, 44:4, 44:7, 45:1, 90:3
**item** [1] - 61:10
**items** [1] - 13:11
**itself** [1] - 60:16

**J**

**Jackson** [10] - 11:24, 13:16, 13:22, 15:25, 73:9, 73:14, 74:20, 76:6, 76:17, 77:17
**Jackson's** [1] - 12:5
**January** [6] - 10:13, 10:18, 10:19, 33:23, 38:15, 58:16
**Jim** [1] - 81:4
**job** [11] - 37:7, 37:11, 45:16, 50:24, 75:4, 75:5, 75:12, 75:17, 76:3, 87:23
**Job** [1] - 16:21
**jobs** [1] - 14:25
**journal** [4] - 6:24, 7:2, 48:19, 65:25
**journalized** [1] - 48:21
**Judge** [2] - 9:7, 10:1
**JUDGE** [2] - 1:5, 93:3
**July** [1] - 72:4

**K**

**Kathleen** [20] - 2:9, 5:1, 8:14, 9:19, 23:2, 27:15, 28:5, 28:7, 29:7, 29:14, 38:8, 48:3, 49:25, 71:23, 82:24, 83:3, 85:11, 85:14, 89:13, 91:5
**keep** [6] - 9:18, 51:4, 59:22, 89:17, 90:10
**keeping** [1] - 44:9
**Kelli** [6] - 1:12, 21:1, 91:10, 92:6, 92:23, 92:24
**kellipage@ pagereportingservice .comB** [1] - 1:20
**kennel** [1] - 14:21
**kind** [2] - 9:11, 11:1

kminahan@
meyersroman.com [1]
- 2:12
**knowing** [1] - 74:7
**knowledge** [30] - 36:5,
46:3, 47:19, 48:15,
49:1, 50:12, 50:18,
51:13, 51:15, 52:19,
53:2, 54:7, 61:6, 61:8,
62:9, 62:12, 62:14,
62:16, 63:2, 63:18,
65:14, 65:18, 69:11,
73:16, 73:23, 74:1,
77:16, 77:22, 77:24,
85:25
**known** [7] - 6:21, 7:25,
26:21, 52:4, 52:5, 52:9
**knows** [1] - 49:7

## L

**lack** [17] - 47:19, 48:15,
48:18, 49:1, 50:11,
50:18, 51:13, 51:15,
51:23, 52:12, 52:23,
53:14, 54:11, 71:5,
71:9, 86:4, 86:9
**lady** [1] - 44:21
**LAKEWOOD** [1] - 1:19
**language** [2] - 18:8,
18:14
**last** [7] - 8:20, 28:18,
30:2, 50:25, 82:10,
83:19, 84:7
**late** [5] - 85:21, 89:15,
89:16, 90:4, 90:24
**law** [7] - 16:12, 31:4,
50:3, 74:8, 77:4, 87:2,
87:11
**law.com** [1] - 2:7
**lawful** [1] - 4:1
**lawfully** [2] - 87:15,
87:22
**lawsuit** [5] - 31:10,
32:22, 65:1, 66:10,
67:23
**lawyers** [3] - 67:9,
89:19, 90:24
**leadership** [3] - 61:22,
63:11, 86:25
**leading** [1] - 44:23
**learn** [1] - 91:7
**least** [4] - 8:3, 38:16,
59:23, 60:9
**leave** [8] - 20:1, 20:5,
20:8, 87:2, 87:12,
88:3, 88:23
**leaving** [2] - 17:2, 80:9
**led** [1] - 44:13
**left** [2] - 83:14, 84:3

**legal** [10] - 7:3, 26:14,
46:12, 49:17, 49:22,
50:4, 62:23, 63:16,
66:5, 74:22
**legislation** [3] - 34:24,
35:18, 35:23
**less** [4] - 39:2, 39:21,
59:24, 60:10
**lesser** [1] - 24:14
**letter** [7] - 15:19, 53:19,
58:15, 64:7, 65:7,
88:10, 88:11
**letters** [1] - 66:1
**letting** [1] - 38:10
**level** [10] - 12:3, 13:9,
14:5, 14:9, 14:10,
17:12, 89:12
**Lewis** [4] - 2:10, 78:14,
78:18, 79:12
**Lewis's** [1] - 78:22
**Lewises** [2] - 78:23,
79:5
**Lewises'** [2] - 79:1,
79:13
**license** [1] - 72:19
**lieu** [1] - 16:6
**life** [2] - 40:17
**line** [3] - 48:10, 83:8,
93:10
**list** [3] - 6:22, 60:2,
67:13
**listen** [2] - 8:10, 9:23
**litigation** [1] - 21:22
**living** [1] - 72:6
**location** [2] - 34:15,
34:19
**locked** [1] - 22:10
**look** [41] - 4:25, 20:18,
23:5, 25:10, 30:12,
30:20, 32:23, 33:9,
36:7, 37:25, 38:19,
39:4, 40:2, 45:4,
45:24, 47:16, 48:13,
50:10, 50:24, 51:22,
54:19, 55:25, 57:12,
57:18, 58:6, 60:13,
60:19, 60:24, 61:10,
63:4, 63:8, 63:25,
64:23, 69:6, 79:13,
79:21, 79:24, 80:2,
80:17, 82:19, 83:7
**looked** [9] - 5:4, 27:24,
54:19, 57:7, 57:20,
78:22, 79:7, 82:12,
82:21
**looking** [23] - 31:12,
33:14, 42:3, 42:6,
42:7, 42:17, 42:22,
43:2, 43:7, 43:10,
43:12, 46:6, 46:7,

48:1, 51:9, 55:12,
58:4, 60:11, 65:24,
70:12
**looks** [1] - 83:8
**lost** [2] - 6:9, 87:8
**louder** [1] - 4:18
**low** [1] - 17:12
**lower** [5] - 12:3, 13:9,
14:5, 14:8, 89:11
**LPA** [1] - 2:4
**lump** [1] - 57:16

