| | | |
|---|---|---|
| **ERNEST COOK** | : | **Case Number:** 4:22-cv-00077 BYP |
| Plaintiff, | : | **Judge:** Benita Pearson |
| -vs- | : | |
| **BOARD OF TRUMBULL COUNTY COMMISSIONERS** | : | |
| Defendants. | : | |

## COMMISSIONER NIKI FRENCHKO'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR SANCTIONS

### I. INTRODUCTION

"[O]ne man's vulgarity is another man's lyric." – Justice Harlan, *Cohen v. California*, 403 U.S. 15, 91 S. Ct. 1780 (1971). "If there is a bedrock principle underlying the First Amendment, it is that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable." – Justice Brennan, *Texas v. Johnson*, 491 U.S. 397, 414, 109 S. Ct. 2533 (1989).

Plaintiff Earnest Cook's ("Plaintiff") Motion for Sanctions concerning Commissioner Niki Frenchko ("Frenchko") is without merit because: (1) a non-attorney's offensive comments in her own home are protected under the First Amendment; (2) Commissioner Frenchko did not violate Civ. R. 30 or Civ. R. 37, and (3) Commissioner Frenchko was not drinking wine during the deposition. Plaintiff's Motion is requesting that this Court violate the First Amendment and punish Commissioner Frenchko for

engaging in protected speech that offended Plaintiff's Counsel. The Supreme Court has long held that offensive speech is protected under the First Amendment, and this includes vulgar comments. *See e.g.*, *Cohen*, 403 U.S. 15. Indeed, if the First Amendment only protected speech that everyone found agreeable, the First Amendment would have little meaning at all.

It is evident here that Plaintiff's Counsel, Caryn Groedel ("Groedel") was offended, and she is angry. However, Ms. Groedel does not present a logical argument explaining how an offensive comment is even capable of "delaying" or "impeding" a deposition. More importantly, according to Ms. Groedel's own representations, Ms. Groedel was the person demanding that the remainder of the deposition was delayed to a second day. Commissioner Frenchko, according to Ms. Groedel's own representations, wanted to *finish* the deposition, which is the opposite of trying to "delay" or "impede" a deposition.

### A. Commissioner Frenchko was not Drinking Wine.

Commissioner Frenchko sat for depositions occurring over three separate days. She was deposed in her individual capacity on March 16, 2023. She was deposed as a corporate representative under Civ. R. 30(b) for two days on May 1, 2023, and May 5, 2023. (Frenchko Declaration, attached as Exhibit 1).

As an initial matter, Commissioner Frenchko has Postural Orthostatic Tachycardia Syndrome ("POTS"), and she had a migraine on the day of her individual deposition (March 16, 2023). (Id.) Commissioner Frenchko considered requesting to continue the deposition because of her migraine, but she decided to push through it. (Id.) Commissioner Frenchko had to wear sunglasses at one point because of light sensitivity. (Id.) Thus, she fought to not delay the deposition despite Plaintiff's allegations otherwise.

2

Ms. Groedel has no clue what Commissioner Frenchko was drinking, yet she has decided to falsely state that Commissioner Frenchko was drinking wine out of a wine glass. (See Plaintiff's Motion for Sanctions, pg. 2). Commissioner Frenchko was not drinking out of a "wine glass" at all. (Frenchko Declaration). She was drinking out of a water goblet from a set she purchased at Pier 1 Imports. (Id.) Commissioner Frenchko did not drink wine in one single deposition. She only drank water, coffee, and NUUN electrolyte supplements to hydrate and manage POTS symptoms. (Id., see also, Ex. 2, which is an image of her lemon-lime electrolyte supplements). Any yellowish liquid that Ms. Groedel believes she saw was merely a lemon-lime electrolyte tablet.

There is nothing wrong with drinking electrolytes out of goblet when you have POTS or a migraine, and Ms. Groedel is just wrong regarding her "white wine" allegations.[1]

**B. Frenchko's Comments did not Delay any Deposition.**

Commissioner Frenchko is not an attorney. She is not subject to the Rules of Professional Conduct. Plaintiff's Motion argues that Commissioner Frenchko delayed her Civ. R. 30(b)(6) deposition. However, the facts illustrate that Ms. Groedel was the person who delayed the deposition.

The First day of the Civ. R. 30(b)(6) deposition occurred on May 1, 2023. (Id.) Commissioner Frenchko only received notice that she was required to sit for one day. (Id.) As of May 5, 2023, the Parties had not stipulated, and this Court had not ordered, that Plaintiff was entitled to depose Commissioner Frenchko for a second day in her

---

[1] These allegations are based on inadmissible speculation, and Ms. Groedel has no personal knowledge of what was in the wine glass. Although Ms. Groedel is angry, it is not proper or admissible to merely guess that a person was drinking wine during a deposition based on nothing other than speculation.

representative capacity. (Id.) Commissioner Frenchko arrived at the Civ. R. 30(b)(6) deposition at the time noticed, she sat there for approximately five hours, and she was prepared to answer approximately 95 questions. (Id.)

