UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ERNEST COOK | ) | CASE NO. 4:22-cv-00077 BYP |
| | ) | |
| Plaintiff, | ) | JUDGE BENITA PEARSON |
| | ) | |
| vs. | ) | **PLAINTIFF'S OPPOSITION TO** |
| | ) | **DEFENDANT'S MOTION FOR** |
| BOARD OF TRUMBULL COUNTY | ) | **SUMMARY JUDGMENT** |
| COMMISSIONERS | ) | |
| | ) | |
| Defendant. | ) | |

## I.    MATERIAL FACTS NOT IN DISPUTE

A.    Plaintiff Ernest Cook ("Cook") was employed as 911 Director for Trumbull County from April 20, 2016, through January 21, 2021.  (Ex. 1, Cook Dep. at 20-21.)

B.    Plaintiff received no discipline, warnings, or unsatisfactory performance evaluations during his time as Trumbull County's 911 Director.  (Id. at 146; Ex. 2, Frank Fuda Dep. at 37; Ex. 3, Mauro Cantalamessa Dep. at 1.)

C.    Former Commissioner Frank Fuda ("Fuda"), born 8/9/45 (Fuda Dep. at 5) -- Trumbull County Commissioner from 2007-January 2023 (Id. at 20), testified that he had no problems with Cook's performance; that Cook did a good job and was quick at solving problems; and that, every time he contacted Cook about a problem, Cook took care of it.  (Id. at 24-25.)

D.    Commissioner Mauro Cantalamessa, DOB 7/28/77 (Ex. 3, Cantalamessa Dep. at 5), a Trumbull County Commissioner from August 2014 through the present (Id. at 11), testified that Cook was a "model employee…" (Id. at 31).

E.    Michele Nichole Frenchko ("Frenchko"), DOB 9/6/74 (Ex. 4, Frenchko 3/16/23 Dep. at 5), became a Trumbull County Commissioner in January 2021.

F.    Fuda testified that, during Frenchko's second week in office, **she told him he was too old for the job,** and that she and Commissioner Mauro Cantalamessa[1], were going to run the county. (Ex. 2, Fuda Dep. at 11.)   Cantalamessa testified that he "witnessed" Frenchko tell Fuda he was too old for the job.  (Cantalamessa Dep. at 34-35.)

G.    Fuda further testified that he saw statements by Frenchko to the effect of:  someone younger should do Scheduler Christine Glenn's job.  Ms. Glenn is approximately 65 years old. (Id. at 38.)  Cantalamessa corroborated this; he testified that he witnessed Frenchko tell Christine Glenn that they need somebody younger in her position.  (Id.)

---

[1] Cantalamessa was born 7/28/77 (Cantalamessa Dep. at 5) and is thus 45 years old.

H.      Fuda also testified that, during Frenchko's first few weeks of being in office, she listed people she was going to bully or write up until she could fire them.  (Fuda Dep. at 9-10.)  He was unable to recall any specific names Frenchko mentioned when stating she was going to "bully people out", except the maintenance person – Mr. DeVengencie – who is in his 60s.  (Id. at 14.)

I.      The Trumbull County departments that report directly to the Board[2] are the Dog Kennel, the Sanitary Engineer's Office, the Maintenance department, Jobs & Family Services, Human Resources, and the 911 department. (Cantalamessa Dep. at 12-13.)

J.      H.R. Director Alexandra DeVengencie-Bush testified that, several times, the Board voted to suspend Nicholas Altiere, who is more than 20 years younger than Cook (Ex. 5, Cook Decl. ¶ 14[3]), and who reported directly to the Board, for not following personnel policies on calling off and attendance.  The Board used progressive discipline with him – starting with a 1-day suspension, then a 3-day, 5-day, and 10-day suspension.  The Board did not vote to terminate him until after he violated his last chance agreement.   (Ex.6, DeVengencie-Bush Dep. at 24.)

K.      In the first quarter of 2023, Charles Parks, the former Trumbull County Assistant Deputy Dog Warden who is also at least 20 years younger than Cook (Ex. 5, Cook Decl. ¶ 15), who reported directly to the Board of Commissioners at the time, was convicted of animal abuse / neglect (Fuda Dep. at 33.)  In addition, he was guilty of twice being paid for time he did not work (Id. at 33-34) and had a history of insubordination and warnings.  (Ex. 7, portions of Park's

---

[2] These employees are thus Cook's comparators because defense counsel has insisted throughout this litigation that Cook can only be compared to employees who report directly to the Board (Ex. 8, K. Minahan's 3/7/23 response to C. Groedel's proposed 30(b)(6) topics ¶¶ 14, 24-26, and because these employees not only all report to the all report directly to the same individuals (the Board), but they are all subject to the same policies and procedures.  (Cook Dep. at 163-165.)  Frenchko testified that, if they wanted to, the Board could have chosen to terminate Parks – even though he was a union member, though it would have violated the CBA.  (Ex. 4, Frenchko's 3/16/23 Dep. at 99-100.)  Cantalamassa said he voted to terminate Parks (Cantalamessa Dep. at 15), while Frenchck claims there was no vote to terminate Parks (Frenchko 5/1/23 Dep. at 108-110).

