1               UNITED STATES DISTRICT COURT
                NORTHERN DISTRICT OF OHIO
2                    EASTERN DIVISION

3     ERNEST G. COOK,

4          Plaintiff,

5                              JUDGE BENITA PEARSON
        -vs-                   CASE NO. 4:22-CV-00077-BYP
6
      BOARD OF TRUMBULL COUNTY
7     COMMISSIONERS,

8          Defendant.
                         - - - -
9      Video conference Zoom Deposition of PATRICK J.

10    PEROTTI, taken as if upon direct examination before

11    Kelli Rae Page, a Notary Public within and for the

12    State of Ohio, at 1:31 p.m. on Tuesday, July 11,

13    2023, pursuant to notice and/or stipulations of

14    counsel, on behalf of the Plaintiff in this cause.

15                         - - - -

16

17              PAGE REPORTING SERVICE
              1249 HATHAWAY AVENUE, FLOOR 2
18                 LAKEWOOD, OH 44107
                     216.316.3258
19           kellipage@pagereportingservice.com

20

21

22

23

24

25

───────────Patrick J. Perotti───────────

1                        <u>APPEARANCES</u>:

2          (All participants were in attendance via remote
              connection through individual Zoom video
3                     conferencing as follows:)

4          Caryn M. Groedel, Esq.
           Caryn Groedel & Associates Co., LPA
5          208 Spriggel Drive
           Munroe Falls, Ohio 44262
6          1291 SW Mulberry Way
           Boca Raton, Florida 33486
7          440.230.3803
           cgroedel@groedel-law.com
8
                    On behalf of the Plaintiff;
9
           Kathleen M. Minahan, Esq.
10         Meyers, Roman, Friedberg & Lewis
           28601 Chagrin Boulevard, Suite 600
11         Cleveland, Ohio 44122
           216.831.0042 x223
12         kminahan@meyersroman.com

13                  On behalf of the Defendant;

14         Matt Miller-Novak, Esq.
           Barron Peck Bennie & Schlemmer Co., LPA
15         3074 Madison Road
           Cincinnati, Ohio 45209
16         513.721.1350
           mmn@bpbslaw.com
17
                 On behalf of Michele Nicole Frenchko.
18

19

20                      <u>ALSO PRESENT</u>:

21         Ernest Cook

22

23

24

25

                    ─Patrick J. Perotti─

1                         WITNESS INDEX

2         EXAMINATION                              PAGE

3         DIRECT EXAMINATION
          BY MS. GROEDEL                              4
4         CROSS-EXAMINATION
          BY MR. MILLER-NOVAK                        15
5         CROSS-EXAMINATION
          BY MS. MINAHAN                             24

6

7                         EXHIBIT INDEX

8         EXHIBIT NUMBER                           PAGE

9         Exhibit A                                  16
          Defendant's Exhibit C                      29
10        Defendant's Exhibit D                      30

11

12                        OBJECTION INDEX
                                                   PAGE

13        MS. MINAHAN                                 7
          MS. GROEDEL                                19
14        MS. GROEDEL                                19
          MS. GROEDEL                                20
15        MS. GROEDEL                                30
          MS. GROEDEL                                31
16        MS. GROEDEL                                33

17

18

19

20

21

22

23

24

25

1          (Prior to the deposition, all parties

2     agreed to the remote swearing in of the witness by

3     the court reporter.)

4                    - - - -

5          PATRICK J. PEROTTI, of lawful age,

6     called by the Plaintiff for the purpose of direct

7     examination, as provided by the Rules of Civil

8     Procedure, being by me first duly sworn, as

9     hereinafter certified, deposed and said as follows:

10     DIRECT EXAMINATION OF PATRICK J. PEROTTI

11     BY MS. GROEDEL:

12  Q.  Would you, please, state your name for the record.

13  A.  Patrick J. Perotti.

14  Q.  What is your occupation?

15  A.  I'm an attorney.

16  Q.  Would you, please, give us a brief description of

17     your education.

18  A.  I received my Juris Doctorate from Cleveland

19     Marshall College of Law, cum laude, in 1982, and I

20     began practicing immediately thereafter.

21  Q.  And where do you work?

22  A.  I work at Dworken & Bernstein as a partner and as a

23     senior partner in the firm.

24  Q.  And for how long have you been with Dworken &

25     Bernstein?

01:32

1   A.   Since law school graduation, 1982.

2   Q.   And what areas do you practice law?

3   A.   I'm a certified specialist by the State of Ohio Bar

4        Association, the Ohio Supreme Court in the areas of

5        employment and labor, and I practice in those

6        areas.  I also practice extensively in the areas of

7        consumer class actions and wage and hour class

8        actions.

9   Q.   Do you belong to any professional organizations?

10  A.   I belong to, you know, the typical -- the state bar

11       association, certain plaintiffs' groups like -- I

12       forget what it's called today.  I don't know -- it

13       was ATLA, or whatever it's called, the trade

14       organizations for plaintiffs' bar.  And I am

15       certified in a number of different specialized

16       courts such as the U.S. Court of International

17       Trade, plaintiffs court, and the usual Ohio Supreme

18       Court, the Sixth Circuit.

19  Q.   And have you ever testified as an expert?

20  A.   Yes.

21  Q.   Approximately how many times?

22  A.   Under ten.

23  Q.   Please take -- were you provided two exhibits by

24       Christina Carey?

25  A.   I was provided materials and I, myself, looked

PAGE REPORTING SERVICE
216.316.3258

01:34

1    through the docket of the case pending before Judge

2    Benita Pearson.  And, let's see, I was given, from

3    your office, a copy of your -- it's been marked in

4    some proceeding as Exhibit 2, which is your time

5    records for this case, and a set of the motion

6    practice dealing with this pending issue in the

7    Motion for Sanctions, a brief in opposition to

8    that, a reply, and the various attachments to those

9    filings with the federal court.

10   Q.   Okay.  I would just to like you have authenticate

11        that Exhibit 1 is a true and accurate copy of your

12        LinkedIn profile.

13   A.   Yes, it is.

14   Q.   How do you and I know each other?

15   A.   We probably met years ago at some employment law

16        seminar, either the National Employment Lawyers

17        Association or the Ohio Employment Lawyers

18        Association.

19   Q.   And have we worked on any cases together over the

20        years?

21   A.   We have worked on a few, yes.  I would say probably

22        two or three.

23   Q.   Have you had an opportunity to assess my skills as

24        an employment lawyer?

25   A.   I have.

Patrick J. Perotti

01:35

1  Q.  Today I'm going to ask you to opine on the

2      reasonableness of my hourly rate of 420, which is

3      the hourly rate I'm requesting for my work in this

4      case on the sanction matter, and on the number of

5      hours I have spent on the sanction matter.

6         Take a look at Exhibit Number 2.

7  A.  I have looked at this in detail.

8  Q.  And do you see that the hourly rate I am charging

9      is $420?

10  A.  I do.

11  Q.  Based on your education, training and experience,

12      do you believe that is a reasonable hourly rate for

13      an attorney with my skills and experience in this

14      area of law and in this geographical area?

15  A.  Yes.

16              MS. MINAHAN:  Objection.

17              MS. GROEDEL:  Okay.  Do you want to

18      state the basis for your objection?

19              MS. MINAHAN:  I'm sorry?

20              MS. GROEDEL:  Do you want to state the

21      basis so I can try to correct it if it's a form

22      issue or --

23              MS. MINAHAN:  Yeah.  My objection is

24      you didn't qualify him as an expert on attorney

25      fees, you just asked him if he had been

Patrick J. Perotti

01:37

1              qualified as an expert.

2     Q.   On what matters, what types of issues, Mr. Perotti,

3          have you been qualified as an expert?

4     A.   You asked me whether I have testified before as an

5          expert in any proceedings, and I said, yes, I have,

6          less than ten.  And those cases specifically dealt

7          with the reasonable, customary and ordinary hourly

8          rates and number of hours for a type of work and

9          work product in cases pending in the courts in

10         Ohio, either state or federal court, and dealing

11         particularly with the issues of employment.

12    Q.   Thank you.

13              Based on your education, training and

14         experience, do you believe that $420 is a

15         reasonable hourly rate for an attorney with my

16         skills and experience in this area of law and in

17         this geographical area?

18    A.   I didn't catch the last part of your question.  And

19         in what, this geographic area?

20    Q.   Yes.

21    A.   Okay.  Yes.

22    Q.   And on what do you base your opinion?

23    A.   I base my opinion on several things.  First of all,

24         the determination of an appropriate, reasonable,

25         customary and ordinary hourly rate in a particular

Patrick J. Perotti

01:38

1    jurisdiction or geographic venue is made based on a

2    number of factors.

3         Looking at the lawyer, those factors, of

4    course, are licensure, number of years of

5    experience, type of experience, specialty

6    certifications, type of areas of practice, prior

7    attorney's fees awards in areas dealing with those

8    subjects.

9         Number two, it looks at analysis by courts and

10   by professional organizations, such as bar

11   associations, law schools and so forth, on what are

12   the ordinary, customary and hourly rates for

13   lawyers in particular geographic areas of a

14   particular number of years of background, training

15   and experience on a particular subject matter.

16        And your rate of $420 is, in fact, according

17   to the rates that are charged in the Cleveland area

18   for your experience and background, under the

19   typical hourly rate, which is considered to be

20   reasonable, customary and ordinary, and they are --

21   I think you have probably about the same number of

22   years of experience as I do -- and they are

23   dramatically under the rate which I charge, which

24   is -- I think at this point it's over $700 an hour,

25   and it has been approved by numerous courts in this

Patrick J. Perotti

01:40

1    jurisdiction including Judge Gwin, and others, and

2    around the United States.

3  Q.  You used the description of legal work performed

4    and number of hours spent on this retention matter,

5    on Exhibit 2?

6  A.  I'm looking at Exhibit 2, and, yes, I can see it is

7    a listing of date, description, the reporting

8    individual who is charging the hours, the rate, the

9    number of hours, and what that number of hours at

10    that rate totals for that particular task.

11  Q.  Based on your education, training and experience,

12    do you believe the amount of time I spent on the

13    tasks described in Exhibit 2 is customary and

14    reasonable?

15  A.  Having looked at the items that are listed on

16    Exhibit 2, particularly the items which deal with

17    filings with the Court, and, again, I looked at the

18    Court's docket and reviewed the various filings,

19    and having the experience in dealing with opposing

20    counsel on issues such as reviewing correspondence,

21    drafting, telephone calls, the items that are

22    listed on this activities list, which is Exhibit 2,

23    are reasonable, customary and ordinary in this

24    jurisdiction for the type of work that you

25    performed on those tasks.

Patrick J. Perotti

PAGE REPORTING SERVICE
216.316.3258

01:41

1  Q.  Do you see the amount of costs expended on this

2      matter?

3  A.  I do.

4  Q.  In exhibit -- and based on your education, training

5      and experience, is the expenditure costs identified

6      on this exhibit reasonable and customary?

7  A.  I can't opine on that because the only costs that I

8      see here, I see expenses for $25.58, is that what

9      you are talking about?

10  Q.  It is.

11  A.  I don't know what that was for, so I couldn't say

12      whether it was reasonable, but I will tell you in a

13      matter dealing with this type of subject and with

14      this many hours, $25 is not unusual.

15  Q.  Thank you.

16              MS. GROEDEL:  I have nothing further.

17              MR. MILLER-NOVAK:  Caryn, I want to

18          stay on the record.  I just want a little bit

19          of clarity on -- when he's saying Exhibit 2,

20          and that's Exhibit 2 attached to your motion

21          for attorneys fees --

22              MS. GROEDEL:  Yes.

23              MR. MILLER-NOVAK:  I know that that's

24          what it was called.  I just want the record to

25          be clear, because Kathleen and I both have

Patrick J. Perotti

01:42

1    exhibits and now we're, kind of, starting with

2    2, so I don't know how we want to note that for

3    the record.