## M

**ma'am** [31] - 8:10, 9:12,
9:21, 11:14, 13:17,
16:17, 20:21, 22:21,
26:1, 32:15, 32:17,
33:11, 38:20, 39:11,
40:18, 44:1, 48:6,
51:19, 56:22, 62:7,
67:17, 67:18, 68:1,
68:12, 70:17, 74:13,
75:16, 82:20, 86:6,
86:15
**Ma'am** [1] - 14:7
**mail** [4] - 5:7, 20:15,
57:21, 58:2
**mails** [1] - 57:8
**majority** [4] - 74:7, 87:1,
87:13, 88:21
**man** [3] - 15:14, 15:15,
15:20
**managerial** [2] - 59:24,
60:10
**manner** [1] - 17:1
**manual** [1] - 18:25
**mark** [2] - 20:25, 43:14
**marked** [3] - 21:4, 47:2,
55:8
**Massuci** [7] - 82:3, 82:8,
82:10, 82:11, 82:13,
82:15, 82:17
**Massucis** [1] - 82:20
**Matt** [8] - 78:14, 78:18,
78:22, 78:23, 79:1,
79:5, 79:12, 79:13
**matter** [7] - 7:12, 73:10,
75:6, 76:7, 76:17,
77:18, 93:7
**matters** [1] - 10:21
**Mauro** [1] - 2:17
**mean** [12] - 23:22, 26:8,
53:7, 53:25, 60:8,
63:3, 66:13, 67:24,
68:21, 74:4, 80:23,
83:7
**meaning** [1] - 32:13
**means** [1] - 92:10
**meant** [1] - 88:19

**meantime** [1] - 9:9
**media** [3] - 18:4, 33:16,
33:20
**medication** [1] - 36:4
**medications** [1] - 4:21
**meet** [4] - 8:21, 45:5,
45:15, 45:21
**meet-and-confer** [1] -
8:21
**meeting** [10] - 33:24,
34:6, 34:9, 83:23,
84:5, 84:17, 85:20,
88:13, 88:17, 89:18
**meetings** [3] - 69:14,
69:21, 69:24
**member** [2] - 26:2, 27:9
**members** [1] - 34:5
**memory** [1] - 57:25
**mentioned** [3] - 16:21,
17:13, 65:15
**message** [1] - 57:21
**messages** [4] - 57:8,
57:9, 57:24
**Meyers** [1] - 2:10
**MICHELE** [5] - 1:10, 4:1,
4:6, 92:7, 93:4
**Michele** [2] - 4:10, 93:25
**mid** [2] - 14:9, 17:12
**middle** [2] - 15:15, 79:9
**might** [4] - 14:23, 17:18,
66:19, 85:21
**Minahan** [4] - 2:9, 28:5,
29:7, 29:8
**MINAHAN** [71] - 5:3,
7:24, 8:9, 8:16, 8:24,
9:8, 9:15, 9:22, 10:2,
16:3, 22:8, 22:16,
22:20, 29:12, 29:16,
29:25, 30:5, 35:11,
35:14, 36:12, 36:24,
37:4, 39:12, 39:16,
41:2, 41:18, 42:8,
42:11, 43:8, 43:13,
43:23, 45:9, 46:11,
47:5, 49:3, 49:16,
50:2, 51:2, 52:6, 54:5,
54:12, 55:4, 58:22,
59:4, 60:1, 60:5,
62:11, 63:20, 66:4,
67:2, 67:8, 70:3, 70:9,
71:18, 71:25, 73:19,
75:20, 76:10, 77:10,
77:20, 78:3, 78:7,
79:2, 83:6, 83:17,
85:8, 85:16, 85:18,
86:17, 88:1, 89:23
**mine** [3] - 43:4, 84:2,
84:4
**minimum** [2] - 45:15,
45:22

MICHELE NICOLE FRENCHKO

**minute** [4] - 36:8, 36:10, 43:15, 43:17
**minutes** [7] - 36:12, 85:21, 89:16, 89:19, 89:25, 90:22, 90:23
**misdemeanors** [5] - 72:9, 72:20, 73:11, 75:11, 77:19
**misrepresented** [1] - 66:19
**Miss** [6] - 29:8, 36:23, 39:21, 41:1, 41:15, 60:9
**miss** [1] - 43:8
**missing** [2] - 6:20, 6:23
**mistake** [1] - 88:20
**mitigate** [3] - 21:13, 22:1, 22:25
**mitigation** [2] - 21:23
**moment** [1] - 85:21
**Monday** [4] - 1:13, 58:17, 64:8, 65:8
**monetary** [9] - 7:14, 7:15, 13:9, 13:12, 19:10, 19:22, 20:3, 20:7
**months** [2] - 22:10, 59:12
**morning** [1] - 84:23
**most** [3] - 14:21, 28:24, 28:25
**mostly** [1] - 83:3
**motion** [6] - 30:8, 69:25, 70:14, 70:15, 71:3, 71:5
**move** [2] - 16:15, 67:16, 70:25
**moving** [2] - 55:4, 83:16
**MR** [5] - 83:10, 83:15, 83:24, 85:10, 85:17
**MS** [118] - 3:3, 4:7, 5:1, 5:3, 5:6, 7:24, 8:5, 8:9, 8:11, 8:16, 8:19, 8:24, 9:4, 9:8, 9:9, 9:15, 9:17, 9:22, 9:24, 10:2, 16:3, 16:15, 20:25, 22:8, 22:12, 22:16, 22:18, 22:20, 29:12, 29:13, 29:16, 29:22, 29:25, 30:1, 30:5, 30:7, 35:11, 35:14, 36:10, 36:12, 36:24, 37:4, 38:8, 39:12, 39:16, 41:2, 41:18, 42:8, 42:10, 42:11, 42:13, 43:8, 43:10, 43:13, 43:14, 43:23, 45:9, 45:12, 46:11, 47:5, 49:3, 49:16, 49:18, 50:2,