When there were less than two whole questions left, Ms. Groedel—not Commissioner Frenchko—requested that the Parties delay the conclusion of the deposition to another day. (Plaintiff's Motion at pg. 2). According to Ms. Groedel's own representations in the Motion, Ms. Frenchko wanted to finish the deposition, which is the exact opposite of trying to "delay" or "impede" a deposition. (Id.)

After Ms. Groedel was finished for the day, Plaintiff's Motion points out that Ms. Frenchko used an offensive comment "off the record" while Ms. Fenchko was sitting in her own home—not a courtroom. (Id., see also, Frenchko Declaration). In fact, the Declaration attached to the Motion states that Commissioner Frenchko made "her comment immediately following the **conclusion** of her testimony for the day." (Plaintiff's Motion; Exhibit 1 at ¶4) (emphasis added). Consequently, Commissioner Frenchko was just a non-attorney speaking from her own home when she offended Ms. Groedel.[2]

During that second day of the corporate deposition, the deposition started late because Ms. Groedel was late. That deposition lasted 32 minutes, which included a break for Ms. Groedel to prepare more questions.

It is temporally impossible that Commissioner Frenchko could have delayed or impeded the deposition by using an offensive description of Ms. Groedel *after the deposition was concluded*, when it was Ms. Groedel who was arguing to delay the

---

[2] It is unclear that this Court even has the subject matter jurisdiction or power to sanction a person for insulting another person within their own home after a deposition.

conclusion of the deposition, and further delayed depositions by arriving late. Ms. Groedel is offended, and she is lashing out at Commissioner Frenchko through this Motion.³

## II. LAW AND ARGUMENT

### A. The First Amendment Protects Offensive Speech.

Offensive speech is protected speech. In *Cohen*, 403 U.S. 15, the Supreme Court overturned the conviction of a man who was arrested for wearing a jacket that had "F\*\*k the Draft" printed on it within a courtroom corridor. The Court held that the word "F\*\*K" was not obscenity because it was not used erotically. *Id*. at 19-20. The Court held that the word "F\*\*K" was not a fighting word because wearing the jacket would not provoke a reasonable person into a violent act. *Id*. Regarding the word "F\*\*K," the Supreme Court wrote the following:

> For, while the particular four-letter word being litigated here is perhaps more distasteful than most others of its genre, **it is nevertheless often true that one man's vulgarity is another's lyric**. Indeed, we think it is largely because governmental officials cannot make principled distinctions in this area that the Constitution leaves matters of taste and style so largely to the individual. Id. at 25 (emphasis added).

Therefore, curse words in most circumstances are protected words, and a government cannot punish individuals for choosing words that are offensive to certain listeners. "That the air may at times seem filled with verbal cacophony is, in this sense not a sign of weakness but of strength." *Id*., s*ee also*, *Matal v. Tam,* 137 S.Ct. 1744, 1763 (2018) (where the Court has recently stated that, "[g]iving offense is a viewpoint"); *see*

---

³ Plaintiff's Motion also suggests that Commissioner Frenchko allegedly did not answer questions in a manner that satisfied Ms. Groedel. However, Ms. Groedel states she will file a separate motion after she receives a transcript. Commissioner Frenchko will not address these allegations in this Response because Plaintiff's Motion provides no actual notice regarding which answers Ms. Groedel was unsatisfied with.

5

*also*, *Texas v. Johnson*, 491 U.S. 397 (holding that the "government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable.").

In addition, the Sixth Circuit held in *Ison v. Madison Local School Dist.*, 3 F.4th 887 (6th Cir. 2021) that even "abusive" speech constitutes a protected viewpoint.[4] *See also*, *AFDI v. Sub. Mobility Auth. for Regional Transp.*, 978 F.3d 481, 498-504 (6th Cir. 2020) (holding that restraint of speech that communicates "scorn and ridicule" is unconstitutionally viewpoint-based).

Here, Plaintiff cannot argue that Commissioner Frenchko's insult of his Counsel constitutes fighting words because Commissioner Frenchko was alone in her own home. Ms. Groedel does not suggest she wanted to physically attack Ms. Frenchko because of the insult, and they were not even in the same state at the time. As this Court's Order expediting briefing illustrates, the issue here is whether this Court should sanction Commissioner Frenchko for "offensive" conduct. Under both the Supreme Court's precedent, as well as Sixth Circuit precedent, offensive comments are protected viewpoints under the First Amendment.

Commissioner Frenchko did not delay the deposition. She was on time. Commissioner Frenchko was "off the record" in her own home, which is not a courtroom, and she expressed a viewpoint that offended Ms. Groedel. This conduct is protected under the First Amendment.

---

[4] Moore's Counsel, Matt Miller-Novak was Counsel for Plaintiffs in *Ison*.