[3] Ms. DeVegencie-Bush claimed she did not know how old Mr. Altiere is, but would find out (DeVegencie-Bush Dep. at 24)m but never did.  Thus, Cook's testimony on this point is uncontested.

personnel file.)  Nonetheless, the Board voted to place him on leave for 6 months while his charges were pending (Id. at 33-36), and when his charges were confirmed, the Board voted to give him all his back pay and transfer him to a different job in the maintenance department.  (Id.)

L.      Commissioner Cantalamessa testified that former Assistant Deputy Dog Warden Parks was caught on film not feeding the animals (Cantalamessa Dep. at 15), and he corroborated Fuda's testimony that the Board nonetheless voted to transfer him to a different position and give him a last chance agreement.  (Id. at 16-18.)

M.      **Cook also could have been placed in a different position like Mr. Parks, but the Board voted to summarily terminate him instead.**  (Fuda Dep. at 36.)

N.      Fuda testified that the Board normally pays insurance for departing employees until the end of the month (Id. at 58-59), but they terminated Cook's insurance immediately upon his termination (Ex. 1, Cook Dep. at 24).

O.      The Trumbull County handbook contains a progressive discipline policy (Ex. 9 Handbook at 17-25), and **Cantalamessa was unable to think of any Trumbull County employee, other than Cook, who was terminated without progressive discipline**. (Cantalamessa Dep. at 18.)

P.      Fuda testified that:

- "There was talk of replacing [Cook] before" the accident (Id. at 37);

- He did "not see how an incident that occur[red] outside of work should have any effect on [Cook's] job (Fuda Dep. at 42);

- He doesn't believe employees should be fired for something that has nothing to do with their job (Id. at 43-44);

- He knows of no policy or procedure violation Cook committed that caused his termination (Id. at 43-44);

- He believes the accident had nothing to do w/Cook's job duties (Id.);

- *"I've been in accidents. **Whether I was drinking or not, it made**

**no difference.** I didn't disgrace anybody…"* (Id. at 48.)

Q. Fuda voted to terminate Cook *not* because Cook's out-of-work accident reflected badly on Cook or the count,y as Defendant claims, but because he was in his doctor's office for a prostate cancer treatment at the Cleveland Clinic at the time of the vote, and he did not have time to investigate whether it was appropriate to terminate Cook for being convicted of a crime. (Id. at 29-32.) **Fuda's doctor had just walked in the door when Fuda was called to vote, so he "voted and moved on"** (Id. at 39-40). He believed Cantalamessa had discussed the matter with Cook, and that Cook agreed to severing his employment with Trumbull County. (Id. at 22-23.)

R. Since Frenchko took office, 12-16 employees aged 40 or older, have either resigned, retired, or were terminated. (Cook Dep. at 152; see also Ex. 10, Defendant's chart of employees separated since Frenchko took office.) Fuda does not know of any employees under the age of 40 who resigned or were terminated between the time Frenchko became a Commissioner and his last day in office. (Fuda Dep. at 45.)

S. Cantalamessa does not believe the Board ever explained its reason for Cook's termination (Cantalamessa Dep. at 29) – at least not until this lawsuit was filed.

T. When asked what he thought Frenchko would have done in connection with Cook's employment if Cook had not been involved in that accident, Cantalamessa responded that he does not know what Frenchko would have done, but he does know that the overwhelming number of people who left the employ of Trumbull County since Frenchko came on board are over the age of 40 or 50. (Id. at 32-34.)

U. Not long after Frenchko became Commissioner, she bullied the former H.R. Director Richard Jackson (Fuda Dep. at 10), who was 65 or 66 at the time (his DOB is 6/19/55 per

Ex. 10, Def's chart of e-ees who left since Frenchko became Commissioner), by voting to give him a 15-day suspension for calling her a "queen" (Ex. 11, Fudo statement to the EEOC).

      V.     Frenchko admits she ran for office on the platform of getting rid of the "good old boys".  (Ex. 12, Frenchko's text message exchange with a resident; Ex. 4, Frenchko 3/16/23 Dep. at 34.)  Of course she now contends that she was referring to "anyone who was politically connected and acquired positions, contractors, or favor based on connections…" (Id. at 35-36, 39-40), but her intent at the time she ran on that platform was not stated as such, and the Court may not decide issues of motive on summary judgment.

      W.     When Frenchko was campaigning for office, one of the individuals she said she wanted to get rid of was **ERNEST COOK** (Id. at 36; see also Ex. 12, Frenchko's tirade on Cook), and although Defendant claims Frenchko did not know Cook's age (MSJ at 4), she clearly knew he was a senior citizen from the photo of him she used when opining that she wanted to get rid of him (Ex. 13).

## II.    LAW AND ARGUMENT

### A.    <u>Summary judgment standard</u>.

As the U.S. Supreme Court made clear in *Anderson v. Liberty Lobby*, in considering an employer's Motion for Summary Judgment, the employee's evidence of discrimination "is to be believed, and all justifiable inferences are to be drawn in his favor."  In *Reeves v. Sanderson Plumbing Products*, the Supreme Court also cautioned that a judge "may not make credibility determinations or weigh the evidence" because these are jury functions.  A judge's mere belief that the movant is more likely to prevail at trial is not a sufficient basis for granting summary judgment in the employer's favor and dismissing the case.