4          THE WITNESS:  Counsel, if I could,

5    what I was looking at is filed in Case

6    4:22-civil-00077, Benita Y. Pearson, as docket

7    number 74-2 HID 1155 through 1161.

8    So that's -- for the Court's record, that's

9    what I think the Judge will be looking for as

10   far as what document I'm looking at, so that

11   would be it.

12         MR. MILLER-NOVAK:  Yeah, I understand.

13   I didn't want to steal your thunder, Patrick,

14   and interrupt you, so I was waiting until you

15   were done.

16    Do we -- for the purposes of this

17   deposition, do we just want to refer to it as

18   -- I mean, it doesn't really matter to me, I

19   just want to make sure when I talk about it I'm

20   staying consistent.

21    Do we just want to call it Exhibit 2, and

22   then when I cross-examine him I'll, kind of, go

23   backwards to 1?

24         MS. GROEDEL:  However you -- whatever

25   you would like to do and whatever you think is

01:43

1    easiest.

2        If they were misidentified differently here

3    than they were in the court filing, just know

4    that it's the same two documents, and if you

5    would like to invert them and call what I have

6    called A, Exhibit 1, or call it 2, the court

7    reporter can do that.

8            MR. MILLER-NOVAK:  All right.  Well,

9    Kelli, just let me know since you are the one

10   tagging it, you know, sitting somewhere else

11   than me, if you need me to call something,

12   something else.  Okay?

13           COURT REPORTER:  It's fine.  We'll be

14   able to read it through the record and

15   understand it, I believe.

16           MR. MILLER-NOVAK:  Okay.  Well, I'll

17   let you be the boss of numbers and tags.

18           THE REPORTER:  If they're already

19   marked, we can leave them as is.  I would

20   prefer to do Defendant's A and B, but it's up

21   to you.

22           MR. MILLER-NOVAK:  That's fine.  What

23   I e-mailed you earlier, I don't know if you got

24   it, I didn't tag them at all because I didn't

25   know necessarily what I was a hundred percent

01:45

1   going to use, and everything that I have sent

2   is already filed in the court in one way,

3   shape, or form.

4        So did -- Caryn, did you send that -- or,

5   Kelli, did you get the e-mail with the

6   exhibits?

7            THE REPORTER:  I'm not sure.  I know I

8   got Kathleen's.  I don't know if I received an

9   attachment with yours.  I'll have to double

10  check.

11           MS. MINAHAN:  I forwarded them to you,

12  Kelli, because I wasn't sure if Caryn had done

13  it.

14           THE REPORTER:  Oh, okay.  So I do have

15  them, the ones that Kathleen sent me.

16           MR. MILLER-NOVAK:  Oh, okay.  Great.

17       Well, Kathleen, thanks for doing my job for

18  me.

19           MS. MINAHAN:  Any time, Matt.

20           MR. MILLER-NOVAK:  Okay.  Alright.

21  Now that we got all that boring stuff out of

22  the way, do you -- in terms of

23  cross-examination, Kathleen, do you want to go

24  first, do you want me to go first or --

25           MS. MINAHAN:  You can go first.

Patrick J. Perotti

01:45

1          MR. MILLER-NOVAK:  Okay.

2      CROSS-EXAMINATION OF PATRICK J. PEROTTI

3      BY MR. MILLER-NOVAK:

4  Q.  Alright, Patrick, in your testimony you mentioned

5      that Caryn's rate was reasonable based upon her

6      experience.

7          How long has she been practicing law?

8  A.  I know that she has been practicing at least 20

9      years.

10 Q.  Okay.  But you don't know exactly how long?

11 A.  I don't know the date she received her Ohio Bar

12     license.

13 Q.  Do you know what areas of law she practices?

14 A.  Yes.

15 Q.  You said that you had reviewed the filings in this

16     case; is that correct?

17 A.  Yes, sir.

18 Q.  Did you review the Motion for Sanctions itself?

19 A.  I did.

20 Q.  Can I have you go to the Motion for Sanctions?  Do

21     you have it in front of you, by any chance?

22 A.  Yes, sir, I do.

23 Q.  Okay.  Great.

24          MR. MILLER-NOVAK:  Can we call this

25     Exhibit A, then, I suppose?

─────Patrick J. Perotti─────

01:47

1              - - - - -

2        (Exhibit A was marked for purposes of

3                 identification.)

4              - - - - -

5    Q.   If you look at Exhibit A, which is Plaintiff's

6         Motion for Sanctions against Defendant And Its

7         Counsel, that is filed on May 4th, 2023, the

8         summary says Plaintiff seeks sanctions against

9         Commissioner Niki Frenchko for calling counsel for

10        plaintiff a -- I'll just say an "effing C," at the

11        stopping point of 30(b)(6) deposition testimony she

12        was giving on May 1st, 2023.  Do you see that?

13   A.   I do.

14   Q.   On the second page there seems to be three bullet

15        points where Caryn, on behalf of Plaintiff Cook,

16        lays out three bullets of things that she cites as

17        the conduct she is seeking sanctions for.  Do you

18        see that?

19   A.   I see the bullet points on what would be page ID

20        207 in that filing.

21   Q.   Okay.  Sorry, I didn't hear.  Sorry for the awkward

22        silence, Patrick.

23        The first one was drinking wine during her

24        deposition.  Do you see that?

25   A.   I see that bullet point.

01:49

1   Q.   Yeah. And it says: "Ms. Frenchko will say it was

2        water, but the Zoom recording shows her drinking

3        from a wine glass twice. The first time she drank

4        a yellow liquid," which she alleges apparently was

5        white wine. "And the second time, a clear liquid,

6        probably water," she alleges, "after Ms. Frenchko

7        realized she had been caught on tape drinking

8        wine." Do you see that?

9   A.   Yes, I do.

10   Q.   Okay. The second point says: "Being argumentative

11       and feigning that she did not understand commonly

12       used words." However, she says that that will be a

13       subject of a second sanction motion to be filed

14       after the court reporter finishes transcribing the

15       testimony. Do you see that?

16   A.   I see it.

17   Q.   Okay. The third comment lays out the allegations

18       that after at approximately 5:40 p.m. that she had

19       to conclude the deposition, she being Caryn, for

20       the day and would resume at a convenient time for

21       all involved, there was an argument that happened,

22       and then off record the comment is that she stated

23       the words "effing C." Do you see that?

24   A.   I see it.

25   Q.   Okay. And I'm assuming you read the arguments of

01:50

1  the law, so you understand that, I guess, the

2  general nature of this motion is, is that Plaintiff

3  Cook And Its Counsel are seeking sanctions against

4  Ms. Frenchko and as well as counsel for the county

5  for basically making a statement that Caryn Groedel

6  found offensive.  Do you agree with that?

7 A. I don't agree or disagree.  I was asked to give an

8  opinion on the reasonableness, hourly rates in this

9  community for this type of work and for the hours

10  that were expended for this type of motion.

11   The issue of whether this conduct, whether

12  it's bullet 1, 2 or 3, is within the Court's scope

13  as sanctionable, is an ultimate issue and a matter

14  of law for Judge Pearson, and it's not something on

15  which I'll opine on.

16 Q. I didn't ask you that.  Just to be clear, I'm not

17  asking you to rule on the appropriate of sanctions

18  and I am not asking for your opinion about the

19  appropriate sanctions.

20   I'm asking you the goal, or what the motion

21  itself is asking for.  I'll represent, in my

22  opinion, for you to give an opinion about the

23  reasonableness of fees, wouldn't you agree part of

24  what gauges the reasonableness of what the fees are

25  trying to accomplish; correct?

Patrick J. Perotti

*PAGE REPORTING SERVICE*
*216.316.3258*

01:52

1   A.   No.

2   Q.   So it's your opinion today that I can run up -- I

3        could maybe bill my client $50,000 on something

4        that had nothing to do with the case, and that

5        would be reasonable?

6             MS. GROEDEL:  Objection.

7   A.   Pardon me, but the hypothetical you are giving, I

8        can't give you an answer because I don't have --

9   Q.   I'm sorry, what was your response there?

10  A.   I said the hypothetical you are giving me, I don't

11       have any other facts or background, so I couldn't

12       give you an answer.

13  Q.   Okay.

14            Do you know -- are you aware, or have you

15       reviewed any facts about Ms. Groedel's fee

16       agreement with Mr. Cook?

17  A.   I do not.

18  Q.   So you have no knowledge of --

19                 MS. GROEDEL:  Objection.

20                 MR. MILLER-NOVAK:  I'm sorry?

21                 MS. GROEDEL:  I'll assert an

22       objection.

23                 MR. MILLER-NOVAK:  Okay.  The reason

24       for your objection?

25                 MS. GROEDEL:  Relevance.

Patrick J. Perotti

01:53

1              MR. MILLER-NOVAK:  Okay.

2          Are you instructing him to not answer?

3              MS. GROEDEL:  No.

4   Q.   Okay.  So I just -- I'm sorry, so what was your

5        answer to that, Patrick?

6   A.   What was the question?  Can you repeat it?

7   Q.   Okay.  My question was are you aware of

8        Ms. Groedel's fee arrangement with Mr. Cook?

9   A.   (No reply.)

10             MS. GROEDEL:  Same objection.

11  Q.   Okay.  So you're not aware of whether or not

12       Mr. Cook would have to pay Ms. Groedel the 10,000

13       plus dollars regardless of whether or not she's

14       successful in this motion of having her attorney's

15       fees awarded?

16  A.   I don't know what her fee agreement says, and that

17       wouldn't bear on my opinion.

18  Q.   Okay.  Why would it not bear on your opinion?

19  A.   My opinion is solely that looking at the work that

20       was done, number one, by a lawyer with a particular

21       background, training and experience and number of

22       years in practice is the hourly rate for that type

23       of work in this type of case, an employment case,

24       reasonable in this market, and the answer is yes.

25          And, second, are the types of activities and

Patrick J. Perotti

*PAGE REPORTING SERVICE*
*216.316.3258*

01:55

1    the types of hours charged for those activities as

2    listed on whatever exhibit number you are calling

3    it, it's, again, page ID 1155 through 1161,

4    reasonable, customary and ordinary for that type of

5    work, and the answer is yes.

6        I don't opine on the merits of who is right or

7    who is wrong about any of those issues.

8  Q.  Okay.  I understand that, but are you saying that

9    you have no opinion on whether or not it's

10   reasonable for Ms. Groedel to bill her client

11   $10,000 to seek sanctions of this nature?

12 A.  I don't know what her contract with the client is,

13   so I wouldn't be able to opine on that.

14 Q.  So you have no opinion whether or not it's

15   reasonable to bill your client $10,000 to seek

16   sanctions for offensive conduct that potentially

17   neither advances -- that potentially doesn't even

18   advance the substantive merit of the case?

19 A.  Again, that's not subject to my opinion, so, no, I

20   have no opinion on whether this merits or demerits

21   an award of it.

22 Q.  When did Ms. Groedel hire you to serve as an expert

23   witness; do you remember the date?

24 A.  It was within the last 30 days, I suspect.

25 Q.  At any time did Ms. Groedel ask you to prepare an

Patrick J. Perotti

01:57   1        expert witness report?

2   A.   She did not.

3   Q.   She did or did not?

4   A.   She did not.

5   Q.   Okay.  Sorry, I don't mean to be rude.

6   A.   Oh, no, you are not rude at all.  I understand the

7        issues of Zoom.

8   Q.   I know.

9   A.   I'm not sure if the court reporter heard me either,

10        so thank you.