51:2, 52:6, 54:5, 54:12, 54:23, 55:1, 55:4, 58:22, 58:24, 59:4, 60:1, 60:3, 60:5, 62:11, 62:15, 63:20, 66:4, 67:2, 67:8, 67:11, 70:3, 70:6, 70:9, 71:18, 71:20, 71:25, 73:19, 75:20, 75:22, 76:10, 77:10, 77:20, 78:3, 78:7, 79:2, 79:4, 82:24, 83:6, 83:17, 83:22, 84:10, 84:15, 85:8, 85:16, 85:18, 85:19, 86:17, 88:1, 89:13, 89:23, 90:1, 90:13, 91:5, 91:9
**Mulberry** [1] - 2:6
**Munroe** [1] - 2:5
**must** [2] - 13:7, 19:12

# N

**name** [8] - 4:8, 12:8, 15:17, 69:18, 78:20, 82:10, 82:17, 93:8
**named** [2] - 66:1, 92:7
**names** [3] - 14:22, 15:13, 15:16
**necessarily** [2] - 16:13, 39:8
**need** [3] - 43:3, 70:7, 83:23
**needed** [2] - 62:21, 66:24
**never** [9] - 25:16, 25:20, 27:7, 27:10, 29:15, 74:3, 78:11, 78:13
**new** [6] - 7:23, 13:19, 21:16, 47:5, 48:24, 55:5
**newly** [1] - 49:12
**next** [5] - 30:12, 57:6, 58:17, 64:8, 79:10
**NICOLE** [5] - 1:11, 4:1, 4:6, 92:7, 93:4
**Nicole** [2] - 4:10, 93:25
**night** [1] - 71:2
**Ninth** [1] - 25:10
**NO** [3] - 1:5, 93:3, 93:23
**non** [1] - 11:16
**nonclassified** [1] - 19:3
**none** [2] - 29:4, 82:21
**nonexhaustive** [2] - 6:22, 7:6
**nonunion** [7] - 11:22, 11:23, 13:14, 14:8, 17:11, 18:19, 19:9
**noon** [1] - 84:5

**normal** [1] - 90:16
**NORTHERN** [2] - 1:1, 93:2
**Notary** [3] - 1:12, 92:6, 92:24
**note** [1] - 81:18
**noted** [1] - 44:6
**notes** [3] - 7:1, 81:17, 85:2
**nothing** [9] - 16:9, 23:1, 45:2, 65:25, 71:19, 76:2, 80:25, 81:7, 92:9
**notice** [7] - 1:14, 45:25, 47:11, 47:15, 55:23, 61:11, 92:13
**notified** [4] - 26:21, 53:16, 54:3
**notify** [2] - 52:2, 52:13
**notifying** [1] - 58:15
**number** [5] - 17:18, 36:19, 42:17, 55:18, 73:12
**NUMBER** [1] - 3:6
**Number** [44] - 7:22, 9:11, 9:14, 32:23, 33:11, 33:14, 33:22, 36:7, 43:4, 43:7, 45:24, 51:12, 52:12, 55:11, 55:25, 56:13, 56:16, 58:6, 58:19, 60:3, 60:4, 60:5, 60:18, 60:24, 61:10, 61:20, 63:1, 63:25, 65:2, 67:18, 68:1, 69:6, 70:12, 70:13, 72:18, 80:11, 80:19, 81:4, 81:5, 82:4, 86:2, 86:3, 86:8, 90:25
**numerous** [2] - 61:22, 63:10

# O

**o'clock** [1] - 89:17
**oaths** [1] - 92:7
**object** [6] - 7:25, 41:18, 70:23, 71:20, 71:22, 71:24
**Objection** [2] - 35:16, 46:11
**objection** [43] - 8:5, 8:8, 8:10, 8:21, 9:5, 16:3, 29:12, 35:11, 35:12, 36:24, 37:4, 39:16, 41:2, 41:18, 43:23, 45:9, 49:3, 49:19, 49:24, 50:4, 51:2, 52:6, 54:5, 54:12, 59:4, 60:1, 62:11, 63:20, 66:4, 67:2,

70:3, 70:10, 71:18, 73:19, 75:20, 76:10, 77:10, 77:20, 78:3, 78:7, 88:1
**objections** [2] - 8:6, 9:18
**obligated** [1] - 30:7
**obnoxious** [1] - 72:1
**obtain** [1] - 62:17
**obtained** [1] - 62:21
**obtaining** [1] - 62:20
**obviously** [1] - 22:8
**occur** [1] - 61:7
**occurred** [4] - 40:5, 62:18, 63:24, 65:20
**occurs** [1] - 71:11
**October** [3] - 20:19, 20:20, 92:25
**OF** [4] - 1:1, 1:7, 4:6, 93:2
**offense** [1] - 12:5
**offenses** [1] - 12:5
**offers** [1] - 42:21
**office** [8] - 18:8, 26:11, 36:1, 36:2, 79:20, 83:25, 85:11, 92:19
**offices** [1] - 51:7
**officially** [1] - 65:16
**officials** [1] - 51:8
**OH** [1] - 1:19
**OHIO** [2] - 1:1, 93:2
**Ohio** [11] - 1:13, 2:5, 2:11, 31:4, 34:23, 35:5, 87:21, 92:3, 92:6, 92:19, 92:24
**Old** [1] - 33:17
**old** [2] - 78:1, 78:11
**older** [1] - 57:4
**one** [63] - 6:3, 9:6, 11:9, 11:23, 12:2, 14:21, 15:4, 15:7, 15:8, 15:10, 15:18, 17:24, 18:2, 18:3, 20:5, 20:6, 20:8, 21:20, 22:5, 26:3, 33:19, 34:5, 35:25, 38:3, 41:9, 42:14, 42:15, 43:3, 43:11, 43:17, 44:12, 45:13, 46:24, 47:5, 49:9, 52:8, 55:12, 57:10, 58:18, 58:25, 59:16, 64:5, 66:20, 67:21, 70:21, 70:22, 71:7, 76:12, 77:3, 77:4, 77:8, 78:18, 78:21, 79:7, 79:8, 79:10, 80:14, 80:22, 81:8, 81:25, 82:22
**One** [1] - 85:21
**ones** [11] - 11:13, 11:20,