### B. Commissioner Frenchko did not Violate Civ. R. 30.

Plaintiff's Motion for Sanctions does not enjoy any actual support under the Civil Rules of Procedure. Civ. R. 30 and Civ. R. 37 sanctions relate primarily to either a corporation's failure to properly prepare a corporate representative for the noticed topics, or the corporate witness's failure to appear at a properly noticed Civil R. 30(B) deposition.

Federal Rule of Civil Procedure ("FRCP") 30(d)(2) does not authorize sanctions for "offensive" comments. Rule 30(d)(2) provides:

> "The court may impose an appropriate sanction—including the reasonable expenses and attorney's fees incurred by any party—on a person who **impedes**, **delays**, or **frustrates** the fair examination of the deponent."

Civil R. 37(d) provides sanctions for refusing to attend a deposition or other failure to act. The plain language of this Rule also does not provide sanctions for an "offensive" comment off the record.

The Northern District of Ohio has recognized the that "the Sixth Circuit has adopted a four-factor test regarding whether to impose sanctions: (1) whether the party's failure to cooperate in discovery is due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the party's failure to cooperate in the discovery; (3) whether the party was warned that failure to cooperate could lead to the sanction; and (4) whether less drastic sanctions were first imposed or considered." *Wheatt v. City of E. Cleveland*, No. 1:17-CV-377, 2017 U.S. Dist. LEXIS 188935, *4 (N.D. Ohio Nov. 15, 2017).

1. <u>Commissioner Frenchko was prepared for her depositions, she attended the depositions, and she answered questions.</u>

Commissioner Frenchko attended every single deposition over three separate days. According to Plaintiff's own Motion, and Ms. Groedel's own representations, Ms. Groedel was the person who was demanding to "delay" the conclusion of the Civ. R. 30(b)(6)

7

deposition to a second day. (Plaintiff's Motion; Exhibit 1 at ¶4). According to Ms. Groedel's own representations, Ms. Frenchko wanted to finish the deposition, which is the opposite of "delaying" or "impeding" the completion of a deposition. (Id.)

Plaintiff cannot reasonably claim that Commissioner Frenchko's conduct delayed the conclusion of the deposition when (1) when Plaintiff's Counsel wanted to delay the deposition, and (2) Commissioner Frenchko attended and finished every deposition.

2. <u>Plaintiff had no right to a two-day deposition under the Civil Rules.</u>

Plaintiff's Motion relies largely on the misconception that Plaintiff had a right to demand that Commissioner Frenchko submit to a second day of examination, and Commissioner Frenchko had no right to object. However, the Federal Rules of Civil Procedure state the precise opposite. According to Civ. R. 30(d)(1) "[u]nless otherwise stipulated or ordered by the court, a deposition is limited to 1 day of 7 hours." Therefore, there is nothing wrong with any party objecting to another party's demands to continue a deposition to a second day because nobody is entitled to continue a deposition to a second day. Simply stated, Ms. Groedel was making demands she was never entitled to make.

3. <u>Plaintiff provides no evidence that he was prejudiced or damaged by Commissioner Frenchko's comments.</u>

Plaintiff does not explain how he was damaged. Commissioner Frenchko attended all three depositions, and Ms. Groedel finished all three depositions. The Rule 30(b)(6) deposition took two days because Ms. Groedel—not Commissioner Frenchko—wanted it to take two days. Plaintiff is arbitrarily asking that this Court award him $10,000 because Commissioner Frenchko offended his Counsel, and because Commissioner Frenchko

hydrated herself with an electrolyte tablet.[5]  Plaintiff cites no Civil Rule justifying such a sanction, and the First Amendment protects offensive viewpoints.

The Plaintiff simply did not suffer any monetary damages or any prejudice because Commissioner Frenchko offended his Counsel.  In fact, Plaintiff has not even identified any discovery he did not receive.  Plaintiff's Motion is just seeking an arbitrary award for a protected viewpoint that offended his Counsel, and the Rules of Civil Procedure provide no such awards from nonlawyers.

## III. CONCLUSION

Accordingly, Commissioner Frenchko respectfully requests that this Court denies Plaintiff's Motion for Sanctions because it seeks to sanction protected speech, and there is no support for his request under the Civil Rules.

Respectfully Submitted,

**/s/ Matt Miller-Novak**
Matt Miller-Novak, Esq.  (0091402)
Barron, Peck, Bennie, &
Schlemmer, Co. LPA
3074 Madison Road,
Cincinnati, OH 45209
Phone: 513-721-1350
Fax: 513-721-2301
MMN@BPBSLaw.com

Attorney for Niki Frenchko

---

[5] Additionally, Plaintiff suggests that Commissioner Frenchko's answers did not satisfy Ms. Groedel, but Plaintiff did not attach or cite a single question that Commissioner Frenchko was not prepared to answer, so Commissioner Frenchko cannot speculate as to which questions she is referring to.

9

## CERTIFICATE OF SERVICE

I certify that I served notice of this Motion on all Counsel via email on May 16, 2023.

*/s/ Matt Miller-Novak*