Finally, a court must deny the employer's motion for summary judgment if a genuine dispute exists on even one material fact.  In the absence of such a dispute, which is rare in employment discrimination cases, the question before a court (per the *Anderson* decision) is not

whether it "thinks the evidence unmistakably favors one side or the other, but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented."

With these principles in mind, employment discrimination cases are inherently ill-suited for dismissal in summary judgment because issues of intent/state of mind typically predominate.

      **B.**      **Cook established his *prima facie* age discrimination claim.**

Discrimination under both Title VII and Section 1981 are identical. *Stallworth v. Shuler,* 777 F.2d 1431, 1433 (11th Cir. 1985). To prove impermissible racial discrimination, an employee must show that an adverse employment action was related to an employer's discriminatory animus toward the employee's protected class. *Lusco v. DAE Indus.*, Civil Action No. 3:17-CV-00620-RGJ-RSE, 6 (W.D. Ky. Sep. 16, 2019). Discrimination may be established through either direct or circumstantial evidence. *Vaughn v. Louisville Water Co.*, 302 F. App'x 337, 344 (6th Cir. 2008). At the summary judgment stage, single motive cases based on circumstantial evidence are primarily evaluated under the McDonnell Douglas burden-shifting framework. *Maro v. Commuter Advert.*, 3:22-cv-219, 6 (S.D. Ohio Mar. 22, 2023). This analysis first requires that the employee establish a prima facie case of discrimination by showing that (1) he is a member of a protected class [here there is no question that Cook was 69 years old at the time of his termination]; (2) he was qualified for the position [this is acknowledged in f.n. 5 of Defendant's MSJ at 9); (3) he was subjected to an adverse employment action [he was terminated on 1/21/21]; (4) and the employer treated a similarly situated employee outside of the protected class more favorably [see discussion above in section I regarding the younger employees who reported directly to the Board but were not terminated for infractions and crimes that *related directly to their jobs with Trumbull County*]. *Stewart v. Kettering Health Network,* No. 13-4080, 5 (6th Cir. 2014).

Under *McDonald Douglas*, once an employee establishes a prima facie case of discrimination, the burden of production shifts to the employer to articulate and produce

evidence of a legitimate, nondiscriminatory reason for the adverse employment action. If it does, the burden shifts back to the employee to show that the proffered reason is actually pretext for discrimination. Alternatively, an employee may succeed on a discrimination claim under a mixed-motive theory if he can show that "illegal bias . . . was a motivating factor for an adverse employment action, even though other factors also motivated the action." *Moore v. Stein World Furniture Co.*, No. 2:07-cv-02792-JPM-tmp, 11 (W.D. Tenn. Feb. 15, 2010). Mixed-motive claims are not evaluated under *McDonnell Douglas*. Id. at 11. Instead, the employee need only show that the (1) employer took an adverse employment action against him, and (2) a protected characteristic was a motivating factor for that decision. Id.

In fact, however, it is not necessary for Cook to meet the *McDonnell Douglas* litmus test. McDonnell Douglas – now 50+ years old -- is simply one way of analyzing a case, and it was not intended to be a sword for defendant-employers. It has been perverted over the years to bar, instead of facilitating, inferential thinking.

It is a mistake to treat direct evidence separately from other evidence. All evidence must be considered together. *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760 (7th Cir. 2016). Both direct evidence statements and indirect evidence ambiguous statements must be considered; both are admissible, along with all other types of evidence.

Prosecutors are not limited to evidence of a confession in cases involving a confession. Prosecutors use direct evidence of a confession, as well as indirect circumstantial evidence of ambiguous statements, timing, motive, opportunity, means, and all other types of evidence. In some older cases, circumstantial evidence was used, via the *McDonnell Douglas* test, when there was no direct evidence of a confession. Today, evidence of a confession of agism is rare. Employers readily offer evidence of a nondiscriminatory reason, so establishing the *McDonnell Douglas* prima facie elements is not necessary to require employers to offer evidence of a nondiscriminatory reason. Courts can go directly to the evidence of pretext, which again,

consists of all types of evidence, without limitation. The *McDonnell Douglas* framework is not required and is no longer helpful.

The ultimate test is whether the plaintiff produced enough credible evidence to persuade the trier of fact that the defendant acted with discriminatory intent, and that such intent caused (or was one of the factors causing) plaintiff's injury. *Hughes v. Henry Ford Health Sys.*, CASE NO. 17-10436, 20 (E.D. Mich. Aug. 17, 2018); *Furr v. Seagate Tech., Inc.,* 82 F.3d 980, 985 (10th Cir.1996). Addressing the ultimate issue of discrimination is sufficient. *Furr,* 235 F.3d at 528; *see also, Talley v. Bravo Pitino Restaurant, Ltd.*, 61 F.3d 1241, 1246 (6th Cir.1995) (holding that the fifth element of a failure to hire claim may be satisfied by a showing that "similarly situated non-protected employees were treated more favorably").

Here we have at least 3 similarly situated employees who were significantly younger than Cook and who were treated more favorably than he in the terms and conditions of employment: Charles Parks, Richard Jackson, and Nicholas Altiere.