11   Q.   Yeah.  No problem.  I have a love-hate relationship

12        with Zoom depos, so I appreciate your willingness

13        to repeat yourself multiple times.

14        So your answer was, no, she did not ask you to

15        prepare a report?

16   A.   Correct.

17   Q.   Thank you, sir.

18        So if we can pull up what you referred to

19        previously as Exhibit 74-2, which is Ms. Groedel's

20        billing statements.  Do you see these?

21   A.   Yes.  Yes, I have those in front of me.

22   Q.   On the top, the second billing entry is on May 2nd,

23        2023.  Do you see that?

24   A.   Yes.

25   Q.   And part of that is receipt and review of part of

01:59   1       e-mail from opposing counsel, re scheduling

2       remaining part of 30(b) deposition.  Do you see

3       that?

4    A.  Yes.

5    Q.  Isn't it true that Ms. Groedel would have had to do

6       that regardless of any name that Ms. Frenchko would

7       have called her?

8    A.  I don't know what the status or the sequence was in

9       the deposition.  From what I read, the deposition

10      was ongoing and was supposed to have been completed

11      by a certain time, and wasn't.

12          Again, I don't opine whether that was

13      reasonable or unreasonable by the witness.  All I'm

14      saying is looking at this time entry, if the Court

15      believes the attorney that amount of time was spent

16      to do those things, then that is a reasonable

17      charge for those services.

18   Q.  So you don't have any opinion on whether or not it

19      was reasonable to request reimbursement of fees for

20      Ms. Groedel preparing for the continuation of the

21      same deposition?

22   A.  Again, I don't have an opinion on whether the Court

23      will deem it to be appropriate, or if certain

24      things should be awarded or certain things should

25      not be.

Patrick J. Perotti

02:01

1   Q.   Okay.  So, in other words, your opinion today is

2        limited entirely to what you consider to be the

3        reasonableness of Ms. Groedel's billing rate,

4        number one; correct?

5   A.   Yes, sir.

6   Q.   And then, number two, the time she spent on

7        particular tasks, regardless of whether or not

8        those particular tasks are traceable to the conduct

9        that she alleges is sanctionable?

10  A.   Yes.  Again, assuming the Court believed that she

11       spent that amount of time, then I am just opining

12       that that amount of time would be reasonable for

13       that type of activity by a lawyer in this type of

14       case.

15              MR. MILLER-NOVAK:  All right.  I have

16          no further questions at this time.  Thanks.

17           This happened so quick, I forgot your last

18        name.  Do you mind if I say, "Thank you,

19        Patrick"?

20              THE WITNESS:  Yes.  Thank you,

21        Matthew.

22              MR. MILLER-NOVAK:  Thank you.

23        <u>CROSS-EXAMINATION OF PATRICK J. PEROTTI</u>

24        <u>BY MS. MINAHAN:</u>

25   Q.   Mr. Perotti, my name is Kathleen Minahan.  I'm

02:02

1    representing the Board of Trumbull County

2    Commissioners in this lawsuit.

3        I wanted to let you know that you were

4    identified to us on the Plaintiff's witness list as

5    an expert as to the propriety of sanctions with

6    respect to the issue before the Court as well as

7    the reasonableness of Plaintiff's counsel's

8    attorney's fees and costs request.

9        Based on your responses to Mr. Miller-Novak, I

10   am guessing that you are going to tell me that you

11   are not giving any expert testimony as to the

12   propriety of sanctions with respect to the issue

13   before the Court; is that correct?

14 A.  It's partially correct.  I wouldn't use the word

15   "propriety."  In other words, I'm not giving any

16   opinion to suggest that, yes or no, that the

17   judicial officer in this case should rule one way

18   or the other.

19        If I'm asked questions about whether a lawyer

20   responding to this type of conduct during the

21   judicial proceeding is reasonable in what she's

22   doing, that I can opine on.

23 Q.  Okay.

24 A.  And I have not been asked to do so, as of yet.

25 Q.  Do you know when Ms. Groedel recorded the time

02:03

1          charges that are contained on her Exhibit 2?

2      A.  I'm sorry, I don't understand your question.

3      Q.  Do you know whether Ms. Groedel recorded her time

4          charges at or near the time of the events recorded?

5      A.  In other words, contemporaneous?

6      Q.  Correct.

7      A.  I don't know that.

8      Q.  Are you aware that in the Motion for Sanctions

9          Ms. Groedel requested $10,000 for attorney fees?

10     A.  That is what the motion indicates on page ID 209 of

11         the federal court's record.

12     Q.  Okay.  And if you look at the date that was filed,

13         that was May 4th, 2023; correct?

14     A.  Correct.

15     Q.  All right.  If you would take a look at Plaintiff's

16         Exhibit 2, please.

17     A.  I have it.

18     Q.  Okay.  And if you would pull to page 1158, there is

19         a time entry on that page for Ms. Groedel and

20         that's 6/26/23.  Do you see that?

21     A.  Yes.

22     Q.  Okay.  And it indicates near the end of that,

23         perhaps starting towards the middle, one of the

24         entries is "Receipt and review of time and expense

25         entries from C. Carey, and edited same so that

02:05

1          unrelated entries are redacted or redlined out."

2          Do you see that?

3     A.   I see it.

4     Q.   Okay.  Will you agree with me that Ms. Groedel

5          sought $10,000 worth of attorney fees on May 4th,

6          2023 and actually didn't look at what the attorney

7          fees were until 6/26/2023?

8     A.   I don't know when she looked at attorney's fees.  I

9          would agree with you that the request on May 4th,

10         '23 for attorney's fees stated in the amount of

11         $10,000 was before those attorney's fees were

12         incurred, and that is normal, reasonable and

13         customary, especially in federal proceedings

14         because under numerous federal laws which do

15         attorney's fees shifting, the lawyer does not know

16         until all the work is done how much the fees are,

17         so the Court usually requires, especially, I think,

18         Judge Gwin requires an estimate in advance how much

19         the fees are going to be, and then if you go over

20         or under you have to identify and itemize what you

21         actually incurred.

22    Q.   And nothing in that Motion for Sanctions talks

23         about estimated fees or what's even being included

24         in that; right?  It just says $10,000 in attorney

25         fees; correct?

*PAGE REPORTING SERVICE*
*216.316.3258*

02:07

| | |
|---|---|
| 1 | A. That's correct. |
| 2 | Q. All right. And when she went through the attorney |
| 3 | fees and filed Exhibit 2, they suddenly ended up |
| 4 | being $10,105; is that correct? |
| 5 | A. I don't have a total for them. If you say that |
| 6 | that's what the hours and time rates calculate or |
| 7 | add up to be, then that would be the right number. |
| 8 | My sheet doesn't have a total. It has a total |
| 9 | with expenses and, again, I also -- I don't know |
| 10 | what was not included in this. I know that as an |
| 11 | expert witness when I'm practicing in the field, |
| 12 | and I am doing attorney's fees and I am giving a |
| 13 | Court an estimate I might eliminate certain items |
| 14 | or tasks which would take me over the amount of the |
| 15 | estimate. |
| 16 | But, again, I don't know what she did or |
| 17 | didn't do as far as adding or subtracting hours to |
| 18 | this particular essay. |
| 19 | MS. MINAHAN: Kelli, can you pull up |
| 20 | exhibits for me, or do you need me to do that, |
| 21 | or how do you want to do that? |
| 22 | - - - - - |
| 23 | (Off the record.) |
| 24 | - - - - - |
| 25 | Q. Okay. Are you seeing what's marked an order? |

Patrick J. Perotti

*PAGE REPORTING SERVICE*
*216.316.3258*

02:09

1  A.  I do see that.

2  Q.  Okay.

3         MS. MINAHAN:  I'm going to mark that

4      as Defendant's Exhibit B {sic}.

5                 -  -  -  -  -

6      (Defendant's Exhibit C was marked for purposes of

7                  identification.)

8                 -  -  -  -  -

9         MS. MINAHAN:  And just for the record,

10      this is an order which is identified as

11      Electronic Case Filing Document Number 44.

12  Q.  If you look at the highlighted language down at the

13      bottom, it ordered Plaintiff's counsel to file a

14      brief clarification about the target of her Motion

15      for Sanctions by four p.m. on May 9th, 2023.  Do

16      you see that?

17  A.  I see the highlight, yes.

18  Q.  Okay.  And then I'm going to show you another

19      couple of exhibits and then I'll ask you my

20      question.

21         All right.  Are you looking at an order right

22      now that is Electronic Case Filing Document Number

23      67?

24  A.  I am looking at Document 67 in this case on the

25      federal docket.

─────────Patrick J. Perotti─────────

02:10

1    Q.   Okay.  And this is, kind of, I guess you would say,

2         a reminder from the Court to Ms. Groedel that she

3         had ordered clarification about the targets of the

4         motion; is that correct?

5    A.   I don't know what the Court's intent was.  I can

6         read the language, and the language says:  "Its

7         Counsel caused the Court to seek clarification

8         about whether Plaintiff also intends to seek

9         sanctions against Defendant Frenchko's counsel or

10        any other counsel."

11                  MS. GROEDEL:  Objection as to

12           relevance.

13   Q.   And it also says as of this writing plaintiff has

14        not complied with her order from the previous

15        document; correct?

16   A.   I see that.

17   Q.   Okay.  All right.

18             And if you take a look now at what I'm going to

19        mark as Defendant's Exhibit -- I'm sorry, the

20        previous one would be Defendant's Exhibit C.  This

21        one will be Defendant's Exhibit D.

22                          -  -  -  -  -

23        (Defendant's Exhibit D was marked for purposes of

24                       identification.)

25                          -  -  -  -  -

Patrick J. Perotti

02:11

1  Q.  And this is an Electronic Case Filing Document

2      Number 69.  And at the top of the page --

3                  MS. GROEDEL:  I'll put a continuing

4          objection to testimony regarding this order.

5                  MS. MINAHAN:  And the basis for which

6          is --

7                  MS. GROEDEL:  It's just relevance.  I

8          was clear about what I was using his testimony

9          for, and it is very, very narrow, and this is

10         not what he was prepared to discuss.  I didn't

11         review this with him.  I just don't think it's

12         relevant to the reasonableness of my rate and

13         time spent.

14                 MS. MINAHAN:  Okay.  Well, I'll get to

15         my question and then maybe it will be clear.

16 Q.  So this is Document Number 69, it indicates on June

17     7th, 2023 the Court ordered Plaintiff to, quote,

18     succinctly name the targets of the Motion for

19     Sanctions, end quote.

20         And then it cites two other Electronic Case

21     Filing Documents that we have looked at.

22         It also indicates:  "As of the issuance of this

23     order, Plaintiff had not done so, although the

24     Court has ordered such clarification twice."

25         Did I read that correctly?

Patrick J. Perotti

02:13

1  A.  Yes.  The document says what it says.

2  Q.  Okay.  So I guess my question to you is, is it

3      typical, in your experience, for a $420 an hour

4      lawyer to have to be told three times by the Court

5      to do something?

6  A.  That's not something that I'm giving an opinion on.

7  Q.  Would you pay a lawyer $420 an hour if they ignored

8      Court orders, as Ms. Groedel has done?

9  A.  Again, I'm not giving an opinion on that subject.

10                  -  -  -  -  -

11              (Discussion Off the record.)

12                  -  -  -  -  -

13  A.  Again, I'm not offering an opinion on that subject.

14  Q.  Aren't you offering an opinion about the

15      reasonableness of what Ms. Groedel is charging for

16      the legal services she is performing?

17  A.  Yes.

18  Q.  Isn't part of what effects that how well she does

19      her job?

20  A.  No, not at all.  The determination of hourly rates

21      does not look into success or failure in any way.