14:2, 15:1, 18:13, 18:24, 55:21, 61:14, 80:12, 83:14
**open** [2] - 10:10, 55:13
**opened** [2] - 21:8, 47:9
**opening** [1] - 47:8
**opinion** [2] - 27:12, 87:7
**opportunity** [2] - 16:5, 80:4
**opposed** [1] - 4:12
**order** [5] - 46:5, 62:22, 62:24, 74:9, 88:9
**original** [3] - 20:15, 38:23, 93:9
**originally** [3] - 27:2, 73:10, 73:14
**otherwise** [1] - 22:5
**ourselves** [1] - 31:20
**outside** [2] - 32:1, 89:2
**own** [2] - 23:24, 24:7, 37:11, 75:2

## P

**p.m** [2] - 1:13, 91:13
**page** [2] - 48:11, 93:10
**Page** [4] - 1:12, 92:6, 92:23, 92:24
**PAGE** [3] - 1:18, 3:2, 3:6
**pages** [1] - 55:13
**paid** [2] - 19:15, 41:25
**paper** [1] - 78:24
**paperwork** [2] - 7:3, 27:23
**paragraph** [27] - 30:20, 31:2, 31:12, 36:20, 37:2, 38:13, 39:14, 41:21, 42:3, 43:20, 45:4, 46:6, 46:8, 46:15, 47:14, 47:16, 47:17, 47:21, 48:2, 48:4, 48:14, 50:10, 51:14, 51:24, 52:1, 54:25, 55:22
**Paragraph** [2] - 46:7, 46:18
**paragraphs** [1] - 46:4
**Parks** [2] - 86:13, 86:23
**part** [17] - 8:4, 31:24, 32:4, 40:11, 50:15, 69:8, 70:22, 75:4, 75:7, 75:8, 75:11, 75:17, 76:8, 86:15, 87:20, 87:23
**participants** [1] - 2:2
**particular** [1] - 88:9
**parties** [2] - 92:12, 92:14
**pass** [1] - 45:18
**passed** [2] - 23:11,

45:19
**Patty** [3] - 36:18, 37:2, 37:16
**pay** [6] - 19:23, 20:8, 41:21, 41:22, 42:18
**paying** [1] - 9:12
**PEARSON** [2] - 1:5, 93:3
**pending** [1] - 43:9
**people** [1] - 28:24
**per** [1] - 90:8
**perfected** [1] - 27:12
**performance** [3] - 85:24, 86:3, 86:6
**performing** [1] - 59:10
**period** [2] - 10:5, 10:12
**permanent** [3] - 39:11, 39:15, 59:16
**permitted** [3] - 81:1, 87:11, 89:3
**person** [8] - 17:4, 24:2, 24:25, 34:9, 38:15, 63:15, 88:23, 89:10
**person's** [1] - 82:19
**personal** [4] - 27:12, 62:9, 62:11, 63:23
**personally** [2] - 54:18, 63:4
**personnel** [6] - 18:21, 44:6, 44:25, 62:25, 63:9, 79:13
**phone** [3] - 53:16, 64:10, 65:9
**photographs** [1] - 18:3
**photos** [1] - 18:15
**phrase** [1] - 59:23
**physical** [1] - 35:7
**physically** [3] - 34:19, 34:20, 35:1
**pick** [1] - 84:22
**picked** [1] - 37:10
**PIETEANGEL** [1] - 79:17
**place** [3] - 8:8, 65:8, 92:12
**placed** [2] - 19:25, 87:1
**Plaintiff** [5] - 1:4, 1:15, 2:8, 4:2, 64:3
**plaintiff** [20] - 21:13, 32:25, 37:20, 41:22, 42:18, 43:6, 43:21, 48:9, 52:2, 53:18, 56:4, 56:6, 56:18, 58:9, 61:3, 61:22, 64:19, 64:25, 66:16, 72:8
**plaintiff's** [5] - 34:2, 72:19, 73:11, 77:18, 86:3
**Plaintiff's** [6] - 3:7, 3:7,

3:8, 21:4, 47:2, 55:8
**playing** [1] - 68:13
**plea** [1] - 89:7
**point** [2] - 85:12, 89:8
**points** [1] - 72:9
**policies** [1] - 7:5
**policy** [6] - 16:13, 18:25, 23:10, 24:15, 24:19, 44:18
**political** [3] - 17:24, 18:14, 32:8
**portion** [1] - 31:1
**posing** [1] - 70:19
**position** [6] - 7:23, 48:21, 50:13, 56:4, 56:6, 86:24
**posses** [1] - 50:21
**possible** [1] - 84:7
**posting** [1] - 18:15
**posts** [1] - 33:20
**power** [1] - 75:1
**Powers** [1] - 81:1
**Powers'** [1] - 80:18
**pre** [3] - 16:7, 16:10, 88:10
**pre-disciplinary** [2] - 16:7, 16:10
**precede** [1] - 81:15
**preclude** [1] - 25:4
**preference** [1] - 83:21
**preparation** [8] - 27:22, 29:1, 29:5, 38:1, 38:17, 38:18, 41:5, 41:14
**preparations** [1] - 33:7
**prepare** [6] - 6:7, 6:11, 39:8, 56:10, 81:17, 83:23
**prepared** [8] - 5:23, 6:19, 7:18, 17:18, 20:17, 38:18, 84:6, 84:9
**preparing** [2] - 28:5, 40:5
**prescribes** [1] - 88:8
**presence** [2] - 35:7, 35:20
**PRESENT** [1] - 2:15
**present** [4] - 34:9, 35:1, 35:22
**previous** [3] - 7:3, 50:22, 90:25
**printed** [1] - 20:23
**privilege** [1] - 27:6
**privileged** [2] - 27:7, 29:15
**privy** [1] - 76:14
**problem** [1] - 85:15
**problems** [1] - 44:14
**Procedure** [1] - 4:4