**C.**     **Defendant misapplies/misconstrues the "but for" concept.**

Under both state and federal law, it is unlawful for an employer to terminate an employee "because of" age. The "because of" benchmark implies a "but for" analysis, i.e., the plaintiff would not have been fired but for membership in a protected class. *Bostock v. Clayton County*, 2020 U.S. Lexis 3252, at 14-15 (Title VII); *Univ. of Tex. Southwestern Med. Ctr. v. Nassar*, 570 U.S. 338, 350, 352 (2013) ("because of" denotes but-for causation); *Gross v. FBL Fin. Servs*., 557 U.S. 167, 176 (2009) (same).

But-for is "a sweeping standard." *Bostock,* 2020 U.S. LEXIS 3252, at 15. It "directs us to change one thing at a time and see if the outcome changes. If it does, we have found a but-for cause." *Bostock*, 2020 U.S. Lexis 3252, at 14-15; see also *Price Waterhouse*, 490 U.S. at 240 (inquiry considers the employer's decision at the moment it was made). "[I]f changing the employee's sex would have yielded a different choice by the employer—a statutory violation has

occurred."  *Bostock*, 2020 U.S. LEXIS 3252, at 20.

This standard assumes there might be several reasons for an employment decision, including a mix of legitimate and illegitimate factors.  *Bostock*, 2020 U.S. Lexis 3252, at 15 ("Often, events have multiple but-for causes"); *Price Waterhouse*, 490 U.S. at 241 (Title VII was "meant to condemn even those decisions based on a mixture of legitimate and illegitimate considerations").  "Nothing is the result of a single cause in fact.  The but-for test does not say otherwise."  D.B. Dobbs, Torts § 168, at 410 (2001).

The fact that other, legitimate factors contributed to an employment decision provides no defense where the employer's decision would have been different if the plaintiff's race (or age or other protected trait) was different.  *Bostock,* 2020 U.S. Lexis 3252, at 15.  "It doesn't matter if other factors besides the plaintiff's sex [or other protected trait] contributed to the decision."  *Bostock*, 2020 U.S. LEXIS 3252, at 20.  Plaintiff need only show that their termination was based "in part" on discriminatory motive.  *Bostock*, 2020 U.S. LEXIS 3252, at 26.

*In U.S. v. Burrage*, 571 U.S. 204, 211 (2014)*,* the Court said, "[T]he fact that Smith's 'complaint alleges both discriminatory and non-discriminatory explanations for [Smith's] termination' does not mean that race cannot be a but-for cause of his termination as '[o]ften, events have multiple but-for causes.'"  See also the Restatement of Torts Third: Liability for Physical and Emotional Harm, § 26.  In the classic law school problem, if one fire is created by lightning, and another by a pyromaniac, and they converge and burn down the house, the "but for" test would not allow the pyromaniac to escape liability.

Defendant is essentially attempting to have this Court opt in to a "sole cause" standard for determining causation in Mr. Cook's age discrimination claim.  But that effort is undermined by *Burrage v. United States*, *supra*, in which the Supreme Court, construing the meaning of "but for" causation, held a criminal liable for the death of a drug user, explicitly referencing and clarifying its own precedents in employment discrimination law to mean that there can be more than one "but

10

for" cause.  In discussing its prior opinions in *Nassar* and *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167, 176 (2009), for example, Justice Scalia, for the unanimous court, quoted *Nassar* and *Gross*, but substituted a bracketed "[a]" for the word "the" preceding the expression "'but for' cause."[4]  If the legal precision of Justice Scalia's (and the Court's) carefully intended word choice is not fully instructive, the Court uses other language to illustrate language to illustrate the conclusion:

> "where A shoots B, who is hit and dies, we can say that A [actually] caused B's death, since but for A's conduct B would not have died.'  *LaFave* 467-468 (italics omitted).[5]  The same conclusion follows if the predicate act combines with other factors to produce the result, so long as the other factors alone would not have done so-if, so to speak, it was *the straw that broke the camel's back*.

*Burrage v. United States*, 571 U.S. at 211, 134 S. Ct. 881, 888, 187 L. Ed. 2d 715 (2014) (italics supplied).

Thus, in *Burrage*, an overdose of heroin that killed a person who had many other infirmities was determined to be the "but for" cause of death, even though the heroin, acting alone, would not have been enough to cause death.  The heroin could have had the slightest effect and be the weakest of a thousand causes, so long as it was the cause that pushed the outcome the final, albeit short, distance.  Accordingly, "but for" causation does not require a

---

[4] In *Gross*, the Court stated that "a plaintiff must prove that age was *the* 'but for' cause of the employer's adverse decision."  *Gross*, 557 U.S. at 176 (2009).  The court in *Burrage* held:

> Given the ordinary meaning of the word "because," we held that § 2000e–3(a) "require[s] proof that the desire to retaliate **889** was [a] but-for cause of the challenged employment action." *Nassar, supra,* at ——, 133 S.Ct., at 2528.  The same result obtained in an earlier case interpreting a provision in the Age Discrimination in Employment Act that makes it "unlawful for an employer ... to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, *because of* such individual's age."  29 U.S.C. § 623(a)(1) (emphasis added).  Relying on dictionary definitions of "[t]he words 'because of'"—which resemble the definition of "results from" recited above—we held that "[t]o establish a disparate-treatment claim under the plain language of [§ 623(a)(1) ] ... a plaintiff must prove that age was [a] 'but for' cause of the employer's adverse decision." *Gross v. FBL Financial Services, Inc.,* 557 U.S. 167, 176, 129 S.Ct. 2343, 174 L.Ed.2d 119 (2009).