22      It simply looks into background, training and

23      experience and the number of years you have been

24      practicing and the field in which you are

25      practicing.

─────Patrick J. Perotti─────

02:14

1          The Court, obviously, can take into account

2     what it considers to be reasonable based on these

3     factors, which are not something that I am opining

4     on or something that would be within my pen

5     because, again, I'm not the Court.

6          All I'm saying is for this type of lawyer,

7     this type of work, this community, with this number

8     of years, $420 is a reasonable rate, and for the

9     items on the activity list, that is ordinary,

10    reasonable and customary for that type of work.

11  Q.  And I am not asking you about success or failure on

12    the merits of a lawsuit.  I'm asking you about the

13    bare minimum of keeping up with orders that are

14    issued in a case.  Does that factor at all into

15    your determination of whether $420 an hour is a

16    reasonable rate for a lawyer?

17  A.  No.

18          MS. GROEDEL:  Objection.  He doesn't

19     know the circumstances.  This is really far

20     afield.  I had told you, you know that.

21          MS. MINAHAN:  Thank you.  You have

22     objected.

23          MS. GROEDEL:  I object because it's

24     unclear what the circumstances were surrounding

25     this order.

Patrick J. Perotti

PAGE REPORTING SERVICE
216.316.3258

02:15
1            MS. MINAHAN:  I didn't hear any of
2       that, I'm sorry.
3            MS. GROEDEL:  I object based on he,
4       Mr. Perotti, has not been apprised of any facts
5       surrounding this order or when I was able to
6       comply with the Court's request for
7       clarification, so I object.
8            MS. MINAHAN:  Alright.  I don't think
9       any of that is relevant, but that's okay.
10  Q.  Mr. Perotti, do you know whether or not
11      Ms. Groedel's rate has ever been found to be
12      reasonable by any Court?
13  A.  I do not know.
14  Q.  You do not know?
15  A.  No, I do not know.
16  Q.  Okay.
17      If a lawyer were to misstate the governing
18      legal standard in an employment discrimination case
19      in a brief and opposition to summary judgment, is
20      that the quality of a lawyer that you would pay
21      $420 an hour for?
22  A.  I'm not opining on that issue.  Again, that doesn't
23      bear on what is reasonable, ordinary or customary
24      for attorneys in a particular geography based on
25      the trends in that area.  That's up to the

Patrick J. Perotti

02:16

1　reviewing Court to determine whether other

2　activities in the case would effect whatever

3　judgment is entered, not from my expert opinion.

4　Q.　So is it correct to say then that you are not

5　opining that Caryn Groedel's reasonable hourly rate

6　is $400, but rather that someone who has her years'

7　of experience in her practice area and in her

8　geographical area that a reasonable rate for them

9　would be $420 an hour?

10　A.　I'm opining based on her background, training and

11　service, in which I am familiar, justifies charging

12　$420 an hour and, in fact, substantially more than

13　that, regardless of her success or failure rate.

14　　　And I would be interested to know if a Court

15　previously determined that that was not reasonable

16　for her, based on her conduct, or anything else,

17　but no one has provided me that information, and if

18　we have it, I would be happy to review.

19　Q.　Are you testifying then that $420 an hour, in your

20　expert opinion, is a reasonable rate for Caryn

21　Groedel's services?

22　A.　Yes, in this case.

23　Q.　And what does that mean, "in this case"?

24　A.　Again, I wouldn't give you an opinion if she said,

25　"I want to charge $420," and end of story.  I would

02:18    1    need to know what the subject matter was, what type

2    of case it was.

3       The reason why the hourly rate is determined

4    is -- the hourly rate for somebody with her

5    background, training and experience in a

6    landlord/tenant case would be much less.

7           MS. MINAHAN:  Those are all the

8    questions I have.  Thank you, Mr. Perotti.

9           THE WITNESS:  Thank you, ma'am.

10           MS. GROEDEL:  That's it.

11    Kelli, I am ordering it.  I'm ordering the

12    transcript on an expedited basis because the

13    hearing is Friday.  Thank you, everyone.

14       We will review.  I mean, I'm going to

15    recommend that Pat review.

16           THE WITNESS:  I will review then.

17           -  -  -  -  -

18      (Whereupon, the deposition was concluded at

19          2:19 p.m.)

20           -  -  -  -  -

21       (Signature not waived.)

22           -  -  -  -  -

23

24

25

Patrick J. Perotti

PAGE REPORTING SERVICE
216.316.3258

```
 1                    C E R T I F I C A T E

 2

 3    The State of Ohio, )
                        ) SS:
 4    County of Cuyahoga.)

 5

 6         I, Kelli Rae Page, a Notary Public within and for
      the State of Ohio, and authorized to administer oaths
 7    and to take and certify depositions, do hereby certify
      that the above-named witness, PATRICK J. PEROTTI, was by
 8    me, before the giving of his deposition, first duly
      sworn to testify the truth, the whole truth, and nothing
 9    but the truth; that the deposition as above-set forth
      was reduced to writing by me by means of stenotypy, and
10    was later transcribed into typewriting under my
      direction; that this is a true record of the testimony
11    given by the witness, and was subscribed by said witness
      remotely by agreement of the parties; that said
12    deposition was taken at the aforementioned time, date
      and place and was completed without adjournment,
13    pursuant to notice or stipulations of counsel; that I
      used Zoom to video record the deposition of Patrick
14    Perotti on July 11, 2023, and that the video recording
      attached on the thumb drive hereto is a true and
15    accurate copy of that recording; that I am not a
      relative or employee or attorney of any of the parties,
16    or a relative or employee of such attorney or
      financially interested in this action.  I am not, nor is
17    the court reporting firm with which I am affiliated,
      under a contract as defined in Civil Rule 28 (D).

18

19

20         IN WITNESS WHEREOF, I have hereunto set my hand
      and seal of office, at Cleveland, Ohio, this 12th day of
21    July, A.D. 2023.

22

23

24    _Kelli Rae Page_

25    _____
      Kelli Rae Page, Notary Public, State of Ohio
      My commission expires October 30, 2025.
```

Patrick J. Perotti

PAGE REPORTING SERVICE
216.316.3258

```
1                    DEPOSITION ERRATA SHEET

2   RE:  UNITED STATES DISTRICT COURT
         NORTHERN DISTRICT OF OHIO
3        EASTERN DIVISION
         CASE NO. 4:22-CV-00077-BYP, JUDGE BENITA PEARSON
4
    Deponent:            PATRICK J. PEROTTI
5   Deposition Date:     July 11, 2023

6   To the Reporter:
    I have read the entire transcript of my Deposition taken
7   in the above-captioned matter or the same has been read
    to me.  I request that the following changes be entered
8   upon the record for the reasons indicated.  I have
    signed my name to the Errata Sheet and authorize you to
9   attach said Errata Sheet to the original transcript.

10  page  line  correction

11  _____

12  _____

13  _____

14  _____

15  _____

16  _____

17  _____

18  _____

19  _____

20  _____

21  _____

22

23  _____NO CHANGES

24

25  _____           _____
    Patrick J. Perotti                     Date
```

Patrick J. Perotti

**$**

**$10,000** [6] - 21:11, 21:15, 26:9, 27:5, 27:11, 27:24
**$10,105** [1] - 28:4
**$25** [1] - 11:14
**$25.58** [1] - 11:8
**$400** [1] - 35:6
**$420** [12] - 7:9, 8:14, 9:16, 32:3, 32:7, 33:8, 33:15, 34:21, 35:9, 35:12, 35:19, 35:25
**$50,000** [1] - 19:3
**$700** [1] - 9:24

**'**

**'23** [1] - 27:10

**1**

**1** [4] - 6:11, 12:23, 13:6, 18:12
**10,000** [1] - 20:12
**11** [3] - 1:12, 37:14, 38:5
**1155** [2] - 12:7, 21:3
**1158** [1] - 26:18
**1161** [2] - 12:7, 21:3
**1249** [1] - 1:17
**1291** [1] - 2:6
**12th** [1] - 37:20
**15** [1] - 3:4
**16** [1] - 3:9
**19** [2] - 3:13, 3:14
**1982** [2] - 4:19, 5:1
**1:31** [1] - 1:12
**1st** [1] - 16:12

**2**

**2** [17] - 1:17, 6:4, 7:6, 10:5, 10:6, 10:13, 10:16, 10:22, 11:19, 11:20, 12:2, 12:21, 13:6, 18:12, 26:1, 26:16, 28:3
**20** [2] - 3:14, 15:8
**2023** [11] - 1:13, 16:7, 16:12, 22:23, 26:13, 27:6, 29:15, 31:17, 37:14, 37:20, 38:5
**2025** [1] - 37:25
**207** [1] - 16:20
**208** [1] - 2:5
**209** [1] - 26:10
**216.316.3258** [1] - 1:18
**216.831.0042** [1] - 2:11
**24** [1] - 3:5
**28** [1] - 37:17

**28601** [1] - 2:10
**29** [1] - 3:9
**2:19** [1] - 36:19
**2nd** [1] - 22:22

**3**

**3** [1] - 18:12
**30** [4] - 3:10, 3:15, 21:24, 37:25
**30(b** [1] - 23:2
**30(b)(6** [1] - 16:11
**3074** [1] - 2:15
**31** [1] - 3:15
**33** [1] - 3:16
**33486** [1] - 2:6

**4**

**4** [1] - 3:3
**420** [1] - 7:2
**44** [1] - 29:11
**440.230.3803** [1] - 2:7
**44107** [1] - 1:18
**44122** [1] - 2:11
**44262** [1] - 2:5
**45209** [1] - 2:15
**4:22-civil-00077** [1] - 12:6
**4:22-CV-00077-BYP** [2] - 1:5, 38:3
**4th** [4] - 16:7, 26:13, 27:5, 27:9

**5**

**513.721.1350** [1] - 2:16
**5:40** [1] - 17:18

**6**

**6/26/2023** [1] - 27:7
**6/26/23** [1] - 26:20
**600** [1] - 2:10
**67** [2] - 29:23, 29:24
**69** [2] - 31:2, 31:16

**7**

**7** [1] - 3:13
**74-2** [2] - 12:7, 22:19
**7th** [1] - 31:17

**9**

**9th** [1] - 29:15

**A**

**A.D** [1] - 37:20

**able** [3] - 13:14, 21:13, 34:5
**above-captioned** [1] - 38:7
**above-named** [1] - 37:7
**above-set** [1] - 37:9
**accomplish** [1] - 18:25
**according** [1] - 9:16
**account** [1] - 33:1
**accurate** [2] - 6:11, 37:15
**action** [1] - 37:16
**actions** [2] - 5:7, 5:8
**activities** [4] - 10:22, 20:25, 21:1, 35:2
**activity** [2] - 24:13, 33:9
**add** [1] - 28:7
**adding** [1] - 28:17
**adjournment** [1] - 37:12
**administer** [1] - 37:6
**advance** [2] - 21:18, 27:18
**advances** [1] - 21:17
**affiliated** [1] - 37:17
**afield** [1] - 33:20
**aforementioned** [1] - 37:12
**age** [1] - 4:5
**ago** [1] - 6:15
**agree** [5] - 18:6, 18:7, 18:23, 27:4, 27:9
**agreed** [1] - 4:2
**agreement** [3] - 19:16, 20:16, 37:11
**allegations** [1] - 17:17
**alleges** [3] - 17:4, 17:6, 24:9
**alright** [3] - 14:20, 15:4, 34:8
**ALSO** [1] - 2:20
**amount** [7] - 10:12, 11:1, 23:15, 24:11, 24:12, 27:10, 28:14
**analysis** [1] - 9:9
**answer** [7] - 19:8, 19:12, 20:2, 20:5, 20:24, 21:5, 22:14
**APPEARANCES** [1] - 2:1
**appreciate** [1] - 22:12
**apprised** [1] - 34:4
**appropriate** [4] - 8:24, 18:17, 18:19, 23:23
**approved** [1] - 9:25
**area** [9] - 7:14, 8:16, 8:17, 8:19, 9:17, 34:25, 35:7, 35:8
**areas** [8] - 5:2, 5:4, 5:6, 9:6, 9:7, 9:13, 15:13