**procedure** [2] - 18:25, 23:10
**process** [7] - 19:5, 25:18, 26:13, 26:18, 29:10, 79:19, 88:8
**produced** [1] - 21:19
**production** [1] - 22:24
**progressive** [6] - 19:1, 24:15, 24:18, 24:19, 25:4, 88:19
**proof** [1] - 62:6
**prosecutor** [1] - 26:15
**prove** [1] - 62:18
**proven** [1] - 89:7
**provided** [1] - 4:3
**Public** [3] - 1:12, 92:6, 92:24
**public** [1] - 76:25
**pulled** [4] - 18:11, 47:25, 78:20, 81:22
**pulling** [1] - 63:3
**purpose** [1] - 4:2
**purposes** [3] - 21:4, 47:2, 55:9
**pursuant** [5] - 1:14, 19:14, 19:17, 35:22, 92:13
**push** [1] - 84:17
**put** [5] - 67:12, 81:16, 87:12, 88:22, 88:23
**putting** [2] - 75:25, 88:21

## Q

**qualifications** [3] - 45:7, 45:15, 45:22
**question/answer** [2] - 90:17
**questions** [16] - 4:22, 5:22, 20:14, 20:23, 24:24, 25:1, 28:25, 38:7, 39:1, 41:9, 68:12, 70:21, 75:16, 90:9, 90:18, 90:21
**quick** [1] - 4:11
**quickly** [1] - 83:19
**quite** [2] - 24:10, 90:2

## R

**Rae** [4] - 1:12, 92:6, 92:23, 92:24
**rate** [1] - 38:9
**rather** [1] - 25:5
**Raton** [1] - 2:6
**RE** [1] - 93:2
**reacquaint** [1] - 40:9
**read** [11] - 5:17, 27:17, 27:19, 44:21, 48:1,

MICHELE NICOLE FRENCHKO

05/12/2023 10:46:32 AM

48:7, 60:22, 70:4, 93:6, 93:7
**reading** [2] - 9:11, 9:14
**ready** [1] - 83:4
**really** [7] - 28:1, 28:21, 65:19, 66:21, 68:14, 86:16, 89:24
**reason** [3] - 66:10, 71:21, 86:4
**reasonable** [12] - 62:1, 62:3, 62:8, 63:25, 64:23, 67:5, 67:9, 68:3, 68:7, 69:9, 72:12, 72:14
**reasons** [4] - 44:12, 66:5, 86:9, 93:8
**Rebecca** [3] - 7:9, 79:25, 80:17
**receive** [3] - 21:7, 46:23, 55:14
**received** [13] - 5:15, 5:19, 27:2, 28:8, 28:9, 47:8, 53:17, 53:18, 53:19, 55:11, 61:22, 72:8
**recent** [1] - 14:21
**recently** [2] - 18:7, 60:23
**recess** [1] - 36:15
**recollection** [4] - 11:22, 17:2, 17:20, 26:7
**record** [16] - 4:9, 8:8, 10:16, 43:6, 44:24, 46:20, 55:16, 69:2, 72:22, 73:2, 73:4, 85:23, 86:19, 91:9, 92:11, 93:8
**recorded** [2] - 69:21, 69:24
**records** [4] - 51:5, 78:20, 78:22, 80:9
**reduced** [1] - 92:9
**referencing** [2] - 45:1, 79:12
**referring** [2] - 23:14, 82:22
**refresh** [1] - 57:25
**regarding** [4] - 26:22, 27:14, 48:18, 58:9
**regardless** [5] - 14:7, 60:7, 69:21, 69:24, 82:12
**regularly** [1] - 35:20
**rehired** [2] - 56:18, 56:20
**reinstatement** [3] - 23:9, 23:15
**relate** [1] - 20:4
**related** [2] - 6:13, 50:21
**relates** [3] - 38:4, 40:15,

45:10
**Relations** [2] - 32:25, 33:2
**relationship** [2] - 66:14, 66:15
**relative** [2] - 92:13, 92:14
**relevant** [1] - 90:20
**remaining** [2] - 48:15, 51:14
**remember** [34] - 4:12, 11:12, 12:6, 12:12, 13:20, 14:22, 15:2, 15:13, 15:16, 17:23, 38:24, 41:4, 56:10, 56:12, 56:25, 57:2, 58:1, 58:2, 58:3, 60:19, 60:21, 60:22, 68:16, 68:18, 68:21, 68:25, 71:6, 71:9, 71:16, 72:16, 73:1, 73:4, 73:7
**remembers** [1] - 8:12
**remote** [1] - 2:2
**remotely** [1] - 92:11
**renumbered** [2] - 42:9, 42:12
**repeat** [4] - 10:25, 39:13, 79:2, 80:13
**repeatable** [1] - 13:18
**rephrase** [2] - 4:17, 23:12
**replaced** [8] - 37:12, 37:14, 39:7, 39:9, 59:2, 59:6, 59:7, 59:10
**replacement** [6] - 36:20, 36:22, 37:2, 39:11, 39:15, 60:8
**replacing** [1] - 38:15
**report** [1] - 7:16
**reported** [1] - 61:4
**Reporter** [1] - 93:6
**REPORTING** [1] - 1:18
**reporting** [1] - 92:15
**Request** [6] - 54:21, 55:18, 63:1, 64:2, 69:9, 70:4
**request** [4] - 62:2, 72:2, 72:13, 93:7
**requested** [2] - 7:19, 78:21
**Requests** [1] - 55:2
**require** [1] - 35:7
**required** [3] - 19:15, 34:25, 44:11
**requirement** [2] - 35:21, 62:12
**requirements** [1] - 45:6
**requires** [1] - 34:24
**reschedule** [1] - 85:14