*Burrage v. United States*, 134 S. Ct. 881, 888-89, 187 L. Ed. 2d 715 (2014) (citations omitted).
[5] 1 W. LaFave, Substantive Criminal Law (2d ed. 2003).

showing that Ernest Cook's age was the sole cause his termination from employment. The *Burrage* decision destroys defense counsel's effort to have the Court adopt a sole-cause standard of causation for Cook's age discrimination claim.

**D.    Defendant's entire argument about alleged complaints regarding Cook is hearsay and should be stricken.**

Defendant's criticisms of Cook come from, *inter alia*, "articles" (MSJ at 2), "media coverage" (Id. at 2-4; Def's Exhs A-I, M); Facebook (MSJ at 4; Ex. L); a "scathing letter to the editor" of the Tribune Chronicle, and a 2020 Tribune Chronicle editorial criticizing Cook for the accident in which he was involved in July of 2018 (Def's MSJ at 2-4), all of which are hearsay and should be stricken. The same is true for Cantalamessa's comments that he "had a number of constituents come to [him] and ask why the board isn't acting on this… at least the people [he] spoke to were wondering why the board isn't acting on this and believe that it was an egregious act…" (MSJ at 11.)   The statements are hearsay and should be stricken.

**E.    Frenchko's numerous negative age-based comments are evidence of discrimination.**

Defense counsel tries to avoid liability for age discrimination against Cook by stating that Frenchko's numerous negative age-based comments, including her platform of getting rid of the "good old boys", and her comment to Fuda that he was "too old" to be a commissioner, and her comment that the Board should find someone younger to replace the scheduler, did not pertain to Cook. (MSJ at 8.)  That fact, however, does not negate liability. A vice-president's statement that a 64-year-old employee was not considered for promotion because he was too close to retirement was admissible in a different employee's person's ADEA case because the statement was deemed to be a vicarious admission of a party opponent as it admitted the employer's practice of not promoting employees within 10 years of retirement age. *Ware v. Howard University*, 66 FEP 22 (D.D.C. 1993).

Similarly, in *Daly v. Presbyterian Hosp.*, 81 FEP 1502 (S.D.N.Y. 2000), the court held that a rational jury could find that a supervisor was impermissibly motivated by age considerations when terminating the plaintiff in light of the supervisor's statements about older employees, and his termination of some of them, where the statements he made to the plaintiff, or that the plaintiff overheard him say, tended to establish that he was biased against older employees; helped support the supervisor's possible belief that older employees are generally "cranky," "grumpy," or "nasty" compared to younger workers; that they are "useless and should retire"; and that they cannot "function like [they] used to."

### F.    Some of Defendant's cases are inapposite to the facts in this case.

Defendant claims that, even if Cook could make out a prima facie case of age discrimination, it had a legitimate, nondiscriminatory reason(s) for his termination, citing to *Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 394 (6th Cir. 2008).  (MSJ at 10.)  However, *Allen* involves two female employees who were terminated after allegedly violating Defendant's confidentiality policy by permitting the removal of a patient's x-rays from the hospital without written authorization from the patient's mother.  **In the case at bar, Cook did not violate any of Defendant's or the county's policies or procedures.**

Defendant cites to *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 n.4 (6th Cir. 2009) for its statement that pretext "requires a court to ask whether the plaintiff has produced evidence that casts doubt on the employer's explanation, and, if so, how strong it is." (MSJ at 12.)  While that statement is true, the facts of *Chen* are inapposite.  In *Chen,* the plaintiff could not show pretext because the evidence supported the defendant's claim that it terminated the plaintiff for performance-related reasons, and in fact, *the plaintiff had been placed on a performance improvement plan (PIP) prior to her termination*.  Here, **Cook was never subjected to any warnings, PIPs, or other disciplinary action in his two decades of his employment with Trumbull County**.

Defendant states that, even if Cook could create a question of material fact about Frenchko's alleged animus, her vote was not the deciding margin, and improper motives can only be attributed to public bodies "where improperly motivated members supply the deciding margin", citing *Shavers v. Almont Twp.*, 832 Fed. Appx. 933, 939, 2020 U.S. App. LEXIS 33455, *13, 2020 FED App. 0598N (6th Cir.) (quoting *Scarbrough v. Morgan Cty. Bd. of Educ.*, 470 F.3d 250, 262 (6th Cir. 2006)).  (MSJ at 12.)  However, former Commissioner Fuda testified that Cantalamessa went along with whatever Frenchko wanted to do.  (Fuda Dep. at 12.)  Thus, an argument can be made that Frenchko and Cantalamessa were both the deciding vote in the decision to terminate Cook.

     **G.**    **Plaintiff has established pretext.**

In *Phelan v. Cook County,* 2006 WL 2690986 (7th Cir. 2006), the court explained that, although the typical way to satisfy the direct method of proof is with an employer's admission of discriminatory animus, a plaintiff can also prevail "by constructing a convincing mosaic of circumstantial evidence that allows a jury to infer intentional discrimination by the decision maker."  The court then described how the mosaic might be shown:

> "…through the demonstration of **suspicious timing, ambiguous statements oral or written, behavior toward or comments directed at other employees in the protected group, and other *bits and pieces* from which an inference of discriminatory intent might be drawn."** (Emphasis added.)