**argument** [1] - 17:21
**argumentative** [1] - 17:10
**arguments** [1] - 17:25
**arrangement** [1] - 20:8
**assert** [1] - 19:21
**assess** [1] - 6:23
**Associates** [1] - 2:4
**Association** [3] - 5:4, 6:17, 6:18
**association** [1] - 5:11
**associations** [1] - 9:11
**assuming** [2] - 17:25, 24:10
**ATLA** [1] - 5:13
**attach** [1] - 38:9
**attached** [2] - 11:20, 37:14
**attachment** [1] - 14:9
**attachments** [1] - 6:8
**attendance** [1] - 2:2
**attorney** [12] - 4:15, 7:13, 7:24, 8:15, 23:15, 26:9, 27:5, 27:6, 27:24, 28:2, 37:15, 37:16
**attorney's** [8] - 9:7, 20:14, 25:8, 27:8, 27:10, 27:11, 27:15, 28:12
**attorneys** [2] - 11:21, 34:24
**authenticate** [1] - 6:10
**authorize** [1] - 38:8
**authorized** [1] - 37:6
**AVENUE** [1] - 1:17
**award** [1] - 21:21
**awarded** [2] - 20:15, 23:24
**awards** [1] - 9:7
**aware** [4] - 19:14, 20:7, 20:11, 26:8
**awkward** [1] - 16:21

**B**

**background** [7] - 9:14, 9:18, 19:11, 20:21, 32:22, 35:10, 36:5
**backwards** [1] - 12:23
**Bar** [2] - 5:3, 15:11
**bar** [3] - 5:10, 5:14, 9:10
**bare** [1] - 33:13
**Barron** [1] - 2:14
**base** [2] - 8:22, 8:23
**based** [12] - 7:11, 8:13, 9:1, 10:11, 11:4, 15:5, 25:9, 33:2, 34:3, 34:24, 35:10, 35:16
**basis** [4] - 7:18, 7:21,

31:5, 36:12

**bear** [3] - 20:17, 20:18, 34:23

**began** [1] - 4:20

**behalf** [5] - 1:14, 2:8, 2:13, 2:17, 16:15

**believes** - 23:15

**belong** [2] - 5:9, 5:10

**BENITA** [2] - 1:5, 38:3

**Benita** [2] - 6:2, 12:6

**Bennie** [1] - 2:14

**Bernstein** [2] - 4:22, 4:25

**bill** [3] - 19:3, 21:10, 21:15

**billing** [3] - 22:20, 22:22, 24:3

**bit** [1] - 11:18

**Board** [1] - 25:1

**BOARD** [1] - 1:6

**Boca** [1] - 2:6

**boring** [1] - 14:21

**boss** [1] - 13:17

**bottom** [1] - 29:13

**Boulevard** [1] - 2:10

**brief** [4] - 4:16, 6:7, 29:14, 34:19

**bullet** [4] - 16:14, 16:19, 16:25, 18:12

**bullets** [1] - 16:16

**BY** [6] - 3:3, 3:4, 3:5, 4:11, 15:3, 24:24

## C

**calculate** [1] - 28:6

**captioned** [1] - 38:7

**Carey** [2] - 5:24, 26:25

**Caryn** [10] - 2:4, 2:4, 11:17, 14:4, 14:12, 16:15, 17:19, 18:5, 35:5, 35:20

**Caryn's** [1] - 15:5

**CASE** [2] - 1:5, 38:3

**Case** [5] - 12:5, 29:11, 29:22, 31:1, 31:20

**case** [18] - 6:1, 6:5, 7:4, 15:16, 19:4, 20:23, 21:18, 24:14, 25:17, 29:24, 33:14, 34:18, 35:2, 35:22, 35:23, 36:2, 36:6

**cases** [3] - 6:19, 8:6, 8:9

**catch** [1] - 8:18

**caught** [1] - 17:7

**caused** [1] - 30:7

**certain** [5] - 5:11, 23:11, 23:23, 23:24, 28:13

**certifications** [1] - 9:6

**certified** [3] - 4:9, 5:3,

5:15

**certify** [2] - 37:7

**cgroedel@groedel** [1] - 2:7

**cgroedel@groedel-law.com** [1] - 2:7

**Chagrin** [1] - 2:10

**chance** [1] - 15:21

**changes** [1] - 38:7

**CHANGES** [1] - 38:23

**charge** [3] - 9:23, 23:17, 35:25

**charged** [2] - 9:17, 21:1

**charges** [2] - 26:1, 26:4

**charging** [4] - 7:8, 10:8, 32:15, 35:11

**check** [1] - 14:10

**Christina** [1] - 5:24

**Cincinnati** [1] - 2:15

**Circuit** [1] - 5:18

**circumstances** [2] - 33:19, 33:24

**cites** [2] - 16:16, 31:20

**Civil** [4] - 4:7, 37:17

**clarification** [5] - 29:14, 30:3, 30:7, 31:24, 34:7

**clarity** [1] - 11:19

**class** [2] - 5:7

**clear** [5] - 11:25, 17:5, 18:16, 31:8, 31:15

**Cleveland** [4] - 2:11, 4:18, 9:17, 37:20

**client** [4] - 19:3, 21:10, 21:12, 21:15

**Co** [2] - 2:4, 2:14

**College** [1] - 4:19

**comment** [2] - 17:17, 17:22

**commission** [1] - 37:25

**Commissioner** [1] - 16:9

**COMMISSIONERS** [1] - 1:7

**Commissioners** [1] - 25:2

**commonly** [1] - 17:11

**community** [2] - 18:9, 33:7

**completed** [2] - 23:10, 37:12

**complied** [1] - 30:14

**comply** [1] - 34:6

**conclude** [1] - 17:19

**concluded** [1] - 36:18

**conduct** [6] - 16:17, 18:11, 21:16, 24:8, 25:20, 35:16

**conference** [1] - 1:9

**conferencing** [1] - 2:3

**connection** [1] - 2:2

**consider** [1] - 24:2

**considered** [1] - 9:19

**considers** [1] - 33:2

**consistent** [1] - 12:20

**consumer** [1] - 5:7

**contained** [1] - 26:1

**contemporaneous** [1] - 26:5

**continuation** [1] - 23:20

**continuing** [1] - 31:3

**contract** [2] - 21:12, 37:17

**convenient** [1] - 17:20

**Cook** [6] - 2:21, 16:15, 18:3, 19:16, 20:8, 20:12

**COOK** [1] - 1:3

**copy** [3] - 6:3, 6:11, 37:15

**correct** [16] - 7:21, 15:16, 18:25, 22:16, 24:4, 25:13, 25:14, 26:6, 26:13, 26:14, 27:25, 28:1, 28:4, 30:4, 30:15, 35:4

**correction** [1] - 38:10

**correctly** [1] - 31:25

**correspondence** [1] - 10:20

**costs** [4] - 11:1, 11:5, 11:7, 25:8

**counsel** [10] - 1:14, 10:20, 12:4, 16:9, 18:4, 23:1, 29:13, 30:9, 30:10, 37:13

**Counsel** [3] - 16:7, 18:3, 30:7

**counsel's** [1] - 25:7

**County** [2] - 25:1, 37:4

**county** [1] - 18:4

**COUNTY** [1] - 1:6

**couple** [1] - 29:19

**course** [1] - 9:4

**Court** [22] - 5:4, 5:16, 5:18, 10:17, 23:14, 23:22, 24:10, 25:6, 25:13, 27:17, 28:13, 30:2, 30:7, 31:17, 31:24, 32:4, 32:8, 33:1, 33:5, 34:12, 35:1, 35:14

**COURT** [3] - 1:1, 13:13, 38:2

**court** [10] - 4:3, 5:17, 6:9, 8:10, 13:3, 13:6, 14:2, 17:14, 22:9, 37:17

**Court's** [5] - 10:18, 12:8, 18:12, 30:5, 34:6

**court's** [1] - 26:11

**courts** [4] - 5:16, 8:9, 9:9, 9:25

**CROSS** [4] - 3:4, 3:5, 15:2, 24:23

**cross** [2] - 12:22, 14:23

**CROSS-EXAMINATION** [4] - 3:4, 3:5, 15:2, 24:23

**cross-examination** [1] - 14:23

**cross-examine** [1] - 12:22

**cum** [1] - 4:19

**customary** [11] - 8:7, 8:25, 9:12, 9:20, 10:13, 10:23, 11:6, 21:4, 27:13, 33:10, 34:23

**Cuyahoga** [1] - 37:4

## D

**D)** [1] - 37:17

**date** [5] - 10:7, 15:11, 21:23, 26:12, 37:12

**Date** [2] - 38:5, 38:25

**days** [1] - 21:24

**deal** [1] - 10:16

**dealing** [5] - 6:6, 8:10, 9:7, 10:19, 11:13

**dealt** [1] - 8:6

**deem** [1] - 23:23

**Defendant** [4] - 1:8, 2:13, 16:6, 30:9

**Defendant's** [9] - 3:9, 3:10, 13:20, 29:4, 29:6, 30:19, 30:20, 30:21, 30:23

**defined** [1] - 37:17

**demerits** [1] - 21:20

**Deponent** [1] - 38:4

**depos** [1] - 22:12

**deposed** [1] - 4:9

**Deposition** [3] - 1:9, 36:5, 38:6

**DEPOSITION** [1] - 38:1

**deposition** [14] - 4:1, 12:17, 16:11, 16:24, 17:19, 23:2, 23:9, 23:21, 36:18, 37:8, 37:9, 37:12, 37:13

**depositions** [1] - 37:7

**described** [1] - 10:13

**description** [3] - 4:16, 10:3, 10:7

**detail** [1] - 7:7

**determination** [3] - 8:24, 32:20, 33:15

**determine** [1] - 35:1

**determined** [2] - 35:15, 36:3
**different** [1] - 5:15
**differently** [1] - 13:2
**DIRECT** [2] - 3:3, 4:10
**direct** [2] - 1:10, 4:6
**direction** [1] - 37:10
**disagree** [1] - 18:7
**discrimination** [1] - 34:18
**discuss** [1] - 31:10
**Discussion** [1] - 32:11
**DISTRICT** [4] - 1:1, 1:1, 38:2, 38:2
**DIVISION** [2] - 1:2, 38:3
**docket** [4] - 6:1, 10:18, 12:6, 29:25
**Doctorate** [1] - 4:18
**document** [3] - 12:10, 30:15, 32:1
**Document** [5] - 29:11, 29:22, 29:24, 31:1, 31:16
**documents** [1] - 13:4
**Documents** [1] - 31:21
**dollars** [1] - 20:13
**done** [6] - 12:15, 14:12, 20:20, 27:16, 31:23, 32:8
**double** [1] - 14:9
**down** [1] - 29:12
**drafting** [1] - 10:21
**dramatically** [1] - 9:23
**drank** [1] - 17:3
**drinking** [3] - 16:23, 17:2, 17:7
**Drive** [1] - 2:5
**drive** [1] - 37:14
**duly** [2] - 4:8, 37:8
**during** [2] - 16:23, 25:20
**Dworken** [2] - 4:22, 4:24