**research** [1] - 6:17
**researched** [1] - 78:24
**residence** [1] - 72:5
**resign** [6] - 12:25, 16:5, 78:14, 79:18, 80:4, 81:1
**resignation** [2] - 81:10, 81:14
**resigned** [1] - 12:20
**resources** [9] - 62:4, 63:14, 65:7, 75:9, 76:3, 79:20, 79:23, 79:24
**respect** [4] - 10:19, 11:5, 19:1, 47:21
**respond** [3] - 20:17, 62:22, 62:24
**responded** [1] - 38:23
**responding** [3] - 7:21, 17:1, 63:4
**response** [5] - 22:4, 33:5, 33:7, 34:17, 57:16
**responses** [6] - 6:14, 7:5, 22:23, 40:4, 40:6, 55:19
**responsibilities** [2] - 37:8, 37:11
**responsive** [1] - 22:3
**rest** [1] - 19:6
**restroom** [2] - 36:9, 36:11
**result** [4] - 24:7, 24:9, 72:9, 72:20
**resume** [1] - 50:24
**retire** [2] - 12:25, 16:5
**retired** [5] - 12:20, 56:4, 56:6, 81:9, 81:11
**retirement** [3] - 81:13, 81:14, 81:15
**return** [1] - 12:25
**returned** [2] - 12:21, 13:3
**review** [12] - 6:18, 6:25, 25:23, 26:1, 26:6, 29:1, 33:4, 38:25, 53:22, 81:23, 82:1, 82:6
**reviewed** [21] - 5:16, 5:19, 6:11, 6:12, 6:14, 6:15, 6:24, 22:13, 22:21, 27:16, 38:24, 62:25, 69:14, 73:18, 80:22, 80:23, 81:4, 81:9, 81:19, 81:21, 82:4
**reviewing** [1] - 60:22
**revised** [7] - 16:14, 19:14, 19:18, 19:20, 87:9, 87:25, 88:3

**Revised** [3] - 34:23, 35:5, 87:21
**Richard** [11] - 11:24, 12:4, 13:15, 13:22, 15:25, 73:9, 73:14, 74:20, 76:6, 76:17, 77:17
**rid** [3] - 33:17, 57:10, 57:23
**role** [1] - 10:17
**Roman** [1] - 2:10
**Rule** [1] - 92:15
**Rules** [1] - 4:3
**rules** [2] - 4:11, 19:20
**Rush** [1] - 81:19
**Rushes** [1] - 81:22

## S

**Salamone** [3] - 70:1, 70:14, 71:3
**saved** [1] - 43:18
**saw** [2] - 27:16, 81:12
**screen** [1] - 6:9
**seal** [1] - 92:19
**second** [7] - 6:3, 27:4, 33:24, 70:2, 71:5, 71:10, 71:11
**Second** [1] - 21:12
**section** [5] - 47:14, 47:24, 48:6, 55:22, 60:4
**Section** [2] - 45:24, 45:25
**see** [20] - 17:15, 18:11, 30:23, 31:4, 31:6, 34:3, 40:25, 43:17, 46:17, 47:23, 50:25, 52:1, 58:5, 58:12, 61:25, 68:3, 69:19, 79:21, 82:15, 85:12
**seem** [1] - 28:23
**self** [1] - 61:4
**self-reported** [1] - 61:4
**send** [5] - 5:1, 5:9, 21:1, 21:2, 28:13, 43:15
**sending** [3] - 54:23, 55:1, 55:5
**senior** [1] - 57:13
**sense** [1] - 35:2
**sent** [14] - 5:4, 20:15, 25:19, 26:11, 27:18, 27:20, 46:24, 48:3, 54:21, 63:6, 64:8, 64:9, 65:7, 88:12
**separate** [1] - 31:19
**separation** [1] - 80:7
**SERB** [1] - 33:10
**series** [1] - 57:21
**serve** [1] - 12:23

**served** [1] - 52:10
**SERVICE** [1] - 1:18
**service** [15] - 14:25, 25:16, 25:17, 25:22, 25:24, 26:4, 26:10, 26:17, 27:12, 28:8, 28:9, 29:9, 29:19, 29:20
**Services** [1] - 16:21
**session** [6] - 34:1, 34:25, 35:3, 65:20, 74:12, 76:25
**set** [4] - 6:2, 84:15, 92:9, 92:19
**settlement** [3] - 87:4, 87:17, 87:18
**several** [2] - 5:12, 57:23
**severance** [3] - 41:22, 42:1, 42:18
**shaking** [1] - 4:13
**Shamrock's** [1] - 81:4
**share** [2] - 51:6, 51:7
**shared** [1] - 57:9
**sharing** [1] - 18:4
**SHEET** [1] - 93:1
**Sheet** [2] - 93:8, 93:9
**sheriff** [4] - 50:13, 51:1, 56:5, 56:7
**sheriff's** [1] - 50:22
**short** [1] - 83:14
**show** [1] - 89:20
**shown** [2] - 42:13, 42:14
**shows** [1] - 48:20
**sidebar** [1] - 66:20
**signed** [1] - 93:8
**similar** [2] - 11:17, 14:4
**similarly** [1] - 19:4
**simple** [4] - 28:1, 34:18, 39:22, 44:19
**simply** [1] - 52:12
**situation** [6] - 11:12, 23:24, 51:6, 82:6, 89:9, 90:9
**situations** [1] - 17:23
**six** [5] - 83:23, 84:18, 85:20, 89:17
**skateboard** [1] - 24:3
**skip** [1] - 24:3
**skipped** [2] - 48:4, 79:10
**skipping** [1] - 23:6
**Smith** [3] - 7:9, 79:25, 80:17
**social** [4] - 18:4, 33:16, 33:19, 33:20
**someone** [12] - 17:3, 19:23, 20:4, 57:9, 57:22, 59:10, 66:19, 66:22, 87:12, 87:16,