     **1.**    **Defendant's conflicting reasons establishes pretext.**

It is interesting that, in its MSJ, Defendant only mentions the 2018 incident and Cook's subsequent 2021 misdemeanor convictions as the reason for Cook's termination, when in fact, Frenchko gave many other reasons in her deposition for the termination:

- "It's everything" (Ex. 4, Frenchko 3/16/23 Dep. at 101);

- "It's the community complaints" (Id.);

- "It's the way he treated his employees by forcing them overtime" (Id.); and

- "It's his really poor relations with the young lady from the media." (Id.)

These asserted reasons are evidence of pretext *because there is nothing negative about Cook in his personnel file.*  In *Hutchens v. Chicago Board of Education*, 7th Cir., No. 13-3648 (March 24, 2015), summary judgment was reversed where there was lack of documentation in support of the Board's contentions that the plaintiff was tardy and had disputes with colleagues. And in *Duchon v. Cajon Co*., 791 F.2d 43, 46 (6th Cir.1986), the Sixth Circuit reversed summary judgment for the employer because the allegations in the plaintiff's affidavit that "'she had never been warned or disciplined about her performance' ... directly contradict[ed] [her supervisor's] stated reason that [she] was discharged in part for poor performance[ ] ... [and] raise[d] a genuine issue of material fact with respect to the reason for her discharge so as to preclude summary judgment.")  Here, Frenchko cited a litany of Cook's alleged poor performance that contributed to her vote to terminate Cook, but there is no evidence of any such poor performance in Defendant's MSJ or in Cook's personnel file.

### 2.  Defendant's after-the-fact attempted justification for Cook's termination is pretextual.

Once this lawsuit was filed – *but not until it was filed* – Defendant came up with a reason for Cook's termination:  that he was involved in an automobile accident in 2018 that he did not report to the police and was convicted of having physical control of a vehicle while under the influence, and failure to report an accident.  (Def's MSJ at 1-4.)  Pretext is demonstrated when the defendant "piles-on" or adds reasons for a termination that were not previously stated, and when the defendant fails to identify a reason for the termination at the time of termination.  *Jones v. Gulf Coast Health Care of Delaware, LLC*, 854 F.3d1261, Slip Op., 26-28 (11th Cir. 2017), Gilman, J. Here, the Board's termination letter to Cook did not cite any reason for his termination.  (Ex. 14, termination letter; Cook Dep. at 22-23.)

### 3.  Departure from normal procedure establishes pretext.

Pretext is also shown in the case by the Board's departure from normal procedure. Cantalamessa could not recall ANYONE – other than Cook – who the Board terminated without following the progressive discipline policy in Trumbull County's handbook. (Cantalamessa Dep. at 16-17.) "Departures from the normal procedural sequence also may afford evidence that improper purposes are playing a role." *Village of Arlington Heights v. Metropolitan Housing Development Corporation,* 429 U.S. at 267; see also *Skalka v. Fernald Environmental Restoration Management Corp.*, 178 F.3d 414, 421 (6th Cir. 1999) (jury could find discrimination based on employer's deviation from its own normal procedures).

### 4. A flawless employment record establishes pretext.

Pretext is also shown by the fact that, at no time during his employment as 911 Director for Trumbull County did Cook ever receive any negative performance evaluations, warnings, or other disciplinary action. (Cook Dep. at 153-54; Ex. 4, Frenchko 3/16/23 Dep. at 51; Cantalamessa Dep. at 30; Fuda Dep. at 37, 44.) As the court stated in *Martinez v. New Mexico State Engineer Office*, 2000-NMCA-, ¶ 41, 129 N.M. 413, 9 P.3d 657: "It does not appear that he was ever reprimanded in writing, shown copies of the memoranda documenting his behavioral problems, or warned of the disciplinary consequences of his behavioral and performance deficiencies. This, we believe, is inconsistent with a progressive discipline scheme contemplated under the Board Rules."). See also *New Mexico Regulation & Licensing Dept. v. Lujan,* 1999-NMCA-059, ¶ 20, 127 N.M. 233, 979 P.2d 744:

> "The State Personnel Board Rules and employee handbook has attributes of an employee contract. A personnel manual results in an implied contract if it controls the employer-employee relationship and an employee can reasonably expect his or her employer to conform to the manual's procedures. Under the circumstances here, the State Personnel Board Rules and the employee handbook control the employer-employee relationship. Employee was entitled to expect that the Department would conform to the termination procedures outlined prior to dismissing him. Employee had a right to rely on the progressive discipline policy provided by the State Personnel Board Rules and the procedures outlined in the employee handbook.") (citations omitted).