**E**

**e-mail** [2] - 14:5, 23:1
**e-mailed** [1] - 13:23
**easiest** [1] - 13:1
**EASTERN** [2] - 1:2, 38:3
**edited** [1] - 26:25
**education** [5] - 4:17, 7:11, 8:13, 10:11, 11:4
**effect** [1] - 35:2
**effects** [1] - 32:18
**effing** [2] - 16:10, 17:23
**either** [3] - 6:16, 8:10, 22:9
**Electronic** [4] - 29:11, 29:22, 31:1, 31:20
**eliminate** [1] - 28:13

**employee** [2] - 37:15, 37:16
**Employment** [2] - 6:16, 6:17
**employment** [6] - 5:5, 6:15, 6:24, 8:11, 20:23, 34:18
**end** [3] - 26:22, 31:19, 35:25
**ended** [1] - 28:3
**entered** [2] - 35:3, 38:7
**entire** [1] - 38:6
**entirely** [1] - 24:2
**entries** [3] - 26:24, 26:25, 27:1
**entry** [3] - 22:22, 23:14, 26:19
**ERNEST** [1] - 1:3
**Ernest** [1] - 2:21
**ERRATA** [1] - 38:1
**Errata** [2] - 38:8, 38:9
**especially** [2] - 27:13, 27:17
**Esq** [3] - 2:4, 2:9, 2:14
**essay** [1] - 28:18
**estimate** [3] - 27:18, 28:13, 28:15
**estimated** [1] - 27:23
**events** [1] - 26:4
**exactly** [1] - 15:10
**examination** [3] - 1:10, 4:7, 14:23
**EXAMINATION** [7] - 3:2, 3:3, 3:4, 3:5, 4:10, 15:2, 24:23
**examine** [1] - 12:22
**exhibit** [3] - 11:4, 11:6, 21:2
**EXHIBIT** [2] - 3:7, 3:8
**Exhibit** [28] - 3:9, 3:9, 3:10, 6:4, 6:11, 7:6, 10:5, 10:6, 10:13, 10:16, 10:22, 11:19, 11:20, 12:21, 13:6, 15:25, 16:2, 16:5, 22:19, 26:1, 26:16, 28:3, 29:4, 29:6, 30:19, 30:20, 30:21, 30:23
**exhibits** [5] - 5:23, 12:1, 14:6, 28:20, 29:19
**expedited** [1] - 36:12
**expended** [2] - 11:1, 18:10
**expenditure** [1] - 11:5
**expense** [1] - 26:24
**expenses** [2] - 11:8, 28:9
**experience** [18] - 7:11, 7:13, 8:14, 8:16, 9:5,

9:15, 9:18, 9:22, 10:11, 10:19, 11:5, 15:6, 20:21, 32:3, 32:23, 35:7, 36:5
**expert** [12] - 5:19, 7:24, 8:1, 8:3, 8:5, 21:22, 22:1, 25:5, 25:11, 28:11, 35:3, 35:20
**expires** [1] - 37:25
**extensively** [1] - 5:6

**F**

**fact** [2] - 9:16, 35:12
**factor** [1] - 33:14
**factors** [3] - 9:2, 9:3, 33:3
**facts** [3] - 19:11, 19:15, 34:4
**failure** [3] - 32:21, 33:11, 35:13
**Falls** [1] - 2:5
**familiar** [1] - 35:11
**far** [3] - 12:10, 28:17, 33:19
**federal** [6] - 6:9, 8:10, 26:11, 27:13, 27:14, 29:25
**fee** [3] - 19:15, 20:8, 20:16
**fees** [21] - 7:25, 9:7, 11:21, 18:23, 18:24, 20:15, 23:19, 25:8, 26:9, 27:5, 27:7, 27:8, 27:10, 27:11, 27:15, 27:16, 27:19, 27:23, 27:25, 28:3, 28:12
**feigning** [1] - 17:11
**few** [1] - 6:21
**field** [2] - 28:11, 32:24
**file** [1] - 29:13
**filed** [6] - 12:5, 14:2, 16:7, 17:13, 26:12, 28:3
**filing** [1] - 13:3, 16:20
**Filing** [4] - 29:11, 29:22, 31:1, 31:21
**filings** [4] - 6:9, 10:17, 10:18, 15:15
**financially** [1] - 37:16
**fine** [2] - 13:13, 13:22
**finishes** [1] - 17:14
**firm** [2] - 4:23, 37:17
**first** [8] - 4:8, 8:23, 14:24, 14:25, 16:23, 17:3, 37:8
**FLOOR** [1] - 1:17
**Florida** [1] - 2:6
**following** [1] - 38:7
**follows** [2] - 2:3, 4:9

**forget** [1] - 5:12
**forgot** [1] - 24:17
**form** [2] - 7:21, 14:3
**forth** [2] - 9:11, 37:9
**forwarded** [1] - 14:11
**four** [1] - 24:5
**Frenchko** [6] - 2:17, 16:9, 17:1, 17:6, 18:4, 23:6
**Frenchko's** [1] - 30:9
**Friday** [1] - 36:13
**Friedberg** [1] - 2:10
**front** [2] - 15:21, 22:21

**G**

**gauges** [1] - 18:24
**general** [1] - 18:2
**geographic** [3] - 8:19, 9:1, 9:13
**geographical** [2] - 7:14, 8:17, 35:8
**geography** [1] - 34:24
**given** [2] - 6:2, 37:11
**glass** [1] - 17:3
**goal** [1] - 18:20
**governing** [1] - 34:17
**graduation** [1] - 5:1
**great** [1] - 15:23
**Great** [1] - 14:16
**GROEDEL** [26] - 3:3, 3:13, 3:14, 3:14, 3:15, 3:15, 3:16, 4:11, 7:17, 7:20, 11:16, 11:22, 12:24, 19:6, 19:19, 19:21, 19:25, 20:3, 20:10, 30:11, 31:3, 31:7, 33:18, 33:23, 34:3, 36:10
**Groedel** [17] - 2:4, 2:4, 18:5, 20:12, 21:10, 21:22, 21:25, 23:5, 23:20, 25:25, 26:3, 26:9, 26:19, 27:4, 30:2, 32:8, 32:15
**Groedel's** [7] - 19:15, 20:8, 22:19, 24:3, 34:11, 35:5, 35:21
**groups** [1] - 5:11
**guess** [3] - 18:1, 30:1, 32:2
**guessing** [1] - 25:10
**Gwin** [2] - 10:1, 27:18

**H**

**hand** [1] - 37:19
**happy** [1] - 35:18
**hate** [1] - 22:11
**HATHAWAY** [1] - 1:17

**hear** [2] - 16:21, 34:1
**heard** [1] - 22:9
**hearing** [1] - 36:13
**hereby** [1] - 37:7
**hereinafter** [1] - 4:9
**hereto** [1] - 37:14
**hereunto** [1] - 37:19
**HID** [1] - 12:7
**highlight** [1] - 29:17
**highlighted** [1] - 29:12
**hire** [1] - 21:22
**hour** [9] - 5:7, 9:24, 32:3, 32:7, 33:15, 34:21, 35:9, 35:12, 35:19
**hourly** [15] - 7:2, 7:3, 7:8, 7:12, 8:7, 8:15, 8:25, 9:12, 9:19, 18:8, 20:22, 32:20, 35:5, 36:3, 36:4
**hours** [11] - 7:5, 8:8, 10:4, 10:8, 10:9, 11:14, 18:9, 21:1, 28:6, 28:17
**hundred** [1] - 13:25
**hypothetical** [2] - 19:7, 19:10

**I**

**ID** [3] - 16:19, 21:3, 26:10
**identification** [3] - 16:3, 29:7, 30:24
**identified** [3] - 11:5, 25:4, 29:10
**identify** [1] - 27:20
**ignored** [1] - 32:7
**immediately** [1] - 4:20
**IN** [1] - 37:19
**included** [2] - 27:23, 28:10
**including** [1] - 10:1
**incurred** [2] - 27:12, 27:21
**INDEX** [3] - 3:1, 3:7, 3:11
**indicated** [1] - 38:8
**indicates** [4] - 26:10, 26:22, 31:16, 31:22
**individual** [2] - 2:2, 10:8
**information** [1] - 35:17
**instructing** [1] - 20:2
**intends** [1] - 30:8
**intent** [1] - 30:5
**interested** [2] - 35:14, 37:16
**International** [1] - 5:16
**interrupt** [1] - 12:14
**invert** [1] - 13:5

**involved** [1] - 17:21
**issuance** [1] - 31:22
**issue** [7] - 6:6, 7:22, 18:11, 18:13, 25:6, 25:12, 34:22
**issued** [1] - 33:14
**issues** [5] - 8:2, 8:11, 10:20, 21:7, 22:7
**itemize** [1] - 27:20
**items** [5] - 10:15, 10:16, 10:21, 28:13, 33:9
**itself** [2] - 15:18, 18:21

**J**

**job** [2] - 14:17, 32:19
**JUDGE** [2] - 1:5, 38:3
**Judge** [5] - 6:1, 10:1, 12:9, 18:14, 27:18
**judgment** [2] - 34:19, 35:3
**judicial** [2] - 25:17, 25:21
**July** [4] - 1:12, 37:14, 37:20, 38:5
**June** [1] - 31:16
**Juris** [1] - 4:18
**jurisdiction** [3] - 9:1, 10:1, 10:24
**justifies** [1] - 35:11

**K**

**Kathleen** [6] - 2:9, 11:25, 14:15, 14:17, 14:23, 24:25
**Kathleen's** [1] - 14:8
**keeping** [1] - 33:13
**Kelli** [9] - 1:11, 13:9, 14:5, 14:12, 28:19, 36:11, 37:6, 37:24, 37:25
**kellipage@**
**pagereportingservice**
**.com** [1] - 1:19
**kind** [3] - 12:1, 12:22, 30:1
**kminahan@**
**meyersroman.com** [1] - 2:12
**knowledge** [1] - 19:18

**L**

**labor** [1] - 5:5
**LAKEWOOD** [1] - 1:18
**landlord/tenant** [1] - 36:6
**language** [2] - 29:12, 30:6

**last** [3] - 8:18, 21:24, 24:17
**laude** [1] - 4:19
**Law** [1] - 4:19
**law** [10] - 5:1, 5:2, 6:15, 7:14, 8:16, 9:11, 15:7, 15:13, 18:1, 18:14
**law.com** [1] - 2:7
**lawful** [1] - 4:5
**laws** [1] - 27:14
**lawsuit** [2] - 25:2, 33:12
**lawyer** [12] - 6:24, 9:3, 20:20, 24:13, 25:19, 27:15, 32:4, 32:7, 33:6, 33:16, 34:17, 34:20
**lawyers** [1] - 9:13
**Lawyers** [2] - 6:16, 6:17
**lays** [2] - 16:16, 17:17
**least** [1] - 15:8
**leave** [1] - 13:19
**legal** [3] - 10:3, 32:16, 34:18
**less** [2] - 8:6, 36:6
**Lewis** [1] - 2:10
**license** [1] - 15:12
**licensure** [1] - 9:4
**limited** [1] - 24:2
**line** [1] - 38:10
**LinkedIn** [1] - 6:12
**liquid** [2] - 17:4, 17:5
**list** [3] - 10:22, 25:4, 33:9
**listed** [3] - 10:15, 10:22, 21:2
**listing** [1] - 10:7
**look** [8] - 7:6, 16:5, 26:12, 26:15, 27:6, 29:12, 30:18, 32:21
**looked** [6] - 5:25, 7:7, 10:15, 10:17, 27:8, 31:21
**looking** [9] - 9:3, 10:6, 12:5, 12:9, 12:10, 20:19, 23:14, 29:21, 29:24
**looks** [2] - 9:9, 32:22
**love** [1] - 22:11
**love-hate** [1] - 22:11
**LPA** [2] - 2:4, 2:14