88:20, 89:6
**sometimes** [1] - 73:5
**somewhat** [1] - 58:3
**sorry** [30] - 5:8, 6:2, 6:9, 9:13, 10:9, 10:10, 12:1, 16:4, 20:3, 20:20, 27:11, 27:25, 28:8, 28:9, 30:17, 43:19, 44:22, 46:7, 46:18, 53:7, 53:25, 56:11, 62:1, 65:13, 68:23, 69:6, 81:24, 83:2, 88:10, 89:13
**sought** [1] - 21:16
**sounds** [2] - 22:6, 68:22
**SPBR** [1] - 33:10
**speaking** [3] - 8:6, 9:5, 9:18
**speaks** [1] - 60:16
**specific** [3] - 6:16, 57:24, 67:7
**specifically** [8] - 11:1, 12:6, 12:22, 15:5, 15:16, 23:18, 38:24, 78:21
**specifics** [1] - 58:3
**spoken** [1] - 73:18
**Spriggel** [1] - 2:5
**SS** [1] - 92:3
**staff** [3] - 78:20, 78:21, 79:21
**start** [3] - 4:15, 28:22, 84:18
**started** [4] - 10:16, 44:10, 84:4, 88:20
**State** [6] - 1:13, 32:25, 33:2, 92:3, 92:6, 92:24
**state** [5] - 4:8, 35:19, 49:18, 49:24, 63:18
**statement** [7] - 14:16, 38:13, 38:21, 39:5, 39:18, 40:3, 50:3
**states** [1] - 64:2
**STATES** [2] - 1:1, 93:2
**statutory** [1] - 32:9
**stay** [1] - 24:25
**stellar** [2] - 24:8, 43:6
**stenotypy** [1] - 92:10
**steps** [26] - 21:25, 65:21, 65:23, 67:4, 67:14, 67:17, 68:1, 68:2, 68:6, 68:15, 68:24, 69:8, 71:12, 72:17, 72:23, 72:24, 73:1, 73:5, 73:8, 74:13, 74:15, 74:17, 78:17, 78:19, 79:16, 80:11
**Steve** [1] - 52:16
**still** [8] - 18:23, 19:24,

22:15, 31:14, 31:15, 50:4, 83:8, 85:11
**stipulations** [2] - 1:14, 92:13
**stop** [1] - 68:12
**strategy** [1] - 66:5
**strike** [2] - 16:15, 30:11
**stuff** [1] - 24:12
**subdivision** [3] - 32:8, 32:13, 32:17
**subject** [6] - 11:6, 11:7, 17:8, 17:11, 24:18, 42:4
**subjects** [1] - 20:11
**submitted** [2] - 21:22, 63:5
**subscribed** [1] - 92:11
**sue** [1] - 31:4
**sued** [2] - 26:2, 31:12
**sufficient** [2] - 46:10, 48:16
**suggestion** [1] - 41:11
**Suite** [1] - 2:10
**summarize** [1] - 80:15
**sunshine** [2] - 74:8, 77:4
**supercede** [1] - 19:20
**superior** [1] - 18:9
**supersede** [1] - 16:13
**supposed** [1] - 52:20
**surrounding** [2] - 24:1, 24:2
**suspended** [2] - 19:23, 72:19
**suspension** [5] - 12:19, 12:23, 13:1, 19:15
**SW** [1] - 2:6
**sworn** [2] - 4:4, 92:8

**T**

**technical** [2] - 46:20, 86:19
**Ted** [2] - 80:18, 81:1
**temporarily** [2] - 38:15, 59:10
**temporary** [2] - 39:10, 39:15
**ten** [6] - 59:23, 60:9, 89:16, 89:24, 90:22, 90:23
**Tenth** [3] - 25:14, 29:2, 29:6
**terminate** [9] - 34:2, 69:25, 70:14, 70:15, 71:3, 87:15, 87:22, 88:16, 89:3
**terminated** [20] - 15:12, 15:18, 15:21, 15:23, 16:1, 16:4, 17:4,