### 5. Frenchko lying in wait to terminate Cook is evidence of pretext.

16

The misdemeanor charges against Cook are pretext for age discrimination, as Frenchko was lying in wait for an opportunity to terminate him.  She was predisposed to find a reason to terminate him; she had made up her mind, even before she became a Commissioner, that he would/should be terminated. Frenchko sent text messages to residents stating that Cook was one of the employees she wanted to terminate, and at least one of the messages contained a photo of Cook.  (Ex. 13.)  Employers cannot conceal an unlawful discharge by closely observing an employee and waiting for an ostensibly legal basis for discharge to emerge.  *Jones v. Potter*, 488 F.3d 397, 408 (6th Cir.2007). In *Hamilton v. General Electric*, 6th Cir. (No. 08-5023 decided Feb. 12, 2009), the court, citing *Jones v. Potter*, said:  "We have held that when an employer waits for a legal, legitimate reason to fortuitously materialize, and then uses it to cover up his true, longstanding motivations for firing the employee," the employer's actions constitute "the very definition of pretext.  *Jones*, 488 F.3d at 408."

### 6. <u>A significantly younger similarly situated employee was convicted of abuse/neglect of animals – *in connection with his job duties* – but was not terminated.</u>

Cook's accident in 2018 occurred at approximately 10:10 PM on a weekend, when Cook was not at work and not on the clock.  (Ex. 5, Cook Decl. ¶ 4; Cook Dep. at 151.)  Charles Parks, former Trumbull County Assistant Dog Warden, was convicted of animal abuse/neglect in connection with the performance (or, more accurately, non-performance) of his job in early 2023, and not terminated (Cantalamessa Dep. at 16-18), when he was 43 years old – more than 20 years younger than Cook – and not terminated.  (Ex. 10, Def's chart of employees separated since Frenchko took office). Instead, he was transferred to a different position and given a last chance agreement.  (Fuda Dep. at 36.)

### 7. <u>Defendant's lack of investigation into the media reports regarding Cook, or to even ask Cook what happened, is evidence of pretext.</u>

Defendant failed to interview Cook regarding the accident or his conviction, except that Fuda spoke with him to review the accident report and Cook told him that he did not hit the kid – that the kid ran into his car.  (Fuda Dep. at 52-53.)  Cantalamessa did not even review the documents in connection with the incident, the charges against Cook, or Cook's plea. (Cantalamessa Dep. at 22.)  Shoddy investigations and no investigations are evidence of pretext. See, e.g., *Trujillo v. PacifiCorp,* 524 F.3d 1149 (10th Cir.2008):  "We also consider the failure to interview Dan Michaelis in the course of the investigation a significant circumstance contributing to the inference of discrimination.  Mr. Michaelis, one of the Trujillos' supervisors during the outage, was never asked about the alleged overage on their time cards, although he had signed some of their time sheets during the relevant time period."; *Humphries v. CBOCS West,* 474 F.3d 387, 407 (7th Cir.2007):  "[T]he quality of Christensen's investigation may have some bearing on the truthfulness of Cracker Barrel's proffered reasons for terminating Humphries.  In short, these are the sort of disputed factual issues that a jury should sort out."; and *Mastro v. Potomac Electric Power Company,* 447 F.3d 843 (D.C. Cir.2006):  "Record evidence suggests that Duarte's investigation, which was central to and culminated in Mastro's termination, was not just flawed, but inexplicably unfair."

## 8.    Defendant's asserted reason of Cook's "conviction" is pretextual.

Defendant claims in its MSJ that Cook's conviction was the reason he was terminated, but Defendant knows of other individuals who were convicted of crimes and either hired anyway, or not terminated after learning of their conviction.  For example, Defendant hired former H.R. Director Richard Jackson with an OVI conviction (operating a vehicle intoxicated).  (Ex. 5, Cook Decl. ¶ 11.)  The current H.R. Director, Ms. DeVegencie-Bush could not dispute this because, inexplicably, Mr. Jackson's background check is missing from his file, and background checks are required for every potential new hire in Trumbull County.  (DeVegencie-Bush Dep. at 56-57.) Moreover, in 2023, employee Charles Parks was convicted of crimes he committed in

18

connection with his Trumbull County Assistant Dog Warden job, and he was not terminated.

Evidence of falsity and inconsistency in an employer's stated reason for an adverse action raises an inference of pretext.  *Fox v. Certainteed Corp*. (6th Cir. 1999), 198 F.3d 245.

### 9.    The severity of Cook's punishment, after years of flawless performance, is evidence of pretext.

As stated in *Stalter v. Wal-Mart*, 195 F.3d 285, 290 (7th Cir.1999):  "More compelling is the severity of the punishment in relation to the alleged offense. …  This strikes us as swatting a fly with a sledge hammer.  That Wal-Mart felt compelled to terminate Stalter for this offense does not pass the straight-face test..."

### G.    Cook need not prove that he was replaced.

Patty Goldner, born in 1975 (MSJ at 10, f.n. 6), has been serving as Trumbull County's 911 Director since Cook's termination in January 2021 (MSJ at 10) – which was **2 ½ years ago**. Nonetheless, Defendant claims Goldner is just the "interim" 911 Director, that she has not "replaced" Cook (Id.), and that Cook therefore cannot make out a prima facie case of age discrimination indirectly.  (MSJ at 9.)  However, whether an individual who has been in a position for 2 ½ years is a "replacement" or an "interim" is not material.  A replacement is not necessary for Cook to establish his claim because *Cook's discrimination claim is based on the theory of disparate treatment.*

In disparate treatment discrimination cases, the plaintiff's claim is not that someone outside his protected class replaced him, but that his employer treated him less favorably than others, based, at least in part, on his membership in a protected class.  "In disparate treatment cases, the fourth [*prima facie*] element *may be replaced with the requirement that the plaintiff show that he was treated differently from similarly-situated individuals."  Miller v. PNC Bank, N.A.*, Case No. 1:08-cv-492, 13 (S.D. Ohio Jul. 28, 2009)*,* and that he has done.  (See supra for discussion regarding Messrs. Parks and Altiere.)