**M**

**ma'am** [1] - 36:9
**Madison** [1] - 2:15
**mail** [2] - 14:5, 23:1
**mailed** [1] - 13:23
**mark** [2] - 29:3, 30:19
**marked** [6] - 6:3, 13:19, 16:2, 28:25, 29:6,

30:23
**market** [1] - 20:24
**Marshall** [1] - 4:19
**materials** [1] - 5:25
**Matt** [2] - 2:14, 14:19
**matter** [10] - 7:4, 7:5, 9:15, 10:4, 11:2, 11:13, 12:18, 18:13, 36:1, 38:7
**matters** [1] - 8:2
**Matthew** [1] - 24:21
**mean** [4] - 12:18, 22:5, 35:23, 36:14
**means** [1] - 37:9
**mentioned** [1] - 15:4
**merit** [1] - 21:18
**merits** [3] - 21:6, 21:20, 33:12
**met** [1] - 6:15
**Meyers** [1] - 2:10
**Michele** [1] - 2:17
**middle** [1] - 26:23
**might** [1] - 28:13
**Miller** [2] - 2:14, 25:9
**MILLER** [17] - 3:4, 11:17, 11:23, 12:12, 13:8, 13:16, 13:22, 14:16, 14:20, 15:1, 15:3, 15:24, 19:20, 19:23, 20:1, 24:15, 24:22
**Miller-Novak** [2] - 2:14, 25:9
**MILLER-NOVAK** [17] - 3:4, 11:17, 11:23, 12:12, 13:8, 13:16, 13:22, 14:16, 14:20, 15:1, 15:3, 15:24, 19:20, 19:23, 20:1, 24:15, 24:22
**Minahan** [2] - 2:9, 24:25
**MINAHAN** [18] - 3:5, 3:13, 7:16, 7:19, 7:23, 14:11, 14:19, 14:25, 24:24, 28:19, 29:3, 29:9, 31:5, 31:14, 33:21, 34:1, 34:8, 36:7
**mind** [1] - 24:18
**minimum** [1] - 33:13
**misidentified** [1] - 13:2
**misstate** [1] - 34:17
**mmn@bpbslaw.com** [1] - 2:16
**motion** [9] - 6:5, 11:20, 17:13, 18:2, 18:10, 18:20, 20:14, 26:10, 30:4
**Motion** [8] - 6:7, 15:18, 15:20, 16:6, 26:8, 27:22, 29:14, 31:18

**MR** [17] - 3:4, 11:17, 11:23, 12:12, 13:8, 13:16, 13:22, 14:16, 14:20, 15:1, 15:3, 15:24, 19:20, 19:23, 20:1, 24:15, 24:22
**MS** [44] - 3:3, 3:5, 3:13, 3:13, 3:14, 3:14, 3:15, 3:15, 3:16, 4:11, 7:16, 7:17, 7:19, 7:20, 7:23, 11:16, 11:22, 12:24, 14:11, 14:19, 14:25, 19:6, 19:19, 19:21, 19:25, 20:3, 20:10, 24:24, 28:19, 29:3, 29:9, 30:11, 31:3, 31:5, 31:7, 31:14, 33:18, 33:21, 33:23, 34:1, 34:3, 34:8, 36:7, 36:10
**Mulberry** [1] - 2:6
**multiple** [1] - 22:13
**Munroe** [1] - 2:5

**N**

**name** [6] - 4:12, 23:6, 24:18, 24:25, 31:18, 38:8
**named** [1] - 37:7
**narrow** [1] - 31:9
**National** [1] - 6:16
**nature** [1] - 18:2, 21:11
**near** [2] - 26:4, 26:22
**necessarily** [1] - 13:25
**need** [3] - 13:11, 28:20, 36:1
**Nicole** [1] - 2:17
**Niki** [1] - 16:9
**NO** [3] - 1:5, 38:3, 38:23
**normal** [1] - 27:12
**NORTHERN** [2] - 1:1, 38:2
**Notary** [3] - 1:11, 37:6, 37:25
**note** [1] - 12:2
**nothing** [4] - 11:16, 19:4, 27:22, 37:8
**notice** [2] - 1:13, 37:13
**NOVAK** [17] - 3:4, 11:17, 11:23, 12:12, 13:8, 13:16, 13:22, 14:16, 14:20, 15:1, 15:3, 15:24, 19:20, 19:23, 20:1, 24:15, 24:22
**Novak** [2] - 2:14, 25:9
**number** [20] - 5:15, 7:4, 8:8, 9:2, 9:4, 9:9, 9:14, 9:21, 10:4, 10:9,

12:7, 20:20, 20:21, 21:2, 24:4, 24:6, 28:7, 32:23, 33:7
**NUMBER** [1] - 3:8
**Number** [5] - 7:6, 29:11, 29:22, 31:2, 31:16
**numbers** [1] - 13:17
**numerous** [2] - 9:25, 27:14

**O**

**oaths** [1] - 37:6
**object** [3] - 33:23, 34:3, 34:7
**objected** [1] - 33:22
**OBJECTION** [1] - 3:11
**objection** [11] - 7:16, 7:18, 7:23, 19:6, 19:19, 19:22, 19:24, 20:10, 30:11, 31:4, 33:18
**obviously** [1] - 33:1
**occupation** [1] - 4:14
**October** [1] - 37:25
**OF** [6] - 1:1, 1:6, 4:10, 15:2, 24:23, 38:2
**offensive** [2] - 18:6, 21:16
**offering** [2] - 32:13, 32:14
**office** [2] - 6:3, 37:20
**officer** [1] - 25:17
**OH** [1] - 1:18
**OHIO** [1] - 1:1, 38:2
**Ohio** [14] - 1:12, 2:5, 2:11, 2:15, 5:3, 5:4, 5:17, 6:17, 8:10, 15:11, 37:3, 37:6, 37:20, 37:25
**one** [10] - 13:9, 14:2, 16:23, 20:20, 24:4, 25:17, 26:23, 30:20, 30:21, 35:17
**ones** [1] - 14:15
**ongoing** [1] - 23:10
**opine** [7] - 7:1, 11:7, 18:15, 21:6, 21:13, 23:12, 25:22
**opining** [5] - 24:11, 33:3, 34:22, 35:5, 35:10
**opinion** [25] - 8:22, 8:23, 18:8, 18:18, 18:22, 19:2, 20:17, 20:18, 20:19, 21:9, 21:14, 21:19, 21:20, 23:18, 23:22, 24:5, 25:16, 32:6, 32:9, 32:13, 32:14, 35:3,

35:20, 35:24
**opportunity** [1] - 6:23
**opposing** [2] - 10:19, 23:1
**opposition** [2] - 6:7, 34:19
**order** [8] - 28:25, 29:10, 29:21, 30:14, 31:4, 31:23, 33:25, 34:5
**ordered** [4] - 29:13, 30:3, 31:17, 31:24
**ordering** [1] - 36:11
**orders** [2] - 32:8, 33:13
**ordinary** [8] - 8:7, 8:25, 9:12, 9:20, 10:23, 21:4, 33:9, 34:23
**organizations** [1] - 5:9, 5:14, 9:10
**original** [1] - 38:9

**P**

**p.m** [4] - 1:12, 17:18, 29:15, 36:19
**page** [8] - 16:14, 16:19, 21:3, 26:10, 26:18, 26:19, 31:2, 38:10
**Page** [4] - 1:11, 37:6, 37:24, 37:25
**PAGE** [4] - 1:17, 3:2, 3:8, 3:12
**pardon** [1] - 19:7
**part** [6] - 8:18, 18:23, 22:25, 23:2, 32:18
**partially** [1] - 25:14
**participants** [1] - 2:2
**particular** [10] - 8:25, 9:13, 9:14, 9:15, 10:10, 20:20, 24:7, 24:8, 28:18, 34:24
**particularly** [2] - 8:11, 10:16
**parties** [3] - 4:1, 37:11, 37:15
**partner** [2] - 4:22, 4:23
**Pat** [1] - 36:15
**Patrick** [8] - 4:13, 12:13, 15:4, 16:22, 20:5, 24:19, 37:13, 38:25
**PATRICK** [7] - 1:9, 4:5, 4:10, 15:2, 24:23, 37:7, 38:4
**pay** [3] - 20:12, 32:7, 34:20
**Pearson** [3] - 6:2, 12:6, 18:14
**PEARSON** [2] - 1:5, 38:3
**Peck** [1] - 2:14
**pen** [1] - 33:4

**pending** [3] - 6:1, 6:6, 8:9
**percent** [1] - 13:25
**performed** [2] - 10:3, 10:25
**performing** [1] - 32:16
**perhaps** [1] - 26:23
**PEROTTI** [7] - 1:10, 4:5, 4:10, 15:2, 24:23, 37:7, 38:4
**Perotti** [8] - 4:13, 8:2, 24:25, 34:4, 34:10, 36:8, 37:14, 38:25
**place** [1] - 37:12
**plaintiff** [2] - 16:10, 30:13
**Plaintiff** [10] - 1:4, 1:14, 2:8, 4:6, 16:8, 16:15, 18:2, 30:8, 31:17, 31:23
**Plaintiff's** [5] - 16:5, 25:4, 25:7, 26:15, 29:13
**plaintiffs** [1] - 5:17
**plaintiffs'** [2] - 5:11, 5:14
**plus** [1] - 20:13
**point** [4] - 9:24, 16:11, 16:25, 17:10
**points** [2] - 16:15, 16:19
**potentially** [2] - 21:16, 21:17
**practice** [7] - 5:2, 5:5, 5:6, 6:6, 9:6, 20:22, 35:7
**practices** [1] - 15:13
**practicing** [6] - 4:20, 15:7, 15:8, 28:11, 32:24, 32:25
**prefer** [1] - 13:20
**prepare** [2] - 21:25, 22:15
**prepared** [1] - 31:10
**preparing** [1] - 23:20
**PRESENT** [1] - 2:20
**previous** [2] - 30:14, 30:20
**previously** [2] - 22:19, 35:15
**problem** [1] - 22:11
**Procedure** [1] - 4:8
**proceeding** [2] - 6:4, 25:21
**proceedings** [2] - 8:5, 27:13
**product** [1] - 8:9
**professional** [2] - 5:9, 9:10
**profile** [1] - 6:12
**propriety** [3] - 25:5,

25:12, 25:15
**provided** [4] - 4:7, 5:23, 5:25, 35:17
**Public** [3] - 1:11, 37:6, 37:25
**pull** [3] - 22:18, 26:18, 28:19
**purpose** [1] - 4:6
**purposes** [4] - 12:16, 16:2, 29:6, 30:23
**pursuant** [2] - 1:13, 37:13
**put** [1] - 31:3

## Q

**qualified** [2] - 8:1, 8:3
**qualify** [1] - 7:24
**quality** [1] - 34:20
**questions** [3] - 24:16, 25:19, 36:8
**quick** [1] - 24:17
**quote** [2] - 31:17, 31:19

## R

**Rae** [4] - 1:11, 37:6, 37:24, 37:25
**rate** [24] - 7:2, 7:3, 7:8, 7:12, 8:15, 8:25, 9:16, 9:19, 9:23, 10:8, 10:10, 15:5, 20:22, 24:3, 31:12, 33:8, 33:16, 34:11, 35:5, 35:8, 35:13, 35:20, 36:3, 36:4
**rates** [6] - 8:8, 9:12, 9:17, 18:8, 28:6, 32:20
**rather** [1] - 35:6
**Raton** [1] - 2:6
**re** [1] - 23:1
**RE** [1] - 38:2
**read** [7] - 13:14, 17:25, 23:9, 30:6, 31:25, 38:6, 38:7
**realized** [1] - 17:7
**really** [2] - 12:18, 33:19
**reason** [2] - 19:23, 36:3
**reasonable** [31] - 7:12, 8:7, 8:15, 8:24, 9:20, 10:14, 10:23, 11:6, 11:12, 15:5, 19:5, 20:24, 21:4, 21:10, 21:15, 23:13, 23:16, 23:19, 24:12, 25:21, 27:12, 33:2, 33:8, 33:10, 33:16, 34:12, 34:23, 35:5, 35:8, 35:15, 35:20
**reasonableness** [8] -