23:13, 37:8, 37:9, 52:3, 58:14, 67:23, 86:13, 86:22, 86:23, 88:5, 88:6, 89:6
**terminating** [1] - 89:6
**termination** [32] - 15:7, 15:8, 15:9, 15:10, 16:6, 23:16, 23:17, 25:5, 35:7, 36:2, 42:4, 43:22, 45:5, 45:16, 45:21, 52:2, 52:14, 54:4, 57:3, 58:10, 58:11, 64:4, 64:12, 64:13, 64:19, 65:1, 65:12, 65:15, 66:11, 71:8, 88:8
**terms** [2] - 18:19, 45:6
**testify** [3] - 5:23, 10:4, 92:8
**testimony** [2] - 80:1, 92:11
**text** [2] - 57:8, 57:21
**THE** [7] - 36:8, 55:6, 83:13, 83:21, 84:1, 84:12, 84:24
**theirs** [1] - 19:4
**thereof** [2] - 86:4, 86:9
**they've** [1] - 42:11
**thinks** [1] - 7:20
**three** [16] - 4:11, 13:14, 13:20, 14:13, 18:13, 28:18, 34:8, 34:14, 34:18, 64:15, 68:14, 74:10, 77:12, 82:20, 83:13, 83:18
**Thursday** [1] - 58:14
**timely** [1] - 17:1
**today** [7] - 5:20, 39:8, 40:6, 40:10, 83:11, 83:20, 84:11
**today's** [1] - 38:25
**together** [1] - 75:25
**Tom** [2] - 81:19, 81:22
**tomorrow** [2] - 84:23, 84:25
**took** [5] - 7:1, 37:7, 52:16, 65:8
**top** [3] - 42:14, 42:15, 89:3
**topic** [10] - 8:18, 9:16, 10:4, 45:10, 55:4, 55:6, 58:23, 60:2, 86:2, 86:3
**topics** [2] - 6:13, 83:18
**track** [1] - 44:9
**transcribed** [1] - 92:10
**transcript** [2] - 93:6, 93:9
**transcripts** [1] - 22:23
**transferred** [1] - 86:24

MICHELE NICOLE FRENCHKO

transit [1] - 70:1
tried [4] - 8:24, 68:22, 82:6, 89:21
trouble [1] - 28:25
true [6] - 39:5, 69:25, 71:17, 72:4, 72:25, 92:10
TRUMBULL [1] - 1:7
Trumbull [24] - 31:3, 31:21, 31:22, 32:1, 32:4, 32:7, 32:10, 32:12, 32:13, 32:17, 32:18, 32:19, 32:20, 35:6, 42:20, 43:5, 48:8, 48:10, 49:10, 50:14, 51:4, 61:23, 82:9
truth [5] - 46:3, 48:17, 92:8, 92:9
try [4] - 28:21, 33:12, 44:19, 83:20
trying [7] - 43:17, 45:13, 53:21, 67:5, 70:25, 75:22, 90:12
twice [2] - 88:23, 88:25
two [20] - 11:11, 14:24, 15:4, 17:14, 17:17, 17:23, 34:12, 36:8, 56:11, 66:24, 72:9, 73:11, 76:5, 77:3, 77:12, 77:18, 78:23, 79:4, 81:22, 81:25
two-minute [1] - 36:8
type [1] - 19:25
typewriting [1] - 92:10

## U

ultimate [1] - 19:12
unable [3] - 62:2, 64:24, 80:22
unacceptable [1] - 12:13
unclean [1] - 23:20
under [9] - 24:15, 24:19, 31:4, 52:25, 63:22, 68:4, 69:11, 92:10, 92:15
unilaterally [1] - 77:5
union [17] - 11:15, 11:17, 11:19, 11:20, 12:2, 13:14, 13:21, 14:5, 14:7, 17:11, 18:10, 18:16, 18:19, 18:20, 19:9, 87:5, 89:12
unions [1] - 19:5
UNITED [2] - 1:1, 93:2
unless [3] - 59:8, 76:13, 77:3

unpaid [6] - 12:19, 19:15, 20:5, 87:2, 87:12, 88:22
up [13] - 9:6, 24:1, 25:2, 37:10, 44:13, 47:9, 78:22, 79:21, 80:18, 82:12, 83:20, 84:22, 89:20
upper [1] - 14:9
utterly [1] - 8:7

## V

vacancy [1] - 86:25
verbal [7] - 4:12, 17:25, 18:1, 18:6, 18:9, 18:10, 18:20
via [1] - 2:2
Video [1] - 1:10
video [1] - 2:2
vigilant [1] - 21:17
violate [1] - 87:11
violated [1] - 77:4
violation [1] - 74:8
virtual [1] - 35:20
VOLUME [1] - 1:6
vote [5] - 12:15, 19:17, 35:2, 77:12
voted [2] - 34:6, 36:2
votes [1] - 35:1
vs [1] - 1:5

## W

wait [9] - 5:25, 6:2, 16:4, 27:4, 30:16, 45:18, 64:5, 89:19, 90:24
Wait [1] - 6:10
waited [1] - 81:24
waiting [3] - 27:2, 27:8, 28:14
waived [2] - 26:19
walked [1] - 51:5
wants [1] - 25:2
warden [2] - 13:16, 13:22
warned [1] - 24:14
warning [3] - 17:25, 18:1, 18:9
warnings [1] - 18:20
week [1] - 6:20
weeks [2] - 28:18, 56:11
weeks' [2] - 41:22, 42:18
welcome [2] - 10:6, 48:12
WhatsApp [1] - 57:8
whatsoever [1] - 45:1
WHEREOF [1] - 92:19
whoa [1] - 86:1

whole [3] - 40:17, 70:16, 92:9
wind [1] - 10:9
withdraw [2] - 8:21, 30:2
WITNESS [9] - 3:1, 36:8, 55:6, 83:13, 83:21, 84:1, 84:12, 84:24, 92:19
witness [5] - 8:16, 9:2, 92:7, 92:11, 92:11
witnessed [1] - 63:3
woman [3] - 15:14, 15:15, 59:20
word [4] - 5:17, 19:12, 68:13
workday [1] - 17:25
workplace [1] - 18:5
wrap [1] - 83:20
writing [2] - 58:9, 92:9
written [3] - 64:8, 65:5, 83:4
wrote [1] - 44:21

## X

x223 [1] - 2:11

## Y

year [1] - 59:12
years [7] - 37:19, 38:16, 38:22, 42:24, 43:5, 59:23, 60:10
younger [3] - 37:19, 38:16, 38:22

## Z

Zoom [4] - 1:10, 2:2, 6:9, 90:3

MICHELE NICOLE FRENCHKO