19

### III.    DEFENDANT VIOLATED FED.R.CIV.P. 11

Defendant violated Fed.R.Civ.P. 11 by filing a Motion for Summary Judgment in the face

of obvious age discrimination as that which has been adduced in this case:

> "When a party has obtained knowledge through the course of discovery, or otherwise, that
> a material factual dispute exists and yet proceeds to file a summary judgment motion, in
> hopes that the opposing party will fail or be unable to meet its burden in responding to the
> motion, he defeats that purpose; and, more importantly, violates the rules of procedure
> which govern the conduct of trial, specifically Rule 11."

*Goka v. Bobbitt,* 862 F.2d 646, 650 (7th Cir. 1988).  Plaintiff's counsel informed defense counsel

that it was frivolous for her to file a dispositive motion in the face of so much evidence of age

discrimination by the Commissioners.  (Ex. 15, C. Groedel 5/8 and 5/9/23 letters to K. Minahan.)

A defendant's summary judgment burden was set forth in *Celotex Corp. v. Catrett,* 477

U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986):

> [A] party seeking summary judgment always bears the initial responsibility of informing
> the district court of the basis for its motion, and identifying those portions of "the
> pleadings, depositions, answers to interrogatories, and admissions on file, together with
> the affidavits, if any," which it believes demonstrate the absence of a genuine issue of
> material fact.

477 U.S. at 323, 106 S.Ct. at 2553.  Defendant apparently interprets *Celotex* to require that it

identify only those portions of the record that support its position on summary judgment, although

there exists evidence to the contrary of which it is aware (e.g., that significantly younger, similarly

situated Charles Parks[6], who also reported directly to the Board, was not terminated despite being

convicted of crimes in connection with his job duties).  Defendant is also aware that Mr. Altiere,

who reported directly to the Board, got progressive discipline before he was terminated.

---

[6] Defendants may claim Parks is not similarly situated because he was a union employee, but as
Cantalamessa testified:  "I believe that was egregious enough to terminate.  The board felt otherwise.  The
HR director felt otherwise, but I think that's an example of when I felt an egregious act . . . warranted
termination as opposed to progressive discipline." (Cantalamessa Dep. at 12-15).  And as Cantalamessa
testified, the fact that Parks was a union employee had no bearing on the decision.  (Id.)  Frenchko claims
otherwise.  (Frenchko Dep. at 18-19.)

The principal purpose of summary judgment is "to isolate and dispose of *factually unsupported* claims or defenses." *Celotex,* 477 U.S. at 323-24, 106 S.Ct. at 2553. When a party has obtained knowledge through the course of discovery or otherwise that a material factual dispute exists and yet proceeds to file a summary judgment motion in the hope that the opposing party will fail or be unable to meet its burden in responding to the motion, it defeats that purpose; and more importantly, it violates the rules of procedure that govern the conduct of trial, Rule 11.

Fed.R.Civ.P. 11 requires that every pleading and motion of a party represented by an attorney be signed by that attorney, certifying:

> that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry *it is well grounded in fact* and is warranted by existing law ... and that it is not interposed for any improper purpose....

(Emphasis added). It also provides that appropriate sanctions *shall* be imposed if its provisions are violated. It is difficult to conceive how counsel for Defendant could have certified to this Court that, to the best of her knowledge, information, and belief, there are no genuine issues of material fact precluding summary judgment, when the record demonstrates the existence of material issues of fact that preclude summary judgment.

## IV. CONCLUSION

Judges are duty-bound to resolve legal disputes, no matter how close the call. But when facts or inferences are conflicting, judges are duty-bound at summary judgment to not decide them. As Chief Justice Rhenquist said in *Celotex*, the rule demands a balanced approach, requiring a grant of summary judgment when there is no material factual dispute, and a trial when there is one. *Celotex Corp. v. Catrett,* 477 U.S. 317, 327 (1986). Plaintiff respectfully states that, considering the evidence in the light most favorable to Plaintiff, Ernest Cook, a genuine issue of material fact exists as to whether age was at least one of the "but for" causes of his termination, and summary judgment should be denied.

Respectfully submitted,

21

*/s/ Caryn M. Groedel*
Caryn M. Groedel (0060131)
CARYN GROEDEL & ASSOCIATES CO., LPA
*cgroedel@groedel-law.com*
208 Spriggel Drive
Munroe Falls, OH  44262
1291 SW Mulberry Way
Boca Raton, FL  33486
Ph:      (440) 230-3808
          (440) 207-9557
Fax:     (440) 664-2478
Counsel for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that, on this 12th day of June, 2023, a copy of the foregoing was filed electronically.  Notice of this filing will be sent to all parties by the Court's electronic filing system.  Parties may access this filing through the Court's system.

*/s/ Caryn M. Groedel*
Caryn M. Groedel