7:2, 18:8, 18:23, 18:24, 24:3, 25:7, 31:12, 32:15
**reasons** [1] - 38:8
**Receipt** [1] - 26:24
**receipt** [1] - 22:25
**received** [3] - 4:18, 14:8, 15:11
**recommend** [1] - 36:15
**record** [14] - 4:12, 11:18, 11:24, 12:3, 12:8, 13:14, 17:22, 26:11, 28:23, 29:9, 32:11, 37:10, 37:13, 38:8
**recorded** [3] - 25:25, 26:3, 26:4
**recording** [2] - 17:2, 37:14, 37:15
**records** [1] - 6:5
**redacted** [1] - 27:1
**redlined** [1] - 27:1
**reduced** [1] - 37:9
**refer** [1] - 12:17
**referred** [1] - 22:18
**regarding** [1] - 31:4
**regardless** [4] - 20:13, 23:6, 24:7, 35:13
**reimbursement** [1] - 23:19
**relationship** [1] - 22:11
**relative** [2] - 37:15, 37:16
**relevance** [3] - 19:25, 30:12, 31:7
**relevant** [2] - 31:12, 34:9
**remaining** [1] - 23:2
**remember** [1] - 21:23
**reminder** [1] - 30:2
**remote** [2] - 2:2, 4:2
**remotely** [1] - 37:11
**repeat** [2] - 20:6, 22:13
**reply** [2] - 6:8, 20:9
**report** [2] - 22:1, 22:15
**reporter** [4] - 4:3, 13:7, 17:14, 22:9
**REPORTER** [3] - 13:13, 13:18, 14:7, 14:14
**Reporter** [1] - 38:6
**REPORTING** [1] - 1:17
**reporting** [2] - 10:7, 37:17
**represent** [1] - 18:21
**representing** [1] - 25:1
**request** [5] - 23:19, 25:8, 27:9, 34:6, 38:7
**requested** [1] - 26:9
**requesting** [1] - 7:3
**requires** [2] - 27:17,

27:18
**respect** [2] - 25:6, 25:12
**responding** [1] - 25:20
**response** [1] - 19:9
**responses** [1] - 25:9
**resume** [1] - 17:20
**retention** [1] - 10:4
**review** [8] - 15:18, 22:25, 26:24, 31:11, 35:18, 36:14, 36:15, 36:16
**reviewed** [3] - 10:18, 15:15, 19:15
**reviewing** [2] - 10:20, 35:1
**Road** [1] - 2:15
**Roman** [1] - 2:10
**rude** [2] - 22:5, 22:6
**Rule** [1] - 37:17
**rule** [2] - 18:17, 25:17
**Rules** [1] - 4:7
**run** [1] - 19:2

## S

**sanction** [3] - 7:4, 7:5, 17:13
**sanctionable** [2] - 18:13, 24:9
**sanctions** [10] - 16:8, 16:17, 18:3, 18:17, 18:19, 21:11, 21:16, 25:5, 25:12, 30:9
**Sanctions** [8] - 6:7, 15:18, 15:20, 16:6, 26:8, 27:22, 29:15, 31:19
**scheduling** [1] - 23:1
**Schlemmer** [1] - 2:14
**school** [1] - 5:1
**schools** [1] - 9:11
**scope** [1] - 18:12
**seal** [1] - 37:20
**second** [6] - 16:14, 17:5, 17:10, 17:13, 20:25, 22:22
**see** [26] - 6:2, 7:8, 10:6, 11:1, 11:8, 16:12, 16:18, 16:19, 16:24, 16:25, 17:8, 17:15, 17:16, 17:23, 17:24, 22:20, 22:23, 23:2, 26:20, 27:2, 27:3, 29:1, 29:16, 29:17, 30:16
**seeing** [1] - 28:25
**seek** [4] - 21:11, 21:15, 30:7, 30:8
**seeking** [2] - 16:17, 18:3
**seeks** [1] - 16:8

**seminar** [1] - 6:16
**send** [1] - 14:4
**senior** [1] - 4:23
**sent** [2] - 14:1, 14:15
**sequence** [1] - 23:8
**serve** [1] - 21:22
**service** [1] - 35:11
**SERVICE** [1] - 1:17
**services** [3] - 23:17, 32:16, 35:21
**set** [3] - 6:5, 37:9, 37:19
**several** [1] - 8:23
**shape** [1] - 14:3
**sheet** [1] - 28:8
**SHEET** [1] - 38:1
**Sheet** [2] - 38:8, 38:9
**shifting** [1] - 27:15
**show** [1] - 29:18
**shows** [1] - 17:2
**sic}** [1] - 29:4
**Signature** [1] - 36:21
**signed** [1] - 38:8
**silence** [1] - 16:22
**simply** [1] - 32:22
**sitting** [1] - 13:10
**Sixth** [1] - 5:18
**skills** [3] - 6:23, 7:13, 8:16
**solely** [1] - 20:19
**someone** [1] - 35:6
**somewhere** [1] - 13:10
**sorry** [10] - 7:19, 16:21, 19:9, 19:20, 20:4, 22:5, 26:2, 30:19, 34:2
**sought** [1] - 27:5
**specialist** [1] - 5:3
**specialized** [1] - 5:15
**specialty** [1] - 9:5
**specifically** [1] - 8:6
**spent** [7] - 7:5, 10:4, 10:12, 23:15, 24:6, 24:11, 31:13
**Spriggel** [1] - 2:5
**SS** [1] - 37:3
**standard** [1] - 34:18
**starting** [2] - 12:1, 26:23
**State** [5] - 1:12, 5:3, 37:3, 37:6, 37:25
**state** [5] - 4:12, 5:10, 7:18, 7:20, 8:10
**statement** [1] - 18:5
**statements** [1] - 22:20
**States** [1] - 10:2
**STATES** [2] - 1:1, 38:2
**status** [1] - 23:8
**stay** [1] - 11:18
**staying** [1] - 12:20
**steal** [1] - 12:13
**stenotypy** [1] - 37:9

**stipulations** [2] - 1:13, 37:13
**stopping** [1] - 16:11
**story** [1] - 35:25
**stuff** [1] - 14:21
**subject** [7] - 9:15, 11:13, 17:13, 21:19, 32:9, 32:13, 36:1
**subjects** [1] - 9:8
**subscribed** [1] - 37:11
**substantially** [1] - 35:12
**substantive** [1] - 21:18
**subtracting** [1] - 28:17
**success** [3] - 32:21, 33:11, 35:13
**successful** [1] - 20:14
**succinctly** [1] - 31:18
**suddenly** [1] - 28:3
**suggest** [1] - 25:16
**Suite** [1] - 2:10
**summary** [2] - 16:8, 34:19
**suppose** [1] - 15:25
**supposed** [1] - 23:10
**Supreme** [2] - 5:4, 5:17
**surrounding** [2] - 33:24, 34:5
**suspect** [1] - 21:24
**SW** [1] - 2:6
**swearing** [1] - 4:2
**sworn** [2] - 4:8, 37:8

## T

**tag** [1] - 13:24
**tagging** [1] - 13:10
**tags** [1] - 13:17
**talks** [1] - 27:22
**tape** [1] - 17:7
**target** [1] - 29:14
**targets** [2] - 30:3, 31:18
**task** [1] - 10:10
**tasks** [5] - 10:13, 10:25, 24:7, 24:8, 28:14
**telephone** [1] - 10:21
**ten** [2] - 5:22, 8:6
**terms** [1] - 14:22
**testified** [2] - 5:19, 8:4
**testify** [1] - 37:8
**testifying** [1] - 35:19
**testimony** [7] - 15:4, 16:11, 17:15, 25:11, 31:4, 31:8, 37:10
**THE** [7] - 12:4, 13:18, 14:7, 14:14, 24:20, 36:9, 36:16
**thereafter** [1] - 4:20
**third** [1] - 17:17
**three** [4] - 6:22, 16:14,

16:16, 32:4
**thumb** [1] - 37:14
**thunder** [1] - 12:13
**today** [4] - 5:12, 7:1, 19:2, 24:1
**together** [1] - 6:19
**top** [2] - 22:22, 31:2
**total** [3] - 28:5, 28:8
**totals** [1] - 10:10
**towards** [1] - 26:23
**traceable** [1] - 24:8
**trade** [1] - 5:13
**Trade** [1] - 5:17
**training** [9] - 7:11, 8:13, 9:14, 10:11, 11:4, 20:21, 32:22, 35:10, 36:5
**transcribed** [1] - 37:10
**transcribing** [1] - 17:14
**transcript** [3] - 36:12, 38:6, 38:9
**trends** [1] - 34:25
**true** [4] - 6:11, 23:5, 37:10, 37:14
**Trumbull** [1] - 25:1
**TRUMBULL** [1] - 1:6
**truth** [3] - 37:8, 37:9
**try** [1] - 7:21
**trying** [1] - 18:25
**Tuesday** [1] - 1:12
**twice** [2] - 17:3, 31:24
**two** [6] - 5:23, 6:22, 9:9, 13:4, 24:6, 31:20
**type** [17] - 8:8, 9:5, 9:6, 10:24, 11:13, 18:9, 18:10, 20:22, 20:23, 21:4, 24:13, 25:20, 33:6, 33:7, 33:10, 36:1
**types** [3] - 8:2, 20:25, 21:1
**typewriting** [1] - 37:10
**typical** [3] - 5:10, 9:19, 32:3

## U

**U.S** [1] - 5:16
**ultimate** [1] - 18:13
**unclear** [1] - 33:24
**under** [7] - 5:22, 9:18, 9:23, 27:14, 27:20, 37:10, 37:17
**UNITED** [2] - 1:1, 38:2
**United** [1] - 10:2
**unreasonable** [1] - 23:13
**unrelated** [1] - 27:1
**unusual** [1] - 11:14
**up** [8] - 13:20, 19:2, 22:18, 28:3, 28:7,

28:19, 33:13, 34:25
**usual** [1] - 5:17

## V

**various** [2] - 6:8, 10:18
**venue** [1] - 9:1
**via** [1] - 2:2
**Video** [1] - 1:9
**video** [3] - 2:2, 37:13, 37:14
**vs** [1] - 1:5

## W

**wage** [1] - 5:7
**waiting** [1] - 12:14
**waived** [1] - 36:21
**water** [2] - 17:2, 17:6
**WHEREOF** [1] - 37:19
**white** [1] - 17:5
**whole** [1] - 37:8
**willingness** [1] - 22:12
**wine** [4] - 16:23, 17:3, 17:5, 17:8
**WITNESS** [6] - 3:1, 12:4, 24:20, 36:9, 36:16, 37:19
**witness** [9] - 4:2, 21:23, 22:1, 23:13, 25:4, 28:11, 37:7, 37:11
**word** [1] - 25:14
**words** [5] - 17:12, 17:23, 24:1, 25:15, 26:5
**worth** [1] - 27:5
**writing** [2] - 30:13, 37:9

## X

**x223** [1] - 2:11

## Y

**years** [9] - 6:15, 6:20, 9:4, 9:14, 9:22, 15:9, 20:22, 32:23, 33:8
**years'** [1] - 35:6
**yellow** [1] - 17:4
**yourself** [1] - 22:13

## Z

**Zoom** [6] - 1:9, 2:2, 17:2, 22:7, 22:12, 37:13